UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| YOUSEF ALHINDI, Individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br>v.<br><br>Metropolis Technologies Inc., a Delaware corporation,<br><br>　　　　　Defendant. | Case No:<br><br>CLASS ACTION<br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff, YOUSEF ALHINDI ("Plaintiff") on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge, upon information and belief, and the investigation of the undersigned counsel as to all other matters, and brings this class action against Defendant, METROPOLIS TECHNOLOGIES, INC. ("Defendant" or "Metropolis"), as follows:

### I.　　　NATURE OF THE ACTION

1.　　This Complaint seeks redress for a class of vehicle owners who were mailed fake parking citations by Defendant Metropolis, and whose personal information Metropolis obtained, disclosed and used in violation of federal law. The government can access personal data for legitimate police purposes and private companies cannot access and use such data for commercial purposes.

2.　　Plaintiff seeks a judicial determination (i) that certain actions of the Defendant violate the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721, et seq.; (ii) of the Parties

1

rights and obligations regarding the demands for payment; (iii) judgment for damages to Plaintiff and the class; and (iii) an injunction against Defendant from committing future violations.

3. Metropolis is a private company that operates and manages parking lots and garages throughout the county. On its website, Metropolis boasts that it is "the largest parking network in North America with more than 4,000 locations."[1]

4. Metropolis's business model ostensibly involves charging drivers to park their vehicles in its facilities. However, Metropolis's business also profits by mailing fake parking citations to vehicle owners and threatening them with severe consequences if they do not pay exorbitant sums.

5. The citations at issue are designed to look like official parking citations issued by government but are "issued" by a private company. They are entitled "**NOTICE OF PARKING VIOLATION**" and purport to impose "fines" against vehicle owners.

6. Upon information and belief, these citations are addressed using information Metropolis illegally obtains from official motor vehicle records, in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq*.

**A. Introduction to the DPPA.**

7. In 1994, Congress enacted the DPPA as a critical measure to protect the personal information of drivers in the United States. This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV"). By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified

---

[1] *See* https://www.metropolis.io/news/metropolis-closes-acquisition-of-sp-plus, last visited June 14, 2024.

purposes. The act's primary goal is to safeguard individuals' privacy and prevent the exploitation of their personal information for purposes such as solicitation, marketing, and identity theft.

8. Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment. The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society. Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

9. The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records. Under the DPPA, personal information such as names, addresses, and Social Security numbers cannot be disclosed without the driver's written consent, except for certain permitted uses, such as law enforcement activities. The act imposes penalties for unauthorized access and misuse of this data, thereby deterring potential abusers and reinforcing the importance of data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks associated with the widespread availability of driver information.

10. Regrettably, there are still occasions where unscrupulous actors like Metropolis disregard the DPPA and abuse the personal information contained in DMV records for illicit purposes. This is one such case. Metropolis's entire business model is based on flouting the DPPA and abusing official motor vehicle data to harass, intimidate, deceive, and ultimately defraud consumers. This action aims to stop Metropolis's unlawful conduct and compensate consumers whose privacy rights have been blatantly violated.

## II. JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 because the claims asserted arise from a federal statute.

12. This Court has personal jurisdiction over Metropolis because it regularly transacts business within the State of Tennessee and its headquarters are located in Nashville, Tennessee.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## III. PARTIES

14. Plaintiff YOUSEF ALHINDI is a natural person and resident of Davidson County, Tennessee, and is a citizen of the State of Tennessee.

15. Metropolis is a Delaware Profit Corporation which regularly conducts business in Tennessee, without having registered as a foreign corporation in Tennessee, having its headquarters located at 144 2nd Ave. N., Ste. 300, Nashville, TN 37201.

## IV. FACTS

**A. Metropolis's Business Model**

17. Metropolis is a Delaware corporation that primarily manages and operates parking lots and garages owned by third parties throughout Tennessee and the United States.

18. Metropolis uses a "drive in and drive out" or "checkout-free" system for parking that it developed.

19. Metropolis utilizes camera-based license plate detection and recognition technology within the parking lots and garages it manages. This technology captures, stores and transmits images of the license plates on vehicles entering and exiting its parking facilities.

