**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

|  |  |  |
|---|---|---|
| YOUSEF ALHINDI, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:24-CV-00748 |
| v. | ) ) | Judge Aleta A. Trauger |
| METROPOLIS TECHNOLOGIES, INC., a Delaware Corporation | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT METROPOLIS TECHNOLOGIES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 6

FACTUAL BACKGROUND .............................................................................................. 8

ARGUMENT ...................................................................................................................... 9

I. § 12(b)(1) – Plaintiff Lacks Standing to Assert a DPPA Claim .......................... 9

   A. Standard Applicable to a Rule 12(b)(1) Motion .......................................... 9

   B. Plaintiff Cannot Establish Injury-In-Fact ................................................. 10

      1. Plaintiff Cannot Establish Any Harm Stemming from Metropolis' Supposed "Disclosure" ..................................................................................... 12

      2. Plaintiff Cannot Establish Any Harm Stemming from Metropolis' Supposed Invasion of Privacy or Intrusion Upon Seclusion ......................... 14

      3. Plaintiff Cannot Establish Any Harm from "Harassment and Annoyance" and/or "Emotional Distress" .......................................................... 10

II. § 12(b)(6) - Plaintiff Cannot Plead a DPPA Claim ......................................... 17

   A. Standard Applicable to a Rule 12(b)(6) Motion to Dismiss ....................... 17

   B. DPPA Broadly Authorizes Business Uses of a Driver's Information, and Plaintiff Cannot Allege Any Impermissible Use by Metropolis ...................... 17

   C. Plaintiff's Own Allegations Establish that Metropolis' Use of Plaintiff's Information is Expressly Authorized Under DPPA ........................................ 20

      1. DPPA Subsection (4) Expressly Authorizes Metropolis' Use of Plaintiff's Information in Anticipation of Litigation or Adjudication ................. 20

      2. Metropolis' Use of Plaintiff's Information Was Authorized by Tennessee Law, and Compliant with DPPA Subsection (14) ............................ 22

CONCLUSION ................................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................12, 14

*Banks v. Dep't of Motor Vehicles for Cal.,*
419 F. Supp. 2d 1186 (C.D. Cal. 2006) ..............................................................16

*Bass v. Anoka Cnty.,*
998 F. Supp. 2d 813 (D. Minn. 2014)...........................................................14, 15

*Baysal v. Midvale Indemnity Co.,*
78 F.4th 976 (7th Cir. 2023) .............................................................6, 7, 8, 9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................12, 14

*Branham v. TrueAccord Corp.,*
2023 WL 2664010 (N.D. Ill. Mar. 28, 2023)..........................................................10

*Burnette v. Porter,*
2011 WL 4529612 (Tenn. Ct. App. Sept. 30, 2011)..............................................9, 10

*Buxton v. Hartin Asset Mgmt., LLC,*
2023 WL 4861724 (W.D. Mich. July 31, 2023).......................................................17

*City of Tallahassee v. Federated Publ'ns, Inc.,*
2012 WL 5407280 (N.D. Fla. Aug. 9, 2012).....................................................16, 17

*Cook v. ACS State & Loc. Sols., Inc.,*
663 F.3d 989 (8th Cir. 2011) ....................................................................13, 15

*Davis v. Pro. Parking Mgmt. Corp.,*
2023 WL 4542690 (11th Cir. July 14, 2023).........................................................10

*Garey v. James S. Farrin, P.C.,*
35 F.4th 917 (4th Cir. 2022) ........................................................................6, 7

*Garland v. Orlans, PC,*
999 F.3d 432 (6th Cir. 2021) ..........................................................................11

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.,*
491 F.3d 320 (6th Cir. 2007) .........................................................................4, 5

ii

*Givens v. Mullikin ex rel. Est. of McElwaney,*
  75 S.W.3d 383 (Tenn. 2002)...................................................................9

*Graczyk v. W. Publishing Co.,*
  660 F.3d 275 (7th Cir. 2011) ...............................................................16

*Greenstein v. Noblr Reciprocal Exch.,*
  22-17023, 2024 WL 3886977 (9th Cir. Aug. 21, 2024) .......................7

*Heres v. Medicredit, Inc.,*
  2024 WL 3291738 (S.D. Fla. July 3, 2024)..........................................10

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,*
  48 F.4th 1236 (11th Cir. 2022) ..........................................................8, 9

*Hurst v. State Farm Mut. Auto. Ins. Co.,*
  2012 WL 426018 (D. Del. Feb. 9, 2012) ........................................14, 15

*Kampschroer v. Anoka Cnty.,*
  57 F. Supp. 3d 1124 (D. Minn. 2014), *aff'd*, 840 F.3d 961 (8th Cir. 2016).......................14, 15

*Kost v. Hunt,*
  983 F. Supp. 2d 1121 (D. Minn. 2013).............................................14, 15

*Lucas v. Moore,*
  412 F. Supp. 3d 749 (S.D. Ohio 2019) ...............................................16

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)...............................................................................5

*Mallak v. Aitkin Cnty.,*
  9 F. Supp. 3d 1046 (D. Minn. 2014)....................................................15

*Margan v. Niles,*
  250 F. Supp. 2d 63 (N.D.N.Y. 2003) ...................................................13

*Masterson v. IMA Fin. Grp., Inc.,*
  2023 WL 8647157 (D. Kan. Dec. 14, 2023).........................................11

*McDonough v. Anoka Cnty.,*
  799 F.3d 931 (8th Cir. 2015) ..........................................................14, 15

