# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **YOUSEF ALHINDI, individually**<br>**and on behalf of all others similarly**<br>**situated,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) ) | **Case No. 3:24-cv-00748** |
| | ) | **Judge Campbell/Frensley** |
| **v.** | ) ) | |
| **METROPOLIS TECHNOLOGIES, INC.,**<br>**a Delaware corporation,** | ) ) ) | |
| **Defendant.** | ) | |

_____

| | | |
|---|---|---|
| **MATTHEW PETRONE and**<br>**GREGORY ANDERSON, individually**<br>**And on behalf of all others similarly situated,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) ) | |
| | ) | |
| **v.** | ) ) | **Case No. 3:24-cv-00928** |
| | ) | **Judge Campbell/Frensley** |
| **METROPOLIS TECHNOLOGIES, INC.,** | ) ) | |
| **Defendant.** | ) | |

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS

Plaintiff YOUSEF ALHINDI ("Plaintiff") hereby files his Response in Opposition to
Defendant METROPOLIS TECHNOLOGIES, INC.'s ("Defendant" or "Metropolis") Motion to
Dismiss Plaintiff's First Amended Complaint (the "Motion") [ECF No. 34]. For the reasons
expressed herein, Defendant's Motion should be denied.

## INTRODUCTION

This case challenges Defendant Metropolis Technologies, Inc.'s unlawful acquisition and
use of Plaintiff's highly regulated personal information from motor vehicle records to send a false,

misleading, and coercive "citation" demanding payment under threat of towing, booting, and litigation. The conduct alleged falls squarely within the core prohibitions of the Driver's Privacy Protection Act (DPPA), which Congress enacted to prevent precisely this kind of misuse of personal data for abusive commercial purposes.

Metropolis does not deny that it accessed Plaintiff's personal information. Nor does it dispute that it used that information to send a communication designed to look like a government-issued citation even though no ticket had ever been issued. Instead, it asks this Court to dismiss the Complaint

[ECF No. 29] for two main reasons: (1) Plaintiff does not have standing; and (2) Defendant's conduct falls under one or more permissible uses under the DPPA.

At the pleading stage, Plaintiff need only plausibly allege that Defendant obtained or used personal information from a state motor vehicle record for a purpose not authorized by the statute. Plaintiff has done so in detail. Moreover, he has alleged both concrete harm and financial injury as a result of Defendant's conduct. Binding and persuasive authority recognize these injuries as sufficient to establish standing and to state a claim under the DPPA.

Defendant's motion should be denied in full. The Complaint satisfies Rule 12(b)(6), raises no jurisdictional defect, and sets forth a straightforward statutory violation that Congress expressly provided a private right of action to redress.

## FACTUAL BACKGROUND

On December 21, 2023, Plaintiff parked his vehicle in a private parking lot operated by Defendant in Nashville, Tennessee. [Compl,. ECF No. 29, ¶ 26]. The parking lot had no visible parking attendant or gate, so Plaintiff simply parked his vehicle and later exited the parking lot without incident. *Id.* at ¶ 27. Days later, Plaintiff opened his mailbox to find that the Defendant

had mailed him a parking citation ominously entitled "**Notice of Parking Violation**." *Id.* at ¶ 28. The Defendant's parking citation demanded payment of an "Unpaid Fare" of $60.09 and further imposed a "Violation Fine" of $65.25, commanding a total payment of $125.34 from Plaintiff. *Id.* The citation further warned that Plaintiff's vehicle could be booted or towed, and that he might be referred to a collection agency or be subject to "future ticketing" or other legal actions if he did not pay the citation immediately. *Id.* at ¶ 30.

To send the citation, Defendant illegally accessed confidential Tennessee motor vehicle records and obtained Plaintiff's personal information, including his home address. *Id.* at ¶¶ 31-33. Defendant did so without Plaintiff's consent and for an impermissible purpose, in violation of the Driver's Privacy Protection Act.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Rule 12(b)(1) challenges to standing are attacks on subject matter jurisdiction. *National Parks Conservation Ass'n v. Norton*, 324 F. 3d 1229, 1242 (11th Cir. 2003). They may be facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F. 3d 1271, 1279 (11th Cir. 2009). Facial attacks as here challenge subject matter jurisdiction based on the allegations in the complaint, which the court takes as true. *Morrison v. Amway Corp.,* 323 F. 3d 920, 925 n.5 (11th Cir. 2003).

## ARGUMENT

I. **Plaintiff Has Properly Alleged Standing.**

Plaintiff has standing to bring this action under Article III of the Constitution because he alleges a violation of his substantive privacy rights under the DPPA, a statute specifically enacted to protect individuals from unauthorized access and use of their personal information contained in state motor vehicle records. Moreover, the harm alleged of emotional distress, invasion of privacy, intrusion upon seclusion, harassment, and annoyance (Compl. ¶¶ 34-38, 48), are far from bare procedural violations. The allegations establish concrete harms traceable to Defendant's illegal access and use of his confidential motor vehicle records. This Court must deny the motion, as Plaintiff's injuries bear a close relationship to harms traditionally recognized at common law, such as invasion of privacy. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

## A.     Standard Applicable to a Rule 12(b)(1) Motion.

Where a defendant makes a facial attack on subject matter jurisdiction, the Court must accept the plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. *Morrison*, 323 F. 3d at 925 n.5. Under Article III, Plaintiff must allege an injury-in-fact that is concrete, particularized, and actual or imminent—not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The harm alleged must bear "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." *Spokeo*, 578 U.S. at 340–41. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 771 F. Supp. 3d at 772 ("in *TransUnion*, 594 U.S. at 424, 141 S.Ct. 2190, the Supreme Court clarified that plaintiffs challenging a statutory violation can establish standing by 'identif[ying] a close historical or common-law analogue for their asserted injury,' for which courts have 'traditionally' provided a remedy.").