20. When a vehicle exits a Metropolis parking facility, Metropolis then utilizes those images to determine whether the parking fee had been paid at the time the vehicle departed. Based

4

upon metrics unknown to Plaintiff, Metropolis then mails to class members a document ominously entitled "**Notice of Parking Violation**" to the registered owner of the vehicle.

21. In order to mail this document, Metropolis must first identify the vehicle owner and determine his or her mailing address. Upon information and belief, Metropolis or its agents locate this information by consulting the official motor vehicle records of the state appearing on the license plate of a vehicle and searching for the consumer's license plate number. Metropolis uses the information to identify the name and mailing address of the vehicle registrant, which Metropolis then issues the citation via mail.

22. These "Notices of Parking Violation" are disguised to resemble government parking citations. They accuse vehicle owners of committing "violations," and they impose "violation fines" against them.

23. These citations also illegally threaten to "boot" and "tow" vehicles for unpaid citations, charge illegal services fees, and impose exorbitant penalties against vehicle owners.

24. Consequently, vehicle owners typically pay the sums demanded in the citations, and suffer injury by way of Metropolis's invasion of their privacy.

**B.     Metropolis' Illegal Parking Citation to Plaintiff**

25. On December 21, 2023, Plaintiff parked at a private parking lot located at 700 8th Avenue S. Nashville, Tennessee 37203, which is operated or managed by Metropolis.

26. At the time he parked, there was no parking attendant or gate. Plaintiff simply parked in an available parking space, as any driver commonly would, and subsequently drove away.

27. Shortly thereafter, Metropolis mailed Plaintiff a citation ominously entitled "**Notice of Parking Violation**." This citation stated that Plaintiff owed Metropolis an "Unpaid Fare" of

$60.09, and a "Violation Fine" of $65.25. A true and correct reproduction of the aforementioned citation is attached hereto and incorporated herein as **Exhibit A.**

28. The citation further stated that "Metropolis is providing this courtesy notice to allow the amounts due to Metropolis to be paid online through its payment processing portal www.payments.metropolis.io. Payment is due upon receipt of this notice. Please note that checks or cash are not accepted." **See Exhibit A.**

29. At the bottom of the citation, Metropolis threatened Plaintiff as follows: "Please note, all vehicles that fail to pay for parking violations may be subject to additional fees, referred it a collection agency or incur other legal action future ticketing, booting and/or towing, at the sole discretion of Metropolis." **See Exhibit A.**

30. After receiving the citation, Plaintiff was concerned about Metropolis's threats and implied or stated repercussions and ultimately paid $125.34 to Metropolis.

31. Metropolis's illegal citation to Plaintiff included photographs of Plaintiff's license plate, taken by Metropolis's on-site camera equipment.

32. Upon information and belief, once Metropolis determined Plaintiff's license plate number, it then unlawfully queried official Tennessee motor vehicle records to identify Plaintiff and acquire his home address. Metropolis then sent Plaintiff the citation via mail.

33. Upon information and belief, Metropolis utilizes these or similar methods to send its illegal citations and collect money from drivers who entered parking facilities managed or operated by Metropolis throughout Tennessee and the United States.

34. Metropolis injured Plaintiff when it invaded his right to privacy by unlawfully obtaining personal information about him from the State's motor vehicle database.

35. Metropolis's invasion of privacy resulted in distress to Plaintiff.

36. Metropolis's statements falsely asserted a legal right where none exists, to wit: Metropolis's false statements that it has the legal right to boot or tow Plaintiff's vehicle for unpaid citations. This caused emotional distress to Plaintiff.

37. Metropolis falsely represented that its citation is an official government or law enforcement document by accusing Plaintiff of committing a "violation" and imposing a "fine" against him.

38. Metropolis did not receive Plaintiff's express written consent prior to accessing his personal information as required by the DPPA, 18 U.S.C. § 2721(b)(12).

39. Plaintiff never waived his right to privacy under 18 U.S.C. § 2721(d).

40. The DPPA governs the manner by which certain personal information can be accessed or disclosed, and imposes penalties for violation of its provisions.

41. Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

42. Metropolis is a "person" within the meaning of 18 U.S.C. 2725(2).

43. Metropolis obtained Plaintiff's "Personal Information" as defined by the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

44. A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" *Id.*

45. DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the use of such information for a limited number of purposes designed to promote public welfare.