*McDonough v. City of Homestead, Fla.,*
  2021 WL 9276283 (S.D. Fla. Sept. 1, 2021) ...................................12, 15

*Nabozny v. Optio Sols. LLC,*
  84 F.4th 731 (7th Cir. 2023) ...........................................................8, 9

iii

*Pennell v. Glob. Tr. Mgmt., LLC*,
990 F.3d 1041 (7th Cir. 2021) ........................................................................10

*Pierre v. Midland Credit Mgmt., Inc.*,
29 F.4th 934 (7th Cir. 2022) ...........................................................................10

*Potocnik v. Carlson*,
9 F. Supp. 3d 981 (D. Minn. 2014).................................................................15

*Pucillo v. Nat'l Credit Sys., Inc.*,
66 F.4th 634 (7th Cir. 2023) ...........................................................................10

*Senne v. Vill. of Palatine, Ill.*,
784 F.3d 444 (7th Cir. 2015) ...........................................................................16

*Shadwell v. Clark*,
2009 WL 2970515 (W.D. Va. Sept. 16, 2009) ...........................................14, 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)............................................................................................5

*Stewart v. Healthcare Revenue Recovery Grp., LLC*,
2022 WL 200371 (M.D. Tenn. Jan. 21, 2022)...........................................7, 8, 9

*Taha v. Int'l Bhd. of Teamsters, Loc.*
781 F.3d 464 (7th Cir. 2020) ...........................................................................12

*Taylor v. Acxiom Corp.*,
612 F.3d 325 (5th Cir. 2010) .......................................................................13, 16

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*,
2006 WL 8431100 (S.D. Fla. Nov. 7, 2006)....................................................16

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*,
525 F.3d 1107 (11th Cir. 2008) .............................................................12, 15, 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................5, 8

*Van Vleck v. Leikin, Ingber, & Winters, P.C.*,
2023 WL 3123696 (6th Cir. Apr. 27, 2023) ....................................................11

*Ward v. NPAS, Inc.*,
63 F.4th 576 (6th Cir. 2023) ..............................................................................5

*Welch v. Jones*,
770 F. Supp. 2d 1253 (N.D. Fla. 2011)............................................................16

iv

*Williams v. CitiMortgage, Inc.*,
    498 Fed. App'x 532 (6th Cir. 2012) ...................................................................3

*Young v. W. Pub. Corp.*,
    724 F. Supp. 2d 1268 (S.D. Fla. 2010) ..............................................................13

**Statutes**

Driver's Privacy Protection Act ("DPPA"), 1 U.S.C. § 2721, *et. seq.* .................................. *passim*

Tennessee's Booting Consumer Protection Act ("BCPA"), Tenn. Code Ann. §§
    47-18-3201 to 3205............................................................................................18

Towing, Immobilization, and Oversight Normalization Act, Tenn. Code Ann. §
    55-31-101 *et seq.*..............................................................................................18

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)............................................................................................1, 4, 12

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 2, 12

Restatement (Second) of Torts § 652B (1977) ...........................................................9, 10

4866-1936-1777v1
2969773-000001 10/17/2024

Defendant, Metropolis Technologies, Inc. ("Metropolis"), submits its Memorandum of Law in support of its Motion to Dismiss the First Amended Class Action Complaint filed by Plaintiff, Yousef Alhindi ("Alhindi"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff's factual allegations are simple: he alleges that after he parked at one of Metropolis' privately-owned and operated parking lots and chose to drive away without paying, Metropolis obtained his name and address from motor vehicle records in order to send him a letter seeking payment for the parking. (Dkt. 29-1).[1] That is Plaintiff's sole basis for relief. Plaintiff does not assert any actual harm or damages, and he does not allege that his "personal information" (*i.e.*, his name and address) was disclosed to any third party; rather, he admits Metropolis' single letter was sent only to his residence. Having suffered no actual harm, Plaintiff instead bases this action on his supposed privacy rights under the Driver's Privacy Protection Act, 1 U.S.C. § 2721, *et. seq.* ("DPPA"). However, the law is clear that a bare statutory violation, which is all Plaintiff alleges, is insufficient to confer Article III standing.

Setting aside Plaintiff's lack of standing, the First Amended Class Action Complaint fails to state a plausible claim for relief. Plaintiff must plead that Metropolis used his DMV information for an impermissible purpose under DPPA but cannot do so. Plaintiff concedes that DPPA authorizes a set of permissible uses, at least two of which apply here. First, DPPA authorizes the use of DMV information in anticipation of potential litigation or adjudication. Plaintiff concedes that the letter sent to him was sent in anticipation of potential litigation – indeed, *it says so on its face*. Second, DPPA authorizes the use of DMV information for any "use specifically authorized

---

[1] Dkt. 29-1, labeled as Exhibit A to the Complaint (Dkt. 29), is the "Notice of Parking Violation" Metropolis sent to Plaintiff's home. Dkt. 29-1 will be referred to as the "Notice" throughout this Memorandum.

4866-1936-1777v1
2969773-000001 10/17/2024

under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." Metropolis' letter related to the operation of a motor vehicle and was authorized under Tennessee law where Plaintiff resides and where he parked in Metropolis' lot. For these reasons, Plaintiff's claims are additionally subject to dismissal, with prejudice, pursuant to Rule 12(b)(6).