## B.     Plaintiff Has Established Injury-In-Fact.

Plaintiff has standing because he suffered concrete injury when Defendant unlawfully accessed his confidential personal information maintained in the state's motor vehicle records, an invasion of his privacy that also caused him emotional distress. It is well-established that the right to privacy is embedded in our Constitution. *See Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S. Ct. 1678, 1681, 14 L. Ed. 2d 510 (1965). The Supreme Court has recognized two types of constitutionally protected privacy rights: (1) the right to avoid disclosure of certain personal matters, and (2) the right to personal autonomy in making significant decisions. *Padgett v. Donald*, 401 F. 3d 1273, 1280 (11th Cir. 2005). The DPPA falls squarely within the first category – the right of a plaintiff to be left alone. *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (quoting William L. Prosser, *Privacy*, 48 CALIF. L. REV. 383, 389 (1960) and citing Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193 (1890); *Pichler v. UNITE*, 542 F. 3d 380, 388 (3d Cir. 2008) ("Just as common-law tort actions provide redress for interference with protected personal or property interests, so too does the DPPA [which] provides redress for violation of a person's protected interest in the privacy of his or her motor vehicle records and the identifying information therein."). *See also Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-1411, 2025 WL 1249608, at *41 (4th Cir. Apr. 30, 2025) ("Both *Garey* and *Krakauer* recognized that a claim of invasion of privacy, based on conduct in violation of a federal statute, satisfied Article III. The cases do not compel the conclusion that the tort is viable only when it involves the home.").

Courts in this Circuit have recognized that the unauthorized disclosure of such information constitutes a concrete injury because it infringes on the individual's right to privacy, a harm traditionally recognized at common law. *Moeller v. American Media, Inc.,* 235 F. Supp.3d 868 (E.D.MI 2017). In some cases, the Sixth Circuit has recognized that even the "substantial risk of

harm," coupled with reasonably incurred mitigation costs, were sufficient to establish cognizable injury at the pleading stage. *Galaria v. Nationwide Mutual Insurance Company,* 663 Fed. Appx. 384 (6th Cir. 2016).

This accords with the consensus of courts across the nation concluding that a violation of the DPPA is sufficient to establish Article III standing. *See, e.g., Garey v. Farrin*, 35 F.4th 917 (4th Cir. 2022) (finding standing for a violation of the DPPA because the plaintiffs alleged a privacy injury that was closely related to the common law tort of invasion of privacy); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) (plaintiffs "allege that the defendants have used their personal information in a manner that is prohibited by the DPPA ..., their allegations fulfill the three requirements of the 'irreducible constitutional minimum of standing': an injury in fact (i.e., the invasion of an interest which the plaintiffs argue is legally protected), which was caused by the defendants and which would be redressed by a judgment against the defendants."); *Heglund v. Aitkin Cnty.*, 871 F.3d 572, 577–78 (8th Cir. 2017) ("An individual's control of information concerning her person—the privacy interest the Heglunds claim here—was a cognizable interest at common law. [...] The Heglunds do not allege a bare procedural violation; they claim that Scherf violated the DPPA's substantive protections by invading Jennifer's privacy.") (*citing U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989); *Pichler v. UNITE*, 542 F.3d 380, 388 (3d Cir. 2008) (holding "[t]he DPPA protects the privacy interests of the individual to whom the [personal] information pertains..." and "it is undisputed" that the registered owners of the vehicles about which the defendant obtained information had a viable cause of action under the DPPA); *Durham v. City of Charlotte*, No. 3:21-cv-00638-RJC-DSC, 2024 U.S. Dist. LEXIS 172749, at *19 (W.D.N.C. Sep. 24, 2024) ("Here, Plaintiff's alleged injury is similar to the injury claimed in Garey. Plaintiff articulates a privacy violation through the disclosure of a motor

vehicle record for impermissible purposes under DPPA. Consistent with Garey, Plaintiff can establish the 'injury in fact' prong required for standing."); *Ives v. Bath & Body Works*, LLC, 2024 U.S. Dist. LEXIS 70611, at *10 (D. N.H. 2024) ("Plaintiff has adequately alleged an invasion of his privacy that bears a sufficiently close relationship to a harm traditionally recognized in American law.") *(citing Garey*, 35 F.4th at 921-22; *TransUnion,* 594 U.S. at 425 (recognizing that disclosure of private information can be sufficient to confer standing)); *In re GEICO Customer Data Breach Litig.*, No. 21-CV-2210-KAM-SJB, 2023 U.S. Dist. LEXIS 127536, at *30 (E.D.N.Y. 2023) ("Moreover, numerous federal courts—including several courts of appeals— have held that an alleged violation of the DPPA can constitute an injury-in-fact because of the intrusion on personal privacy.") (*citations omitted*); *Rand v. Travelers Indem. Co*., 637 F. Supp. 3d 55, 66 (S.D.N.Y. 2022) ("The loss of privacy arising out of the data breach, against which the DPPA was intended to protect, bears a sufficiently 'close relationship' to the tort of public disclosure of private information, recognized at common law."); *Hatch v. Demayo*, 2020 U.S. Dist. LEXIS 177829 (M.D.N.C. 2020) (same).Here, Defendant invaded Plaintiff's statutorily protected right to be left alone, as codified in the DPPA, by unlawfully obtaining his sensitive personal information from confidential state motor vehicle records, including his full name and home address. Defendant's purpose for obtaining this information was not one permitted by the DPPA. 18 U.S.C. § 2721(b)(1)-(14). Defendant's invasion of Plaintiff's privacy rights guaranteed by the DPPA caused Plaintiff several harms, which he detailed in the Complaint. *See* Compl. ⁋ 34 (Metropolis injured Plaintiff when it invaded his right to privacy by unlawfully obtaining personal information about him from the State's motor vehicle database); *See* Compl. ⁋ 35 (Metropolis's invasion of privacy resulted in distress to Plaintiff). Moreover, Defendant's statements that asserted a legal right where none exists (*i.e.*, Defendant's false statement suggesting that it has the