46. Metropolis's use of official motor vehicle records to send parking citations is not a permissible use of such information under the DPPA.

47. Metropolis's conduct as set forth above caused Plaintiff and members of the proposed class harm, including violations of their statutory rights, invasion of their privacy, intrusion upon seclusion, harassment and annoyance.

48. Accordingly, Plaintiff has standing to bring his claims under the DPPA. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.'") (quoting William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383, 389 (1960)).

## V. CLASS ACTION ALLEGATIONS

49. Plaintiff brings this case as a class action on behalf of himself and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The proposed Class is defined as follows:

> All natural persons in the United States whose Personal Information, as defined by the DPPA, obtained, used and/or disclosed by Defendants and/or their agents, by Metropolis Technologies, Inc. in the four years preceding the filing of the Complaint, through the date of any order granting certification of the class.

50. Expressly excluded from the Class are:

(a) Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

(b) Metropolis and any entity in which Metropolis has a controlling interest, or

8

Case 3:24-cv-00748   Document 1   Filed 06/19/24   Page 8 of 15 PageID #: 8

which has a controlling interest in Metropolis and its legal representatives, assigns and successors; and

(c) All persons who properly execute and file a timely request for exclusion from the Class.

51. Plaintiff reserves the right to amend the Class definition at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

### Fed. R. Civ. P. 23(a) Criteria

52. Numerosity. The exact number of Class members is unknown as such information is in the exclusive control of Metropolis. However, due to the nature of the trade and commerce involved, and the size of Metropolis's business, Plaintiff believes the Class consists of thousands of consumers, geographically dispersed throughout the United States, making joinder of all Class members impracticable. Class members are ascertainable from a review of Metropolis's business records.

53. Commonality. Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiff and Class members. The harm that Metropolis has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

(a) Whether Metropolis's parking citation is uniform in all relevant aspects for the Class;

(b) Whether Metropolis had any permissible purpose within the meaning of then DPPA when it obtained the Personal Information of Plaintiff and the

Class;

(c) Whether Metropolis obtained, disclosed, or used the Personal Information of Plaintiff and the Class in violation of the DPPA and is therefore liable to Plaintiff and the Class;

(d) Whether Plaintiff is entitled to a judicial determination that Defendant's actions violate the DPPA as well as the rights and obligations of the Parties with respect to the demand for payment;

(e) Whether Plaintiff is entitled to an injunction against Defendant from committing future violations of the DPPA and sending unlawful demands for payment;

(f) Whether Metropolis's systematic conduct was willful or in reckless disregard of the law, warranting the award of punitive damages against Metropolis and in favor of Plaintiff and the Class, as provided by the DPPA.

(g) Whether Plaintiff and the members of the Class have sustained damages and, if so, the proper measure of such damages.

54. Typicality. The claims and defenses of Plaintiff are typical of the claims and defenses of the Class because they all had their personal information obtained by Metropolis and received an illegal parking citation. There is nothing peculiar about Plaintiff's claims. Indeed, Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff resides in this jurisdiction and will likely be required to use or will encounter Metropolis's parking lots or garages in the future. He is uncertain of his rights and obligations when he has no other practical choice but to park in lots that may be managed or operated by Metropolis.

55. Adequacy of Representation. Plaintiff will fairly and adequately assert and protect

the interests of the Class. First, Plaintiff has hired attorneys who are experienced in prosecuting class action claims across the United States, and who will adequately represent the interests of the Class. Second, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action as their claims are the same as the Class Members they seek to represent. Further, Plaintiff understands his obligations to the Class, is committed to vigorously litigating this matter, and will fairly and adequately protect and represent the interests of the Class.

### Rule 23 (b)(2) Criteria

56. This action is appropriate for class action status because the prosecution of separate actions by or against individual members of the class would be unduly burdensome, and create risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.

57. This action is appropriate for class action status because Defendants have acted in a pattern of the same unlawful conduct to all members of the class, on grounds generally applicable to all class members, thereby making final declaratory or injunctive relief concerning the class as a whole appropriate.

58. Defendants' actions and methods in obtaining, using and disclosing personal information pertaining to Plaintiffs and the class members without their consent violates the DPPA, and generally affects Plaintiffs and the class members in the same way, by invading their rights of privacy provided under the DPPA.