Having had ample time to review Metropolis' motion to dismiss the initial complaint (Dkt. 26) and supporting memorandum (Dkt. 27), Plaintiff filed his First Amended Class Action Complaint (the "Complaint") (Dkt. 29), which simply underscores Plaintiff's lack of standing and inability to state a plausible claim for relief. As an initial matter, Plaintiff attempts to manufacture standing by adding a single, new paragraph (¶ 38), but continues to allege non-cognizable harm that is repetitive of what he already alleged:

> Metropolis invaded Plaintiff's privacy by violating the DPPA when it (i) obtained Plaintiff's personal information from the State's motor vehicle database for a purpose not permitted under the DPPA, and (ii) used Plaintiff's information to send to his home address a notice of parking violation that threatened Plaintiff with unlawful action—such as towing and booting—and misleadingly represented Metropolis as a governmental agency able to impose fines, and boot and tow vehicles.

(Dkt. 29 ¶ 38). This new allegation does not give Plaintiff standing. First, a bare statutory violation is insufficient to confer standing. Second, sending a single letter to one's home does not constitute an "invasion of privacy" sufficient to confer standing. Third, contrary to Plaintiff's allegation, the threat of towing and booting (which never occurred) by private parking lot operators is expressly authorized by Tennessee law and local Nashville ordinances. There is nothing "unlawful" about it. Fourth, a cursory review of the Notice sent to Plaintiff's home shows that there are no

4866-1936-1777v1
2969773-000001 10/17/2024

representations that Metropolis is a governmental agency. (Dkt. 29-1).[2] Further, Plaintiff deleted his allegation that he paid the amount due (*see* Dkt. 1 ¶ 30), however, regardless of whether Plaintiff paid or not, as discussed more fully below, he still lacks standing.

By amending his complaint, Plaintiff also seemingly now admits that private companies can access and use personal information contained in motor vehicle records for commercial purposes. (*Compare* Dkt. 1 ¶ 1 to Dkt. 29 ¶ 1 (deleting allegation that "[t]he government can access personal data for legitimate police purposes and private companies cannot access and use such data for commercial purposes.")).

A cursory review of the Complaint thus shows that Plaintiff has again failed to, and will never be able to, demonstrate standing or plead a viable claim under DPPA.

## FACTUAL BACKGROUND

Plaintiff alleges that on December 21, 2023, he "parked at a private parking lot" located in Nashville, Tennessee, "which is operated or managed by Metropolis." (Dkt. 29 ¶ 26). Rather than paying for parking in the lot, located in downtown Nashville, he "simply parked in an available parking space . . . and subsequently drove away." (*Id.* ¶ 27). Plaintiff alleges that after he exited Metropolis' private parking lot without paying, Metropolis obtained his name and "home address" from motor vehicle records and requested payment. (*Id.* ¶¶ 20-22, 32).

Contrary to Plaintiff's Complaint, the Notice is not "disguised" as a government-issued citation, as it prominently displays Metropolis' logo and address and states in the very first sentence that Plaintiff received the Notice because he "recently parked at a Metropolis-managed

---

[2] "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.,* 498 Fed. App'x 532, 536 (6th Cir. 2012) (citations omitted).

4866-1936-1777v1
2969773-000001 10/17/2024

parking facility and left without paying the amount due." (Dkt. 29-1). Plaintiff's recitation of Metropolis' Notice conveniently excludes and misstates its actual contents, much of which is in capitalized or bold print, including dispute procedures: "For help or to dispute this ticket, you may contact customer service via **www.payments.metropolis.io**. If you do not dispute this violation within 30 days of receiving this notice, Metropolis will assume the ticket and monies owed are valid." (Dkt. 29-1). The Notice also states in bold that "**Metropolis is not a debt collection agency**." (*Id.*). Plaintiff was given the chance to pay online with a credit or debit card. (*Id.*). The Notice listed the appropriate fees, and provided succinct, meaningful and prominently listed dispute procedures. (*Id.*). The Notice states that a failure to pay may cause Plaintiff to be "**subject to additional fees, referred to a dedicated collection agency or incur other legal action** . . ." (*Id.*) (emphasis added). Rather than using the informal dispute resolution procedures, Plaintiff rushed to file this class action lawsuit under the guise of non-existent statutory violations.

Plaintiff does not dispute that he and the putative class owed the money that Metropolis attempted to collect. He also cannot allege that Metropolis disclosed his name or home address to anyone other than himself – on the contrary, he pleads that the letter was sent only to his "home address." (Dkt. 29 ¶¶ 32, 38). The only purported "injury" Plaintiff asserts is that the Notice, which requested that Plaintiff pay for parking after he initially failed to do so, acted as an "invasion of [his] privacy, intrusion upon seclusion, harassment and annoyance." (*Id.* ¶ 48). Plaintiff does not seek or assert any actual damages or harm in this action. He only seeks statutory "damages available under the DPPA," in addition to attorneys' fees and costs. (*Id.* ¶ 71).

## ARGUMENT

**I.** **§ 12(b)(1) – Plaintiff Lacks Standing to Assert a DPPA Claim**

      **A.** **Standard Applicable to a Rule 12(b)(1) Motion**

A facial challenge to standing asserts that the plaintiff's allegations, even when taken as true, do not provide a basis for subject matter jurisdiction. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). It is the plaintiff's burden to sufficiently allege facts supporting standing. *Id.*

**B.  Plaintiff Cannot Establish Injury-In-Fact**

To demonstrate standing, a plaintiff must establish three elements: (1) he has suffered an injury-in-fact; (2) the injury is "fairly traceable to the challenged conduct of the defendant"; and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An "injury-in-fact" is "an invasion of a legally protected interest which is (a) concrete and particularized…and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To confer standing, an injury "must be real, and not abstract." *Spokeo*, 578 U.S. at 340 (internal citations omitted). Indeed, a plaintiff "cannot 'allege a bare procedural violation' of [a statute], 'divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Ward v. NPAS, Inc.*, 63 F.4th 576, 580 (6th Cir. 2023) (quoting *Spokeo*, 578 U.S. at 341).