legal right to boot and tow vehicles for unpaid citations even after the vehicles are no longer on their property) caused emotional distress to Plaintiff. *Id.* at ¶¶ 36-37. *See also* ¶ 48. ("Metropolis's conduct as set forth above caused Plaintiff and members of the proposed class harm, including violations of their statutory rights, invasion of their privacy, intrusion upon seclusion, harassment and annoyance"); ¶ 71 ("As a direct and proximate result of Metropolis's conduct, Plaintiff and the Class have suffered harm […]".)

Defendant's reliance on *Baysal v. Midvale Indem. Co.*, 78 F.4th 976 (7th Cir. 2023), is misplaced. [ECF No. 35, p. 11]. In *Baysal*, the plaintiff merely alleged that a website *could* disclose driver's license numbers; there was no actual access, use, or distribution of confidential personal information. *Id.* at 977 ("anyone could enter a stranger's name and home address, which would lead the form to disclose the number of the stranger's driver's license"). Here, Plaintiff alleges that his protected personal information, including his full name and home address, were illegally accessed, obtained, and used for a pernicious purpose: to mail him a fake parking citation and threaten him into paying an exorbitant "unpaid fare" and "violation fine." This understandably caused Plaintiff distress, intrusion upon seclusion, invasion of privacy, harassment, annoyance, and emotional distress. Compl., ¶¶ 22, 3-38.

Similarly, *Davis v. Prof. Parking Mgmt. Corp.*, 2023 WL 4542690 (11th Cir. July 14, 2023), is inapposite. In *Davis*, the court held that a plaintiff who claimed that a county ordinance rendered his parking charge illegal failed to allege injury and thus lacked standing to bring FDUTPA, FCCPA, and FDCPA claims. 2023 WL 4542690, at *2 (11th Cir. July 14, 2023) (finding plaintiff who received defendant's parking notice and debt collection letter did not allege justifiable reliance, actual damages, or other concrete injury). The court also held that the plaintiff's claims had no analogous traditional harm. *Id.* That is not the case here, where the

8

violation of Plaintiff's rights under the DPPA bears a close relationship to traditional common law causes of action. The complaint in *Davis* lacked allegations about invasion of privacy, wasted time, and distress. *Id.* at *3. Here, Plaintiff alleges clear concrete injuries: emotional distress, invasion of his privacy, intrusion upon seclusion, distress, harassment, and annoyance. Compl., ¶¶ 34-38, 48. Accordingly, Plaintiff has standing.

### (i) Plaintiff Has Established Concrete Harm Stemming from Metropolis's Unlawful Acquisition and Use of His Personal Information.

Defendant also contends Plaintiff lacks standing because there was no "publication" of his personal information. But publication is not required under the DPPA. The statute prohibits unlawful access, use, or disclosure of motor vehicle data, any one of which suffices for liability. *Reno v. Condon*, 528 U.S. 141, 146–47 (2000); *Garey*, 35 F.4th at 922. Defendant cites *Stewart v. Healthcare Revenue Recovery Grp., LLC*, 2022 WL 200371, at *17 (M.D. Tenn. Jan. 21, 2022), *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735-36 (7th Cir. 2023), and *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1245 (11th Cir. 2022) in support of its argument,[1] but these cases concern prohibitions found in the Fair Debt Collection Practices Act (the "FDCPA"), not the DPPA. The FDCPA is a wholly different statute with no application here.

In *Stewart*, for instance, the court dismissed an FDCPA claim for lack of third-party viewing of debt information. 2022 WL 200371. But the FDCPA targets abusive debt collection

---

[1] Defendant also misreads the holding of *TransUnion* when it cites to it in support of the contention that disclosure to third parties is required to established standing. [ECF No. 35 at p. 13]. In *TransUnion*, the Supreme Court addressed a violation of the FCRA, where it distinguished "between (i) credit files that consumer reporting agencies maintain internally and (ii) the consumer credit reports that consumer reporting agencies disseminate to third-party creditors" and held that, for the purposes of the FCRA claim the plaintiff asserted in that case, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *TransUnion*, 594 U.S. at 434. The Court did not, as Defendant suggests, hold that disclosure to third party is an absolute requirement of standing in all types of cases.

practices, not the substantive privacy rights the DPPA enshrines. *Id.* at *12 ("The FDCPA prohibits debt collectors from, among other things, communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector without the debtor's prior consent […].") (internal quotations omitted).