59. The continued violation of Plaintiffs' and the class members' rights secured under the DPPA results in irreparable harm for which there is no adequate remedy at law.

### Rule 23 (b)(3) Criteria

60. The common questions of law and fact set forth herein predominate over any

questions affecting only individual Class members. A class action provides a fair and efficient method for the adjudication of this controversy for these reasons and is superior to the alternative methods involved in individual litigation.

61. Although the Class is numerous enough to meet the numerosity requirement, the proposed Class does not create manageability problems because the claims turn on common legal determinations. Either Metropolis's actions are illegal, or they are not. There are no unusual legal or factual issues that would create manageability problems as the issues turn on interpretation of Metropolis's parking citations and means and purpose of collecting information enabling them to send such citations.

62. Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Metropolis when confronted with incompatible standards of conduct.

63. Despite the sizeable sum of money unlawfully retained by Metropolis, the claims of the individual Class members are, nevertheless, small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which Class members can, as a practical matter, recover their damages and stop the illegal practices at issue.

64. Class members are readily identifiable and ascertainable given the nature of Metropolis's business practices.

## VI.   CAUSES OF ACTION

**COUNT I**
**Violation of the Driver's Privacy Protection Act**
**18 U.S.C. § 2721, *et seq.***
**(DPPA Class)**

65. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-64, as if set forth fully herein.

66. The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

67. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

68. Metropolis knowingly obtained, disclosed and used personal information from a motor vehicle record in order to send Plaintiff an illegal parking citation, which is not a permissible purpose under the DPPA.

69. Plaintiff and the class members are uncertain of their rights and obligations with regard to the demand for payment and require judicial determination of the validity of the demand.

70. As a direct and proximate result of Metropolis's conduct, Plaintiff and the Class have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under 18 U.S.C. § 2724(b) of the DPPA.

71. Upon information and belief, Defendant acted with respect to Plaintiff and the Class in willful, or at the very least, reckless disregard of the law in the Defendants knew it was unlawful to access, disclose, obtain and/or use Plaintiff and the class members' personal information from non-public motor vehicle records in violation of the DPPA.

72. Plaintiff is informed and believes that unless restrained and enjoined by this Court, Defendant will continue to unlawfully obtain, disclose and use Plaintiff and the class members' confidential and personal information and invade their privacy to their detriment. No adequate remedy at law exists to prevent such harm.

73. Plaintiff and the class members have suffered and continue to suffer irreparable

harm until this Court grants permanent injunctive relief against Defendant from contacting Plaintiff.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and in favor of the class, and against Defendant Metropolis Technologies, Inc. for:

(a) an order certifying this case to proceed as a class action, designating Plaintiff as the Class representative, and designating the undersigned as Class Counsel;

(b) a declaration of the Plaintiff's rights and obligations with regard to the Defendant's demand for payment;

(b) actual damages not less than liquidated damages in the amount of $2,500;

(c) punitive damages upon proof of willful or reckless disregard of the law;

(d) an order permanently enjoining Metropolis from further violating the DPPA;

(e) reasonable attorneys' fees and costs; and

(f) Such further relief as this Court may deem appropriate.

## Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 19, 2024

                         Respectfully submitted,

                         **PARKER & CROFFORD**

                         /s/ Mary A. Parker
                         Mary A. Parker
                         TN Bar # 006016
                         5115 Maryland Way
                         Brentwood, TN 37027
                         (615) 244-2445 Office
                         (615) 255-6037 Fax
                         mparker@parker-crofford.com

**SCOTT D. OWENS, P.A.**
Scott D. Owens (pro hac vice forthcoming)
FL Bar # 597651
2750 N. 29th Ave., Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588
scott@scottdowens.com

**BRET LUSSKIN, P.A.**
Bret L. Lusskin, Jr., Esq. (pro hac vice forthcoming)
FL Bar # 028069
1025 E. Hallandale Beach Blvd., Ste 1532
Hallandale Beach, FL 33009
Tel: (954) 454-5841
Fax: (954) 454-5844
blusskin@lusskinlaw.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell (pro hac vice forthcoming)
FL Bar # 071072
Christopher J. Brochu (pro hac vice forthcoming)
FL Bar # 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Attorneys for Plaintiff and the Proposed Class***