Plaintiff does not allege any actual damages here, and he does not dispute that he owed the money for unpaid parking that Metropolis attempted to collect. Plaintiff does not allege that Metropolis sent, revealed, or otherwise disclosed his "personal information" to anyone other than himself,  conceding that his information was sent only to him at his home. (Dkt. 29 ¶¶ 32, 38). Thus, Plaintiff's information ***has never even been disclosed***. Having conceded that he was in no way actually harmed by Metropolis' conduct, Plaintiff's claim rests solely on alleged statutory "damages available under the DPPA." (*Id.* ¶ 71). Yet a statutory violation alone is generally insufficient to confer standing. *Ward*, 63 F.4th at 580 ("[The plaintiff] must show either that the

10

procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury.") (internal quotations omitted); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (holding that the plaintiffs lacked standing absent an actual disclosure of information; a plaintiff cannot sue "merely to ensure a defendant's 'compliance with regulatory law.'").

For Plaintiff to demonstrate an injury-in-fact for a DPPA violation, he must allege that his injury is analogous to a "historical or common-law" cause of action. *Baysal v. Midvale Indemnity Co.,* 78 F.4th 976, 979 (7th Cir. 2023) ("The [DPPA] does not identify any particular compensable harm . . . in this situation, courts should inquire whether what the plaintiff asserts as injury has a historical or common-law analog."). In *Baysal*, the Seventh Circuit affirmed dismissal of DPPA claims due to lack of standing, concluding that the plaintiff failed to assert an injury with a common-law analog, and noting that no "state ma[kes] disclosure of a driver's-license number tortious." *Id.* at 979. The court reasoned that "a license number is not viewed as embarrassing (as a low grade point average or a poor credit score would be) or private (as medical details are) but as neutral." *Id.*; *id.* at 980 ("We have explained why a driver's-license number is not potentially embarrassing or an intrusion on seclusion. It is a neutral fact derived from a public records system, a fact legitimately known to many private actors and freely revealed to banks, insurers, hotels, and others . . . the disclosure of a number in common use by both public and private actors does not correspond to any tort.").

Additionally, as the *Baysal* court explained, there has only been one federal appellate decision post-*TransUnion* in which a court found standing in a DPPA action, and in that case there were allegations of actual harm. *Id.* at 980. That is not the case here. The case referred to in *Baysal* is the same case Plaintiff cites in his Complaint to support his allegation that he has standing,

11

*Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022). (Dkt. 29 ¶ 49). However, as the Seventh Circuit found in *Baysal* – a more recent case that, as discussed above, found a lack of standing for DPPA violations absent any actual damages – *Garey* is the only post-*TransUnion* opinion by a United States Court of Appeals that found standing in a DPPA case and was distinguishable because in *Garey*, the plaintiffs alleged they received unsolicited ads similar to junkfax and robocalls. *Baysal*, 78 F.4th at 980. Here, there are no allegations of actual harm or even a disclosure to a third party, as Plaintiff admittedly received only a single letter at his home address. (Dkt. 29 ¶¶ 28, 32).

In addition to *Garey* and *Baysal*, the only other post-*TransUnion* federal appellate opinion addressing standing in the context of DPPA claims is *Greenstein v. Noblr Reciprocal Exch*., 22-17023, 2024 WL 3886977, at *3 (9th Cir. Aug. 21, 2024), in which the court also found a lack of standing absent some actual concrete harm resulting from the DPPA violation. The court held that DPPA does not "provide a basis for standing," and rejected the plaintiff's attempt to analogize DPPA claims to invasion of privacy claims because the disclosure of motor vehicle information is not "highly offensive," "an egregious breach of the social norms," nor "offensive and objectionable to the reasonable person." *Id.*

Plaintiff lacks standing to assert a claim under DPPA. However, in a slapdash effort to plead that he suffered some harm that would be remediable at common law, Plaintiff alleges, in conclusory fashion, that he has been "harm[ed]" in the form of "invasion of [his] privacy, intrusion upon seclusion, harassment and annoyance." (Dkt. 29 ¶ 48). None of these allegations are sufficient to confer standing in this case.

### 1. Plaintiff Cannot Establish Any Harm Stemming from Metropolis' Supposed "Disclosure"

12

Standing can only be premised on an alleged disclosure of private information where such disclosure is made to a third party and made "public." *See Stewart v. Healthcare Revenue Recovery Grp., LLC*, 2022 WL 200371, at *17 (M.D. Tenn. Jan. 21, 2022) (finding no standing because "the plaintiff here does not allege or present facts suggesting that any actual person saw or read any private information concerning her or her daughter."); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735-36 (7th Cir. 2023); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1245 (11th Cir. 2022).