Here, the harm flows from Defendant's predatory acquisition and use of Plaintiff's confidential personal information to harass him with a fake ticket, not some hypothetical public reveal. Unlike the FDCPA, which prohibits debt collectors from communicating with third parties (*i.e.*, "publication"), the DPPA prohibits obtaining and using drivers' protected personal information. *Reno v. Condon*, 528 U.S. 141, 146–47, 120 S. Ct. 666, 670, 145 L. Ed. 2d 587 (2000) ("any person who knowingly *obtains*, discloses, *or uses* information from a state motor vehicle record for a use other than those specifically permitted by the DPPA may be subject to liability in a civil action brought by the driver to whom the information pertains.") (emphasis added); *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 2017 WL 1197098, at *4 (N.D. Ill. Mar. 31, 2017) "under the DPPA, [i]n once a plaintiff's information is *disclosed or obtained* for a prohibited purpose, the damage is already done.") (emphasis added). These proscriptions are totally different, and *Stewart* has no application to the instant case.

Similarly, *Nabozny v. Optio Sols. LLC*, 84 F. 4th 731, 735-36 (7th Cir. 2023), demanded a "public-exposure component" for an FDCPA claim, but that narrow lens doesn't apply to the DPPA, where unauthorized access itself erodes privacy. *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (DPPA violations cause harm analogous to invasion of privacy without requiring publicity). And *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F. 4th 1236, 1245-46 (11th Cir. 2022), rejected standing for an FDCPA vendor disclosure, but again, the

DPPA's focus on preventing access to sensitive records for improper uses—like Defendant's commercial shakedown—requires no such public disclosure. *Allen v. Vertafore, Inc.*, 2021 WL 3148870, at *2 (S.D. Tex. June 14, 2021) (standing exists where DPPA-protected information is obtained and used unlawfully, even without broad dissemination).

Defendant's argument would gut the DPPA, allowing companies like Defendant to plunder DMV databases with impunity, so long as they don't "publish" anything. That defies the statute's intent to shield drivers from exactly this abuse. *Margan v. Niles*, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003) (DPPA enacted to stop stalkers and abusers exploiting easy access to records). Plaintiff's privacy was shattered the moment Defendant grabbed his data and weaponized it, irrespective of any further disclosure.

### (ii) Plaintiff Has Established Concrete Harm Stemming from Metropolis's Invasion of Privacy and Intrusion Upon Seclusion

Defendant also argues that Plaintiff lacks standing because he cannot satisfy the elements of the common-law tort of intrusion upon seclusion. [ECF No. 35 at p. 14]. This is because "Plaintiff's name, address, and license plate number are matters of public record – not private facts." *Id.* This is utterly nonsensical; confidential DMV records are the *exact opposite* of public records. The statute is literally entitled the *Driver Privacy Protection Act*. Its only purpose is to protect the privacy of motor vehicle records and render them *private*. To pretend otherwise is to defy reality; it is undeniable that such personal information is subject to a reasonable expectation of privacy. *See* 18 U.S.C.A. § 2725 ("'personal information' means information that identifies an individual, including an individual's photograph, social security number, driver identification number, <u>name</u>, <u>address</u> (but not the 5-digit zip code) […]") (emphasis added). Defendant's contention that such information is somehow "public record" should be given short shrift.

Further, Article III standing does not require a fully viable tort claim; it only requires that

the harm alleged bears "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." *Spokeo*, 578 U.S. at 340–41. In *TransUnion*, the Supreme Court confirmed these principles. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 771 F. Supp. 3d at 772 ("in *TransUnion*, 594 U.S. at 424, 141 S.Ct. 2190, the Supreme Court clarified that plaintiffs challenging a statutory violation can establish standing by 'identif[ying] a close historical or common-law analogue for their asserted injury,' for which courts have 'traditionally' provided a remedy.").

Courts have repeatedly affirmed that DPPA violations protect against a type of harm closely related to traditional common-law privacy torts. *See, e.g.*, *Garey*, 35 F.4th at 922 ("Defendants point out some differences between the common law privacy torts and the DPPA, but our inquiry 'does not require an exact duplicate in American history and tradition.'") (quoting *TransUnion*, 594 U.S. 413); *Heglund*, 871 F. 3d at 577–78 ("An individual's control of information concerning her person—the privacy interest the Heglunds claim here—was a cognizable interest at common law.") (citing U.*S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Pichler v. UNITE*, 542 F. 3d 380, 388 (3d Cir. 2008)); *Shambour v. Carver Cnty.*, 709 F. App'x 837, 840 (8th Cir. 2017) (" […] the intangible harm associated with the violation of the DPPA's substantive protections is consonant with the 'common law tradition of lawsuits for invasion of privacy.'") (citing *Heglund v. Aitkin Cnty.*, 871 F. 3d 572, 577 (8th Cir. 2017)); *Hernandez v. Noom, Inc.*, 2023 WL 8934019, at *5 (D. Md. Dec. 27, 2023) ("Consistent with *TransUnion*, the district court here found standing because '[p]laintiffs' alleged harms are closely related to the invasion of privacy, which has long provided a basis for recovery at common law.' We agree."); *Mulvey v. Vertafore, Inc.*, 2022 WL 18635213, at *5 (N.D. Tex. Aug. 23, 2022), *report and recommendation adopted*, 2023 WL 1805845 (N.D.