Here, Plaintiff concedes that Metropolis' alleged "disclos[ure]" was only sent privately to Plaintiff at his residence. (Dkt. 29 ¶¶ 32, 38). Thus, there was ***no disclosure of any information to a third party***, which is required to establish standing. *See TransUnion* 594 U.S. at 423. Plaintiff's allegations thus fall far short of the requisite bar to establish remediable harm from an alleged disclosure of personal information. *Stewart,* 2022 WL 200371 at *17 (citing *TransUnion* and ruling that: ***The plaintiff here does not allege or present facts suggesting that any actual person saw or read any private information concerning her or her daughter*** . . . [The plaintiff's] factual allegations and evidence do not show a public disclosure of private information. ***She has not, therefore, alleged an injury traditionally recognized in Tennessee or by other American courts.***") (emphasis added); *Nabozny,* 84 F. 4th at 736 ("Because Nabozny's complaint does not allege that Optio publicized her private information, she has not suffered a cognizable injury… Without a public-exposure component, Nabozny's alleged injury is not analogous to the harm at the core of the public-disclosure tort."); *Baysal*, 78 F.4th at 977 (standing requires "concrete injury traceable to the disclosure," such as injury via "leaked or hacked data."); *Hunstein*, 48 F.4th at 1246 (finding no standing from the defendant's alleged disclosure of plaintiff's private information to an unauthorized third party: common law "requires far more than what [the plaintiff] has

13

offered." It requires disclosure to "the public at large," not just "communication by the defendant to a third person.").

Here, unlike in *Stewart*, *Hunstein, Nabozny,* or *Baysal,* Metropolis never disclosed Plaintiff's information to any third party. Thus, Plaintiff cannot allege he suffered any harm from Metropolis' alleged "disclosure" of his name and address.

### 2. Plaintiff Cannot Establish Any Harm Stemming from Metropolis' Supposed Invasion of Privacy or Intrusion Upon Seclusion

To establish an invasion of privacy claim based on intrusion upon seclusion under Tennessee law, the plaintiff must "plead and prove three elements: (1) an intentional intrusion, physical or otherwise; (2) upon the plaintiff's solitude or seclusion or private affairs or concerns; (3) which would be highly offensive to a reasonable person." *Burnette v. Porter*, 2011 WL 4529612, at *4 (Tenn. Ct. App. Sept. 30, 2011) (citing Restatement (Second) of Torts § 652B (1977)). A defendant is subject to liability for intrusion upon seclusion "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Givens v. Mullikin ex rel. Est. of McElwaney*, 75 S.W.3d 383, 412 (Tenn. 2002) (quoting Restatement (Second) of Torts § 652B (1977) cmt. c). "Thus there is no liability for the examination of a public record concerning the plaintiff . . . Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." Restatement (Second) of Torts § 652B (1977) cmt c. Here, Plaintiff's name, address, and license plate number are matters of public record – not private facts – and are thus insufficient to establish an intrusion upon seclusion claim as a matter of law. And, Plaintiff cannot complain about the photograph taken of his vehicle because it was taken while he was driving in public.

14

Additionally, Plaintiff must allege that the intrusion "is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Restatement (Second) of Torts § 652B (1977) cmt d; *see Burnette*, 2011 WL 4529612 at *4. Plaintiff fails to allege any such facts. And Plaintiff will never be able to allege any such facts because accessing one's DMV information in order to send a letter ***to that person*** requesting payment for services is nowhere near sufficiently offensive to sustain an invasion of privacy or intrusion upon seclusion claim. Indeed, requests for payment are routinely held to be insufficiently offensive to sustain such claims. *See* Restatement (Second) of Torts § 652B (1977) cmt d. ("[T]here is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt."); *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023) (affirming dismissal of invasion of privacy claim, noting that "there is nothing inherently bothersome, intrusive, or invasive about a collection letter delivered via U.S. Mail."); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (sending of dunning letter to plaintiff did not invade plaintiff's privacy); *Branham v. TrueAccord Corp.*, 2023 WL 2664010, at *7 (N.D. Ill. Mar. 28, 2023) ("Plaintiff here has made no allegations suggesting any such intrusion; she merely alleges that she received at least two emails . . . [T]hese allegations do not suggest an intrusion that is 'highly offensive' to a reasonable person such that Plaintiff's injury is analogous to the tort of intrusion upon seclusion."); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (holding that plaintiff who received deceptive debt collection letter, but who did not make payment, promise to do so, or otherwise act to her detriment in response to the letter, did not suffer a legally cognizable harm); *Heres v. Medicredit, Inc.,* 2024 WL 3291738, at *11 (S.D. Fla. July 3, 2024) (dismissing intrusion upon seclusion claim: "Plaintiff lacks support for his position that receiving an unwanted debt letter

15

causes the same kind of harm as an intrusion upon seclusion at common law…Plaintiff fails to provide a single case where a court found receiving a single letter constitutes an intentional intrusion upon one's seclusion."); *see also Davis v. Pro. Parking Mgmt. Corp.,* 2023 WL 4542690, at *2 (11th Cir. July 14, 2023) (affirming dismissal where plaintiff alleged statutory FDCPA violations from private parking lot operator's notice of non-payment, but failed to allege actual harm sufficient to confer standing). Likewise here, the mailed letter was nothing more than a collection letter delivered ***to Plaintiff*** via U.S. Mail, which cannot intrude upon seclusion.

This is not a robocall, junk fax, or unsolicited advertisement case. By Plaintiff's own allegations, he initiated the relationship with Metropolis by parking in Metropolis' privately owned and operated parking lot. Metropolis believed that Plaintiff owed payment for having done so. And Metropolis' alleged conduct was nothing more than an effort to collect the payment that Metropolis believed was legally owed – conduct which the law holds cannot constitute an intrusion upon seclusion.