Tex. Feb. 7, 2023) ("the harm from having one's sensitive personal data sent to tens of thousands of recipients bears a close relationship to the harm of having private facts about one's life publicized."); *Engebretson v. Aitkin Cnty.*, No. CV 14-1435 ADM/FLN, 2016 WL 5400363, at *4 (D. Minn. Sept. 26, 2016) (noting that the Supreme Court does not require that the harm caused by a statutory violation be identical to the type of harm that would give rise to a recovery under common law); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 466 (S.D.N.Y. 2022) ("plaintiffs' allegations sufficiently resemble the type of loss in privacy protected by the tort of public disclosure of private information such that the loss constitutes an injury-in-fact.").

### (iii) Plaintiff Has Established Concrete Harm from Harassment, Annoyance, and Emotional Distress.

Defendant dismisses Plaintiff's emotional distress, harassment, and annoyance as "non-cognizable.". Yet, emotional distress is a quintessential concrete injury under the DPPA, where violations inherently cause such harms. *Rollins v. City of Albert Lea*, 2016 WL 6818940, at *13 (D. Minn. Nov. 17, 2016) (emotional distress qualifies as injury-in-fact for DPPA claims); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1250 (S.D. Fla. 2019) (invasion of privacy, aggravation, annoyance, and intrusion suffice).

In the DPPA context, such tangible harms were squarely recognized by the court in *In re Mun. Parking Servs., Inc. DPPA Litig.*, to establish Article III standing. *In re Mun. Parking Servs., Inc. DPPA Litig.*, No. 3:24CV320-TKW-HTC, 2025 WL 1475794, at *5 (N.D. Fla. Feb. 12, 2025)(the tangible harm allegedly suffered by Plaintiffs (e.g., wasted time) as a result of Defendant's alleged violations of the DPPA is sufficient at this stage of the case to give Plaintiffs standing to seek declaratory and monetary relief."

Courts routinely hold that allegations of privacy invasions and emotional distress constitute concrete injuries for purposes of Article III standing. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v.*

*Pivotal Payments, Inc.*, 2017 WL 733123, at *6 (N.D. Cal. Feb. 24, 2017) ("The vast majority of courts that have addressed this question have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury."). Further, as the court in *Allen* correctly observed in analyzing the decision of the Fifth Circuit in *Taylor v. Acxiom Corp.*, 612 F. 3d 325, 340 (5th Cir. 2010):

> Article III standing ... is present. It is undisputed that the DPPA protects from *certain uses or disclosures* personal information of plaintiffs and creates a federal cause of action for same, and that such personal information of plaintiffs was actually included in the challenged bulk distributions by Texas DPS. Moreover, plaintiffs claim that such bulk distributions (including the personal information of these plaintiffs) are prohibited, and constitute a disclosure or use made illegal, by the DPPA which affords plaintiffs a federal cause of action for such disclosure or use of their personal information […].

2021 WL 3148870, at *2 (emphasis in original).

Here, Plaintiff details how Metropolis's fake citation, which demanded $125.34 under threats of booting, towing, further ticketing, referral to collections, or other legal action, caused him distress, harassment, and annoyance (Compl. ¶¶ 35-37, 48). This is no "general allegation"; it's a direct result of Defendant's grotesque intimidation tactics and false assertions of legal authority.

Defendant's reliance on *Garland v. Orlans, PC*, 999 F. 3d 432, 440 (6th Cir. 2021), misses the mark. *Garland* involved vague FDCPA anxiety claims, not the targeted privacy assault here. Plaintiff's harms are severe and directly tied to Defendant's misconduct, far exceeding any "bare anxiety." *Abante Rooter & Plumbing, Inc.*, 2017 WL 733123, at *6 (annoyance and harassment from privacy invasions confer standing). Defendant's argument would immunize predatory actors like Defendant, but the law demands accountability. Plaintiff's distress is real, redressable, and fatal to Defendant's motion.

In sum, Plaintiff's injuries include emotional distress, invasion of privacy, and intrusion upon seclusion. These harms are closely analogous to those long recognized under the common law. Courts have consistently recognized that the unauthorized access, collection, or dissemination of personal data–especially when obtained from confidential government records–implicates a historically recognized privacy interest sufficient to meet the concreteness requirement. Because this type of injury is personal, not hypothetical or generalized, and directly caused by the Defendant's conduct, it satisfies all three prongs of Article III standing: injury-in-fact, traceability, and redressability.

Plaintiff's injuries directly result from Defendant's unlawful conduct. As a result, Plaintiff has adequately established standing under Article III.

## II.  Plaintiff's DPPA claims are adequately plead.

Defendant moves to dismiss Plaintiff's DPPA claim for three other reasons: (1) the DPPA permits any "legitimate business" use of Plaintiff's motor vehicle data; (2) Defendant acquired and used Plaintiff's data in an "investigation in anticipation of litigation;" and (3) Defendant's use of the data was specifically authorized by Tennessee Statutes and local Nashville ordinances. Each argument is wrong and should be rejected.

### A.  <u>Defendant impermissibly accessed and used Plaintiff's protected information.</u>

Defendant first argues that Plaintiff failed to allege how Defendant used his motor vehicle data for an impermissible purpose and that there was no third party disclosure. Defendant's argument misstates the scope of the DPPA. The statute expressly prohibits not only the disclosure of personal information but also the obtaining and use of such information from DMV records for impermissible purposes. See 18 U.S.C. § 2724(a). Plaintiff has alleged that Metropolis used his personal information—obtained from state motor vehicle records—to send a coercive and

misleading demand for payment under threat of booting, towing, and legal action. That use alone constitutes a violation of the DPPA, regardless of whether the information was disclosed to any third party. The statute's language is unambiguous, and nothing in it requires third-party disclosure as a prerequisite for liability.