### 3. Plaintiff Cannot Establish Any Harm from "Harassment and Annoyance" and/or "Emotional Distress"

Lastly, Plaintiff pleads, in conclusory fashion, that he experienced "harassment and annoyance" and "emotional distress." (Dkt. 29 ¶¶ 36, 37 48). However, as a matter of law, bare allegations of psychological injuries such as annoyance, emotional distress, and anxiety are not cognizable theories of harm. *See, e.g., Garland v. Orlans, PC,* 999 F.3d 432, 440 (6th Cir. 2021) ("[A] general allegation of emotional harm like anxiety or distress falls 'short of cognizable injury as a matter of general tort law,' because 'liability [for emotional harm] arises' '*only* where it is extreme.' A bare anxiety allegation says nothing about severity…Because bare allegations of confusion and anxiety do not qualify as injuries in fact, [the plaintiff's] injuries cannot create standing." (internal citations omitted)); *Van Vleck v. Leikin, Ingber, & Winters, P.C.*, 2023 WL

16

3123696, at *6 (6th Cir. Apr. 27, 2023) (holding that plaintiff's asserted injury of emotional distress caused by personal service at his residence was insufficient to establish a concrete injury to confer Article III standing); *Masterson v. IMA Fin. Grp., Inc.*, 2023 WL 8647157, at *7 (D. Kan. Dec. 14, 2023) ("Plaintiffs' bare-bones allegations of emotional distress are not sufficient to confer standing."). Plaintiff's conclusory allegations of "harassment and annoyance" and "emotional distress" are insufficient to establish an injury-in-fact.

Plaintiff lacks standing and his claims should be dismissed pursuant to Rule 12(b)(1).

## II.  § 12(b)(6) - Plaintiff Cannot Plead a DPPA Claim

### A.  Standard Applicable to a Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter to state a plausible claim for relief that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations beyond the "unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* When considering the viability of a claim in the face of a Rule 12(b)(6) motion, courts reject "sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020).

### B.  DPPA Broadly Authorizes Business Uses of a Driver's Information, and Plaintiff Cannot Allege Any Impermissible Use by Metropolis

DPPA only bars the use of personal information from a motor vehicle record where such use is "for a purpose not permitted" by DPPA. 18 U.S.C. § 2724(a). Plaintiff bears the burden of showing an impermissible purpose. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King,*

17

& *Stevens, P.A.*, 525 F.3d 1107, 1112 (11th Cir. 2008). "[C]onclusory allegations" are not enough – Plaintiff must specifically allege the "impermissible purpose." *McDonough v. City of Homestead, Fla.*, 2021 WL 9276283, *4 n.4 (S.D. Fla. Sept. 1, 2021) (dismissing allegations as "conclusory" where the plaintiff pled that the defendant "knowingly obtained, disclosed and used personal information" for a "use not permitted" by DPPA).

There are many permissible uses of DMV information under DPPA, including "legitimate business" use. *Young v. W. Pub. Corp.,* 724 F. Supp. 2d 1268, 1279 (S.D. Fla. 2010) (DMV information is "only denied to a narrow group of people that lack legitimate business"); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 336 (5th Cir. 2010) ("Congress did *not* intend to suppress legitimate business uses of motor vehicle records."); *Cook v. ACS State & Loc. Sols., Inc.,* 663 F.3d 989, 995 (8th Cir. 2011) (DPPA protects "legitimate governmental and business needs for [DMV] information." It "defines 'legitimate business' broadly, including…private investigations, and anything related to the operation of a motor vehicle." It is designed to allow businesses to use DMV "information that is necessary and essential for them to do business.") (quoting DPPA's legislative history). In analyzing DPPA, its purpose, and its legislative history, the Eighth Circuit could not identify a single business-related use of driver information that would be impermissible. *Cook,* 663 F.3d at 995-96 ("[T]he only business that [DPPA co-sponsor] Moran expressed concern about was the use of driver information in direct marketing solicitations. Even this use was not prohibited.").

Rather than targeting Metropolis' legitimate business uses, DPPA was intended to prevent stalking, harassment and related crimes. *Margan v. Niles*, 250 F. Supp. 2d 63, 68–69 (N.D.N.Y. 2003). Indeed, DPPA arose after the death of an actress, Rebecca Schaeffer, whose stalker and killer obtained her address through DMV records. *Id.* at 68-69 ("[T]he murder of Rebecca

18

Schaeffer led to [DPPA]." "Congress enacted [DPPA]" due to "the concerns of women who were being stalked because of easy access to motor vehicle records." "[T]he intent of this bill is simple and straightforward . . . to stop stalkers from obtaining the name and address of their prey before another tragedy occurs . . . [DPPA] . . . is a reasonable and practical crime fighting measure" intended to "close a loophole in the law that permits stalkers to obtain—on demand—private, personal information about their potential victims.") (quoting DPPA's legislative history).

Federal courts consistently dismiss DPPA claims on their face where there are no *plausible* allegations of an impermissible use. *See, e.g., McDonough v. Anoka Cnty.*, 799 F.3d 931, 954-55 (8th Cir. 2015) (affirming dismissal of the plaintiff's DPPA complaint where the plaintiff alleged "in conclusory fashion that his personal information was obtained 'without probable cause or reasonable suspicion,'" but "[h]is allegations of underlying facts lack the specificity necessary to give rise to a reasonable inference that the Defendants obtained his personal information for an impermissible purpose."); *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1134 (D. Minn. 2013) (complaint failed to state a claim under DPPA where it did "not allege any facts that support an inference that those accesses [of plaintiff's motor vehicle data] were for an improper purpose rather than a permissible use . . ."); *Bass v. Anoka Cnty.*, 998 F. Supp. 2d 813, 821 (D. Minn. 2014) (internal citations omitted) ("[T]he court will not infer from bare, conclusory allegations that defendants' purposes were improper . . . Therefore, [the plaintiff] has not adequately pleaded the DPPA claims under *Twombly* and *Iqbal*, and dismissal of the remaining timely DPPA claims is warranted."); *Hurst v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 426018, *11 (D. Del. Feb. 9, 2012) (granting motion to dismiss DPPA claims where the complaint did not contain "any factual allegations that plausibly suggest[ed] that the defendants accessed [the plaintiff's] DMV records" for a purpose not permitted under DPPA); *Shadwell v. Clark*, 2009 WL 2970515, *3 (W.D. Va. Sept. 16, 2009)