The Amended Complaint sets forth detailed allegations that Metropolis unlawfully obtained and used Plaintiff's motor vehicle data to issue "private" parking tickets disguised to look like official government parking citations. *See First Am. Compl.*, ECF No. 29. The Complaint details that Metropolis used license plate photographs to unlawfully query official motor vehicle records and identify vehicle owners without their consent, subsequently mailing them citations that threatened severe consequences for nonpayment, including "booting" and "towing" vehicles, among other things. *Id.* at ¶¶ 28-33, 36-39. Plaintiff explicitly alleges that Metropolis's acquisition, use, and disclosure of Plaintiff's motor vehicle data do not fall within any of the fourteen permissible uses established under the DPPA. *Id.* at ¶¶ 46-47. Plaintiff's allegations in the Complaint are far from conclusory; they provide a clear and specific factual basis for Plaintiff's claims.

Defendant then argues that its use of confidential motor vehicle information to send fake parking citations was "an obvious legitimate business purpose," and that the DPPA authorizes any "legitimate business" use of motor vehicle information. Motion, pp. 18, 20. This is wrong. To the contrary, the DPPA does not "broadly authorize" any businesses use of driver's sensitive information. In fact, the DPPA broadly *prohibits* use of such information, subject to fourteen enumerated exceptions that narrowly permit *some* business uses of driver's sensitive information. 18 U.S.C. §2721, *et seq.*

Defendant argues that "there are many permissible uses of DMV information under the

DPPA, including 'legitimate business' use." Motion, p. 18. However, conspicuously absent from Defendant's motion is the actual text of the "legitimate business use" exception:

> (3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—
>
>> (A) to verify the accuracy of personal information **submitted by the individual to the business** or its agents, employees, or contractors; and
>>
>> (B) **if such information as so submitted is not correct or is no longer correct, to obtain the correct information**, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

18 U.S.C. § 2721(b)(3) (emphasis supplied). Plainly, this exception only applies when an individual has voluntarily submitted his or her personal information to the business, and the business needs to "verify the accuracy" of that information. The exception does not "broadly authorize" a business to obtain protected motor vehicle information for any purpose, contrary to Defendant's argument.

Plaintiff never submitted any personal information to Defendant. Consequently, there is no personal information for Defendant to "verify the accuracy" of. The "legitimate business use" exception embodied in § 2721(b)(3) is not applicable here. Thus, Defendant's nebulous argument that the DPPA "broadly authorizes" any "legitimate business use" of motor vehicle information is totally wrong and should be wholly rejected.

Notably, of all the cases cited by Defendant, not even one holds that the DPPA permits "any legitimate business use" of motor vehicle information. Each of Defendant's cases emphasizes that the DPPA limits the disclosure of such information to narrowly defined permissible purposes. For example, in *Young v. West Pub. Corp.*, the court acknowledged that DPPA data could be used by businesses, but only for specific enumerated purposes. 724 F. Supp. 2d 1268, 1275-76 (S.D. Fla. 2010). The case language Defendant cites, suggesting that information is "only denied to a

narrow group of people that lack legitimate business," does not endorse a blanket authorization for any business use. *Id.* at 1279. Instead, it reflects the statute's careful balance between protecting privacy and permitting limited, enumerated uses. Defendant mischaracterizes the *Young* ruling by implying it provides a broad exception for all business purposes, which it clearly does not. Similarly, in *Taylor v. Acxiom Corp.*, the court specifically addressed whether the resale of motor vehicle data for permissible purposes complied with the DPPA. 612 F. 3d 325 (5th Cir. 2010). While the court noted that Congress did not intend to suppress "legitimate business uses," it made clear that those uses must fit within the defined, lawful purposes under the statute, such as verifying the accuracy of information or preventing fraud. *Id.* at 335. Rather than endorsing a broad authorization of "any legitimate business" use, the *Taylor* court focused on ensuring that the ultimate use of the data complied with the DPPA's restrictions. Defendant's reliance on *Taylor* is therefore similarly misplaced, as they ignore the context of the court's ruling. Likewise, Defendant's argument is unsupported by *Cook v. ACS State & Local Solutions, Inc.*, 663 F. 3d 989 (8th Cir. 2011). The *Cook* court evaluated whether the bulk acquisition of motor vehicle records was permissible under the DPPA and held that bulk obtainment was allowed only if the information was ultimately used for one of the statute's permissible purposes. *Id.* at 996-97. The court did not hold that businesses could obtain and use DMV information for any purpose they deemed "legitimate." The defendant's suggestion that *Cook* allows any business use of DMV data is a blatant misrepresentation of the case.

Most importantly, all three of Defendant's cases—*Young*, *Taylor*, and *Cook*—predate the Supreme Court's controlling decision in *Maracich v. Spears*, 570 U.S. 48, 60 (2013). In *Maracich*, the Supreme Court directly addressed the scope of permissible uses under the DPPA and made clear that the statute does not authorize broad, unrestricted access to motor vehicle data for any

business purpose. *Id.* at 60-61. It held that the DPPA exceptions must be construed narrowly to protect privacy, consistent with the statute's intent. *Id.* Even an attorney's solicitation of clients, a seemingly legitimate business use tied to litigation, was not a permissible purpose under the DPPA's litigation exception. *Id.* at 61-62. *Maracich* forecloses Defendant's argument that the DPPA permits any business use and instead reinforces that motor vehicle data can only be used for the limited, enumerated purposes defined in the statute. *Id.* To hold otherwise would mean that the exceptions swallow the rule.