19

(dismissing DPPA complaint where the plaintiff "has not alleged sufficient facts to demonstrate plausibly that [defendant] accessed his driver's information 'for a purpose not permitted under [the DPPA].'"); *Kampschroer v. Anoka Cnty.*, 57 F. Supp. 3d 1124, 1138 (D. Minn. 2014), *aff'd*, 840 F.3d 961 (8th Cir. 2016) (same); *Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1066 (D. Minn. 2014) (same); *Potocnik v. Carlson*, 9 F. Supp. 3d 981, 989 (D. Minn. 2014) (same); *Cook,* 663 F.3d 989 (same).

Here, Plaintiff has failed to identify how Metropolis used his information for any impermissible purpose, instead conceding that Metropolis used his information to obtain payment for use of Metropolis' private parking lot – an obviously legitimate business purpose. (Dkt. 29, ¶¶ 26-28, 32). Plaintiff's failure to specifically identify an impermissible purpose alone defeats his claim, as such specific identification is required under DPPA. *Thomas*, 525 F.3d at 1112; *McDonough,* 2021 WL 9276283 at *4 n. 4; *McDonough v. Anoka Cnty.*, 799 F.3d at 954-55; *Kost v. Hunt*, 983 F. Supp. 2d at 1134; *Bass,* 998 F. Supp. 2d at 821; *Hurst,* 2012 WL 426018 at *11; *Shadwell*, 2009 WL 2970515, at *3; *Kampschroer*, 57 F. Supp. 3d at 1138; *Mallak*, 9 F. Supp. 3d at 1066; *Potocnik,* 9 F. Supp. 3d at 989.

### C.     Plaintiff's Own Allegations Establish that Metropolis' Use of Plaintiff's Information is Expressly Authorized Under DPPA

Even if Plaintiff had attempted to allege an impermissible use of his DMV information, his claim would still fail because, as he concedes, DPPA specifically authorizes "permissible uses" of DMV information. (Dkt. 29 ¶ 46). Plaintiff's own allegations show at least two of those uses apply here to bar Plaintiff's claim.

#### 1.     DPPA Subsection (4) Expressly Authorizes Metropolis' Use of Plaintiff's Information in Anticipation of Litigation or Adjudication

20

DPPA expressly authorizes the use of DMV information "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including [for] investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4).

"The plain language" of § 2721(b)(4) is "extremely broad." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.,* 2006 WL 8431100, *5 (S.D. Fla. Nov. 7, 2006). DPPA allows commercial entities to obtain DMV information even where "much of the information obtained did not turn out to be useful," or even where it was never "used for any purpose whatsoever." *Id.* It does not matter whether the information was ever used in an adjudicatory proceeding—so long as the information was intended for **potential** use in a future proceeding, it is permitted. *Welch v. Jones,* 770 F. Supp. 2d 1253, 1259 (N.D. Fla. 2011) ("Had Congress intended § 2721(b) to require actual use—rather than only a purpose to use when appropriate—it could have said so."); *Thomas,* 525 F.3d at 1115 (dismissing DPPA claim where DMV records were obtained "for prospective, not-yet-filed litigation"); *Senne v. Vill. of Palatine, Ill.,* 784 F.3d 444, 445 (7th Cir. 2015) (information is "for use" in connection with anticipated litigation "whether or not" the information "would ever be used."); *Graczyk v. W. Publishing Co.,* 660 F.3d 275, 279 (7th Cir. 2011) (theoretical future use is sufficient—uses are not required to be "immediate" or certain); *Taylor,* 612 F.3d at 337 (use is permitted even where it is "likely" that much of the information obtained will never be actually used for such a purpose).

Courts across the country routinely hold that where DMV information is obtained to collect debts or send notices, charges, or tickets in connection with driving or parking, such use is in anticipation of litigation, and is therefore authorized under DPPA. *City of Tallahassee v. Federated Publ'ns, Inc.,* 2012 WL 5407280, at *1 (N.D. Fla. Aug. 9, 2012) (dismissing DPPA claim where

4866-1936-1777v1
2969773-000001 10/17/2024

DMV information was obtained to send notices to drivers who ran red lights); *Senne*, 784 F.3d at 445 (affirming DPPA dismissal where DMV information was used to send parking tickets); *Lucas v. Moore*, 412 F. Supp. 3d 749, 755 (S.D. Ohio 2019) (dismissing DPPA claim where DMV information was used in connection with traffic violation); *Banks v. Dep't of Motor Vehicles for Cal.,* 419 F. Supp. 2d 1186, 1194 (C.D. Cal. 2006) (dismissing DPPA claim as "patently frivolous" where information was used to mail a notice concerning a traffic ticket); *Buxton v. Hartin Asset Mgmt., LLC*, 2023 WL 4861724, *8 (W.D. Mich. July 31, 2023) (dismissing DPPA claim where information was used to collect on a debt). In requesting payment and initiating a potential dispute resolution procedure, Metropolis acted in anticipation of potential litigation.