**B.    Defendant did not obtain, use, or disclose Plaintiff's motor vehicle information as part of an "investigation in anticipation of litigation."**

Defendant argues that its use of Plaintiff's motor vehicle information is authorized under the § 2721(b)(4) "investigation in anticipation of litigation" exception of the DPPA. Motion, p. 20-21. This is a post hoc justification and is simply untrue. The real purpose of Defendant's use of motor vehicle data is not to investigate or litigate, but to solicit payment.

Defendant contends the provision at § 2721(b)(4) is "extremely broad," citing several district court cases to support its expansive interpretation. *Id.* But Defendant's argument is directly contradicted by *Maracich*, *supra*. 570 U.S. at 48. Defendant's failure to address *Maracich*, the definitive authority on this issue, reveals its argument's weakness and underscores that their use of confidential motor vehicle information violates the DPPA. *Id.*

*Maracich* clarifies that an overly expansive reading of the litigation exception in § 2721 (b)(4) would "undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records," noting that the statute's exceptions must be "read … narrowly in order to preserve the primary operation" of the DPPA. *Id.* The court rejected any interpretation that would allow a mere tangential connection to litigation to justify access to

personal information, stating that the "in connection with" language of (b)(4) must have a limit. *Id.*

Crucially, *Maracich* established the "predominant purpose" test, which requires courts to examine the actual purpose behind the use of motor vehicle data. *Id.* at 71-72. If the predominant purpose of the data use is solicitation or a commercial endeavor, rather than *bona fide* preparation for litigation, the use does not fall within the (b)(4) exception. *Id.* Applying this test here, it becomes clear that Defendant's predominant purpose, as in *Maracich*, was commercial. The goal was to solicit payments for parking, not to actually prepare for litigation. Metropolis's primary business is operating parking lots and collecting payments from customers who use their services. Compl., ¶¶ 3, 4. The issuance of private parking tickets, which serve as after-the-fact demands for payment, is a revenue-driven operation designed to maximize profits, not initiate legal action. Compl., ¶ 17-25.[2] Similarly, Defendant's internal dispute resolution procedure is aimed at extracting payments, and not a genuine step towards legal proceedings. Metropolis's reliance on the (b)(4) exception is simply a pretext to justify their commercial use of confidential motor vehicle data, which falls squarely outside the narrow scope of the litigation exception. The *Maracich* decision leaves no doubt that Defendant's interpretation of this DPPA exception is incorrect.

All the cases cited by Defendant are readily distinguishable, as they all deal with formal government or administrative proceedings that are fundamentally different from Metropolis's private and self-serving operations. Both *Banks v. Department of Motor Vehicles for California*, 419 F. Supp. 2d 1186 (C.D. Cal. 2006), and *City of Tallahassee v. Federated Publications Inc.*, 2012 WL 5407280 (N.D. Fla. Aug. 9, 2012), involve the use of DMV information by government

___

[2] In fact, as far as the undersigned can discern, Defendant has never actually litigated one of these parking charges in any court.

entities in connection with issuing traffic and red-light violation notices—clear examples of official administrative proceedings authorized by state law. Similarly, in *Senne v. Vill. of Palatine, Ill.*, the court upheld the use of motor vehicle data on parking tickets issued by a municipal police department, which were part of an official government function and administrative process. 784 F. 3d 444 (7th Cir. 2015). *Lucas v. Moore* dealt with DMV information that was used as part of court proceedings in a misdemeanor criminal case—a far cry from the commercial activity involved in Metropolis's internal, non-governmental dispute resolution process. 412 F. Supp. 3d 749 (S.D. Ohio 2019). Finally, in *Buxton v. Hartin Asset Management LLC*, the DPPA claim was dismissed based on the complaint's entirely conclusory allegations, without any substantial discussion of the (b)(4) exception at all. 2023 WL 4861724 (W.D. Mich. July 31, 2023). Moreover, many of these cases predate the controlling Supreme Court *Maracich* decision, which rejected the type of broad interpretation that Defendant now relies on, making it clear that the "anticipation of litigation" exception cannot be stretched to cover commercial activities such as Defendant's collection of parking fees. 570 U.S. at 59-60.

### C.   The Tennessee legislature did not specifically authorize Defendant' conduct under subsection (14) of the DPPA.

Next, Metropolis correctly notes that at the time of Defendant's violation of the DPPA, Tenn. Code Ann. § 47-18-3203 was in effect.[3] However, § 47-18-3203 related to the installation of "vehicle immobilization devices" on motor vehicles and is wholly unrelated to the DPPA. Nothing in § 47-18-3203 authorized the acquisition, disclosure, or use of protected motor vehicle information under the DPPA. As such, the statute is not germane to this case and is a red herring. The same is true of the Nashville city ordinances cited by Metropolis.

---

[3] This statute was subsequently repealed by the Tennessee Legislature, effective July 1, 2024.

Defendant's reliance on 18 U.S.C. § 2721(b)(14) is misplaced because the Tennessee statute and Nashville ordinances do not *specifically authorize* the use of DMV records for the collection of parking fees. The DPPA's exception is narrow: it permits disclosure of personal information "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14) (emphasis added). Importantly, the state law must *specifically authorize* the use of motor vehicle data, not merely regulate the conduct at issue in a general sense.