Plaintiff admits that Metropolis used his alleged information to "mail" "a citation" to seek payment and to "***threaten[] . . . legal action***." (Dkt. 29 ¶¶ 28, 30) (emphasis added). The Notice clearly states that Plaintiff can dispute the charge and that "all vehicles that fail to pay for parking" "may be subject to additional fees, referred to a dedicated collection agency ***or incur other legal action*** . . ." (Dkt. 29-1) (emphasis added). Moreover, the Notice contains an informal dispute resolution procedure. (*Id.*). As Metropolis only obtained Plaintiff's information in its collection efforts after Plaintiff failed to pay the amount owed and in anticipation of potential litigation, there can be no doubt that such use was authorized by the broad permissible use espoused in DPPA § 2721(b)(4). *See City of Tallahassee*, 2012 WL 5407280, at *1-2 (dismissing DPPA claims pursuant to DPPA § 2721(b)(4) where the defendant used DMV information to send notices to drivers who ran red lights). *Id.*

### 2. Metropolis' Use of Plaintiff's Information Was Authorized by Tennessee Law, and Compliant with DPPA Subsection (14)

DPPA also expressly permits the use of DMV information "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation

22

of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). In pleading that Metropolis used Plaintiff's information to send a "Notice of Parking Violation," Plaintiff concedes both points. (Dkt. 29 ¶¶ 20-22, 28). Metropolis' letter is "related to the operation of a motor vehicle," (18 U.S.C. § 2721(b)(14)), and it is also authorized under Tennessee law and local Nashville ordinances as an attempt to collect parking fees owed. *See* Tenn. Code Ann. § 47-18-3203(c)(4)(a)[3] ("If a vehicle immobilization device is placed on a vehicle that is parked on private property due to the vehicle owner's failure to pay the required parking charge, then the owner or operator of the private property may require the owner of the vehicle to pay the applicable immobilization device removal fee and all unpaid parking fines and fees to have the immobilization device removed."); Nashville Ordinances tit. 6, Div. 1, § 6.81.180(C) ("If a boot is placed on a vehicle parked at an unattended commercial parking lot for failure to pay the required parking charge, the owner or operator of the unattended commercial parking lot may require the owner of the vehicle to pay the applicable booting removal fee plus all unpaid parking fines in order to have the boot removed."); Nashville Ordinances tit. 13, Div. 11, § 13.40.040(G) ("All parking lots…open to the public for which a parking fee is charged shall display a sign at the entrance of the parking lot or garage or at each automatic pre-payment station indicating the fee to be charged, as well as the amount of any fines or penalties that may be charged.").

Here, Plaintiff admits he parked in Metropolis' private parking lot in downtown Nashville "and subsequently drove away" without paying. (Dkt. 29 ¶¶ 26-27). As such, an obligation to pay arose under Tennessee law after Plaintiff exited the lot, which Metropolis then attempted to collect.

---

[3] Tennessee's Booting Consumer Protection Act ("BCPA"), Tenn. Code Ann. §§ 47-18-3201 to 3205, was in effect in December 2023, when Plaintiff parked in Metropolis' private parking lot. Subsequently, on July 1, 2024, the BCPA was repealed and replaced by the Modernization of Towing, Immobilization, and Oversight Normalization Act, Tenn. Code Ann. § 55-31-101 *et seq.*

Since Metropolis' Notice was a valid attempt to collect an outstanding parking fee owed under Tennessee law, Metropolis' use of Plaintiff's DMV information is permissible under DPPA § 2721(b)(14).

## **CONCLUSION**

Plaintiff lacks standing to assert a DPPA claim. But even if Plaintiff had standing, his claims fail as a matter of law. Plaintiff has not alleged an impermissible use under DPPA, nor could he given that Metropolis' alleged use falls squarely within certain "permissible uses" enumerated in the statute.

For these reasons, as set forth herein, Metropolis respectfully requests that Plaintiff's First Amended Class Action Complaint be dismissed in its entirety, with prejudice.

Dated: October 17, 2024                              Respectfully submitted,

*s/ Brigid M. Carpenter*
Brigid M. Carpenter
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1600 West End Ave., Suite 2000
Nashville, Tennessee 37203
Tel: (615) 726-7341
bcarpenter@bakerdonelson.com


*s/ Melissa A. Siebert by BMC by permission*
Melissa A. Siebert (*Pro Hac Vice*)
Corey Hickman (*Pro Hac Vice*)
Cozen O'Connor
123 N. Wacker Dr.
Suite 1800
Chicago, Illinois 60606
Tel.: (312) 832-3100
msiebert@cozen.com
chickman@cozen.com

*Attorneys for Defendant Metropolis Technologies, Inc.*

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of Amended Motion to Dismiss was served on the party listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Mary A. Parker
Parker & Crofford
5115 Maryland Way
Brentwood, Tennessee 37027
mparker@parker-crofford.com

Scott D. Owens
Scott D. Owens, P.A.
2750 N. 29th Avenue, Suite 209A
Hollywood, Florida 33020
scott@scottdowens.com

Bret Lusskin, Jr.
Bret Lusskin,P.A.
1025 E. Hallandale Beach Boulevard
Suite 1532
Hallandale Beach, Florida 33009
blusskin@lusskinlaw.com

Janet R. Varnell
Christopher J. Brochu
Varnell & Warwick, P.A.
400 N Ashley Drive, Suite 1900
Tampa, Florida 33602
jvarnell@vandwlaw.com
cbrochu@vandwlaw.com
ckoerner@vandwlaw.com

this 17th day of October, 2024.

s/ Brigid M. Carpenter
Brigid M. Carpenter

4866-1936-1777v1
2969773-000001 10/17/2024