The Tennessee statute Defendant cites, Tenn. Code Ann. § 47-18-3203(c)(4)(a)[3], authorized a property owner to require payment for removal of a "vehicle immobilization device." Similarly, the Nashville ordinances Defendant invokes govern "booting" procedures, and related signage requirements in private parking lots. None of these provisions mention, much less specifically authorize, the use of motor vehicle records to identify vehicle owners for fee collection purposes.

Defendant essentially argues that it had a contractual or statutory right to collect parking fees, and could therefore use protected motor vehicle data to identify vehicle owners. But that is precisely what § 2721(b)(14) forbids without explicit legislative authorization. Congress required states to affirmatively and specifically authorize such uses, ensuring citizens' personal information is not disclosed except as expressly allowed. Here, neither Tennessee law nor Nashville ordinances specifically authorized the use of protected motor vehicle data to send notices or collect unpaid private parking fees. Accordingly, Defendant cannot rely on § 2721(b)(14), and its use of Plaintiff's data falls squarely within the DPPA's prohibitions.

**D.** **Whether Defendant's use of protected motor vehicle data was permissible under the DPPA cannot be resolved at the motion to dismiss stage.**

Finally, even if Defendant could somehow avail itself of one of the DPPA's permissible

use exceptions, such a determination cannot be made at the pleading stage. *See Santiago-Duran v. Vanguard Parking Solutions, Inc.*, 764 F. Supp. 3d 1203 (S.D. Fla. 2025). *Santiago-Duran* is virtually identical to this case. *Id.* A private parking company used Florida motor vehicle records to identify a vehicle owner who allegedly failed to pay, then sent payment demands. *Id.* The plaintiff alleged DPPA violations based on the unauthorized acquisition and use of personal information obtained from a license plate. *Id.* The defendant moved to dismiss the DPPA count, arguing the same legal theories here.

Chief Judge Altonaga declined to resolve whether any exception under § 2721(b) applied, holding that "Defendant is asking the Court to undertake a substantive analysis of Plaintiff's claims — a task inappropriate at this early stage." *Id.* at 1211. The court instead found that the plaintiff's allegations disclaimed all relevant exemptions and were sufficient to proceed. *Id.* So too here. Plaintiff has plausibly alleged that Defendant's use of his motor vehicle data was impermissible, and the inquiry into whether a statutory exception applies cannot be resolved on a motion to dismiss. The predominant purpose of Defendant's actions is a disputed material fact. The parties should have the opportunity to develop the record to determine whether a statutory exception applies.

### E.     **Plaintiff's request for Declaratory Relief is Properly Pleaded.**

Plaintiff's request for declaratory relief under 28 U.S.C. § 2201 is properly pleaded. Declaratory relief is especially appropriate in class actions challenging ongoing business practices where injunctive and forward-looking relief may prevent future harm to similarly situated individuals. Metropolis continues to operate its parking enforcement system using the same allegedly unlawful practices challenged here. Declaratory relief is thus not duplicative, but essential to resolving an ongoing legal controversy and clarifying the rights and obligations of the

parties under federal law.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Respectfully submitted this 6th day of August, 2025.

Respectfully submitted,

**PARKER & CROFFORD**

/s/Mary A. Parker
Mary A. Parker, TN Bar #006016
5115 Maryland Way
Brentwood, TN 37027
(615) 244-2445 Office
(615) 255-6037 Fax

**BRET LUSSKIN, P.A.**
Bret L. Lusskin, Jr., Esq. *(pro hac vice)*
FBN: 28069
1025 E. Hallandale Beach Blvd., Ste 1532
Hallandale Beach, FL 33009
Tel: (954) 454-5841 / Fax: (954) 454-5844
blusskin@lusskinlaw.com

**SCOTT D. OWENS, P.A.**
Scott D. Owens, Esq., FBN: 597651 *(pro hac vice)*
2750 N. 29TH AVE., SUITE 209A
HOLLYWOOD, FLORIDA 33020
TELEPHONE: (954) 589-0588
scott@scottdowens.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell; FBN: 0071072 *(pro hac vice)*
Brian W. Warwick; FBN: 0605573 *(pro hac vice)*
Christopher J. Brochu; FBN: 1013897 *(pro hac vice)*
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2025 a true and correct copy of the foregoing Response in Opposition to Defendant's Motion to Dismiss was served on the party listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Brigid M. Carpenter (TN Bar #018134)
Claire Fox Hodge (TN Bar #037560)
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Tel.: (615) 726-7341
bcarpenter@bakerdonelson.com
cfoxhodge@bakerdonelson.com

Melissa A. Siebert (Pro Hac Vice) (IL Bar #6210154)
Corey Hickman (Pro Hac Vice) (IL Bar #6317871)
Cozen O'Connor
123 N. Wacker Dr. Suite 1800
Chicago, IL 60606
Tel.: (312) 832-3100
msiebert@cozen.com chickman@cozen.com

James Gerard Stranch , IV (TN Bar # 023045)
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
615-254-8801
Fax: 615-250-3937
gstranch@stranchlaw.com

Brittany S Scott (CA Bar # 327132)
Smith Krivoshey, PC
166 Geary Str
Ste 1500-1507
San Francisco, CA 94108
415-839-7000

brittany@skclassactions.com

Caroline C. Donovan (NY Bar # 6093124)
Bursor & Fisher, P.A.
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
646-437-6409
cdonovan@bursor.com

Philip Lawrence Fraietta (NY Bar # 5297825)
Bursor & Fisher, P.A.
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
646-837-7150
pfraietta@bursor.com

Attorneys for Matthew Petrone
and Gregory Anderson

/s/ Mary A. Parker
Mary A. Parker; #06016