## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| YOUSEF ALHINDI, MATTHEW PETRONE, GREGORY ANDERSON, and BRENDAN APPEL, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br><br>METROPOLIS TECHNOLOGIES INC.,<br><br>Defendant. | Case No. 3:24-cv-00748<br><br>**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |

Plaintiffs Yousef Alhindi, Matthew Petrone, Gregory Anderson and Brendan Appel ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendant Metropolis Technologies Inc. ("Metropolis" or "Defendant").

### Introduction

1.     This case arises from Metropolis's systematic invasion of motorists' privacy to further its deceptive, punitive parking-fee scheme. Metropolis operates parking lots and garages that appear to be open to the public—often without gates, ticket dispensers, or any clear warning that payment is required. Unsuspecting drivers pull into these spaces believing they are free or municipally operated. Days or weeks later, they receive a threatening letter at their home address, containing a photograph of their vehicle and a demand for payment that can be seven times the cost of ordinary parking.

2.     Metropolis is an AI-powered parking management company with locations in numerous cities across the United States, including Tennessee, after its 2022 acquisition of the

Nashville-based Premier Parking. Following a 2024 acquisition of SP Plus, it became the largest parking operator in North America with over 4,000 locations.

3.     For ordinary consumers, this experience feels as though they have been hunted down and tracked. The shock stems not only from the false "violation" itself, but from the eerie realization that a private company somehow accessed their home address and vehicle information—data that, for the past half-century, only law enforcement officers have been authorized to use for issuing citations. Drivers reasonably presume that only a police agency could link their license plate to their identity and residence. Metropolis exploits that presumption to create an illusion of official authority and to intimidate recipients into paying unjustified charges.

**Metropolis's Business Model Relies on License Plate Tracking and Unlawful Access to Motor Vehicle Records**

4.     Defendant's facilities operate entirely through the use of license plate reading technology/cameras that allow Defendant to track vehicles when they enter and exit a parking garage or parking lot. Rather than utilizing gates or parking lot attendants, Defendant requires customers to pay for their parking through a QR code or mobile application on their phone. Defendant's parking facilities do not adequately alert drivers through signage or otherwise that they must pay to park in the facilities. Because of this, many drivers do not pay for their parking and exit the facility under the reasonable assumption it was a free parking lot or garage.

5.     However, Defendant utilizes the license plate numbers they collect from unknowing drivers to obtain personal information from their DMV records, including their name and address.

6.     Defendant then sends citations to drivers, repeatedly, who did not pay for their parking to the address listed on their DMV records. These citations are designed to look like

official parking citations issued by the government but are in fact "issued" by Defendant, a

private company. They are entitled "**NOTICE OF PARKING VIOLATION**" and purport to

impose "fines" against vehicle owners.



7.    Defendant profits off the illegal use of drivers' personal information obtained

through their DMV records by mailing fake parking citations to vehicle owners and threatening

them with severe consequences if they do not pay exorbitant sums.

8.     What's more, Defendant sends citations to drivers who did not park in their facility and only passed through.

9.     Plaintiffs and Class members were never informed that their personal information would be obtained by Defendant through their DMV records or otherwise, nor did they consent to this.

10.     Defendant obtains drivers' personal information, including their name and address, from their DMV records without the lawful consent of drivers, and without a lawfully permitted reason under the DPPA.

11.     Indeed, Defendant's misconduct has attracted widespread complaints and criticism from legal experts for its DPPA violations, as reported in The Tennessean.[1] The article describes the "nightmare" Defendant's business practices have caused for consumers, including its debt collection activity. And as Vanderbilt law professor, Christopher Slobogin noted, "the DPPA does not permit accessing DMV records for the purpose of identifying parking violations." Slobogin also questioned how a company could legally obtain personal data without violating federal law, and whether any laws allow a private entity to impose fees for alleged "violations."

## The Drivers' Privacy Protection Act

12.     In 1994, Congress enacted the DPPA as a critical measure to protect the personal information of drivers in the United States. This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV"). By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified

---

[1] https://www.tennessean.com/story/money/2025/07/16/nashville-parking-metropolis-ai-technology/84357651007/

purposes. The act's primary goal is to safeguard individuals' privacy and prevent the exploitation of their personal information for purposes such as solicitation, marketing, and identity theft.

13.     Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment. The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society. Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

14.     Indeed, in 2013, the Supreme Court held that violating the DPPA by using protected records to "contact[] an individual is an affront to privacy" even if "a large number of persons have access to the personal information." *Maracich v. Spears*, 570 U.S. 48, 67, 133 S. Ct. 2191, 2204 (2013).

15.     The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records. Under the DPPA, personal information such as names, addresses, and Social Security numbers cannot be disclosed without the driver's written consent, except for certain permitted uses, such as law enforcement activities. The act imposes penalties for unauthorized access and misuse of this data, thereby deterring potential abusers and reinforcing the importance of data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks associated with the widespread availability of driver information.

16.     Regrettably, there are still occasions where bad faith actors like Metropolis disregard the DPPA and abuse the personal information contained in DMV records for illicit purposes. This is one such case. Metropolis's entire business model is based on flouting the DPPA

and abusing official motor vehicle data to harass, mislead, and intimidate consumers. This action aims to stop Metropolis's unlawful conduct and compensate consumers whose privacy rights have been blatantly violated.

## PARTIES

17.     Plaintiff Matthew Petrone is a natural person and resident of Nashville, Tennessee. In or around May 2024, Mr. Petrone received a "Notice of Parking Violation" in the mail at his home address. The notice was sent by Defendant, stating "you have received this violation because a vehicle registered to you recently parked at a Metropolis-managed parking facility and left without paying the amount due." The notice included a photo of Mr. Petrone's vehicle entering Defendant's parking facility located at 222 2nd Avenue in Nashville, Tennessee at 12:57pm on April 8, 2024, and exiting the facility on the same date at 1:12pm. The notice informed Mr. Petrone that he owed Defendant $76.82 to be paid online. At the bottom of the citation, Metropolis threatened Mr. Petrone as follows: "Please note, all vehicles that fail to pay for parking violations may be subject to additional fees, referred it a collection agency or incur other legal action future ticketing, booting and/or towing, at the sole discretion of Metropolis."

18.     Mr. Petrone does not recall ever parking in Defendant's parking facility at 222 2nd Avenue. Mr. Petrone may have driven through the facility without parking. Regardless, Plaintiff Petrone saw no warning that he would need to pay a fee nor any reasonable notice that he may be charged if he parked in the lot.  There is no gate at the lot and no means by which to issue a ticket for parking or otherwise to inform drivers that they were to pay for parking at this open lot. Plaintiff further does not recall being informed that his license plate information was being captured by Defendant to obtain his personal information from his DMV records, nor did he provide it to Defendant. Mr. Petrone did not pay for the parking violation.

19.     Plaintiff Gregory Anderson is a natural person and resident of Clarksville, Tennessee. In or around February 2024, Mr. Anderson received a "Notice of Parking Violation" in the mail at his home address. The notice was sent by Defendant, stating "you have received this violation because a vehicle registered to you recently parked at a Metropolis-managed parking facility and left without paying the amount due." The notice included a photo of Mr. Anderson's vehicle entering Defendant's parking facility located at 300 Jefferson Street in Nashville, Tennessee and exiting the facility on the same date. The notice informed Mr. Anderson that he owed Defendant for the parking and an additional fee to be paid online. At the bottom of the citation, Metropolis threatened Mr. Anderson as follows: "Please note, all vehicles that fail to pay for parking violations may be subject to additional fees, referred it a collection agency or incur other legal action future ticketing, booting and/or towing, at the sole discretion of Metropolis."

20.     Plaintiff Anderson saw no warning that he would need to pay a fee nor any reasonable notice that he may be charged if he parked in the lot.  There was no gate at the lot and no means by which to issue a ticket for parking or otherwise to inform drivers that they were to pay for parking at this open lot.  Plaintiff further was not informed that his license plate information was being captured by Defendant to obtain his personal information from his DMV records, nor did he provide it to Defendant. Mr. Anderson did not pay for the parking violation.

21.     Plaintiff Brendan Appel is a natural person and resident of Northfield, Illinois, where he intends to remain. On or about February 20, 2024, Mr. Appel received a "Notice of Parking Violation" from Defendant Metropolis that was mailed to his work address, the same address to which his car was registered, and claimed that he owed a $10 fee for parking and an additional fine of $70.25. The Notice further stated "you have received this violation because a vehicle registered to you recently parked at a Metropolis-managed parking facility and left without

paying the amount due." The notice included a photo of Mr. Appel's vehicle entering Defendant's parking facility located at 2525 McKinnon St., Dallas, TX, and exiting the facility on the same date. At the bottom of the citation, Metropolis threatened Mr. Appel as follows: "Please note, all vehicles that fail to pay for parking violations may be subject to additional fees, referred it a collection agency or incur other legal action future ticketing, booting and/or towing, at the sole discretion of Metropolis."

22.     Plaintiff's daughter saw no warning that she would need to pay a fee nor any reasonable notice that she may be charged if she parked in the lot.  There was no gate at the lot and no means by which to issue a ticket for parking or otherwise to inform drivers that they were to pay for parking at this open lot.

23.     That same day, Mr. Appel contacted Metropolis through its online chat function and communicated with a representative from Metropolis.  Mr. Appel explained that the gates at the parking lot at 2525 McKinnon were up, that there was no system to issue a ticket, and no other way to pay for parking the night the fee and penalty were issued.  The representative for Metropolis refuted Mr. Appel's version of events, though the representative provided no evidence specific to the 2525 McKinnon parking lot to the contrary and refused to refund either the parking charge or the $70 penalty.

24.     The Metropolis representative, when asked by Mr. Appel how Metropolis obtained his vehicle registration information, admitted that Mr. Appel's "vehicle was captured by our camera on our facility and State records indicate that you are the registered owner of this vehicle."

25.     In all, Mr. Appel spent over four hours communicating with representatives of Metropolis to dispute his bill.  Mr. Appel also spent many more hours researching Metropolis and

the circumstances surrounding the events leading to Metropolis' issuing the parking fee and penalty charges.

26.     On or around April 1, 2024, Plaintiff Appel received a second Notice from Defendant with the same language and demands as the first Notice. Plaintiff Appel did not pay for the parking violation.

27.     Plaintiff Yousef Alhindi is a natural person and resident of Davison County, Tennessee, and is a citizen of the State of Tennessee.

28.     On December 21, 2023, Plaintiff Alhindi parked at a private parking lot located at 700 8th Avenue S. Nashville, Tennessee 37203, which is operated or managed by Metropolis.

29.     At the time Plaintiff Alhindi parked, there was no parking attendant or gate. Plaintiff Alhindi simply parked in an available parking space, as any driver commonly would, and subsequently drove away.

30.     Shortly thereafter, Metropolis mailed Plaintiff Alhindi a citation ominously entitled "Notice of Parking Violation." Plaintiff's first reaction to reading Metropolis identified on the document led him to believe that the Notice was from the police. This citation stated that Plaintiff Alhindi owed Metropolis an "Unpaid Faire" of $60.09, and a "Violation Fine" of $65.25. The citation further stated that "Metropolis is providing this courtesy notice to allow the amounts due to Metropolis to be paid online through its payment processing portal www.payments.metropolis.io. Payment is due upon receipt of this notice. Please note that checks or cash are not accepted." At the bottom of the citation, Metropolis threatened Plaintiff Alhindi as follows: "Please note, all vehicles that fail to pay for parking violations may be subject to additional feed, referred it a collection agency or incur other legal action future ticketing, booting, and/or towing, at the sole discretion of Metropolis."

31.     Plaintiff Alhindi was shocked to see that citation and was confused as to how his home address was known to anyone because of parking in the lot. Plaintiff researched the company and learned that they used his private driver's license information to locate his home address which caused him distress over a parking company having possession of his personal data.

32.     Plaintiff Alhindi saw no warning that he would need to pay a fee nor any reasonable notice that he may be charged if he parked in the lot.  There was no gate at the lot and no means by which to issue a ticket for parking or otherwise to inform drivers that they were to pay for parking at this open lot.  Plaintiff further was not informed that his license plate information was being captured by Defendant to obtain his personal information from his DMV records, nor did he provide it to Defendant. Mr. Alhindi did not pay for the parking violation.

33.     Defendant's misconduct has harmed Plaintiff Petrone, Plaintiff Anderson, Plaintiff Appel, and Plaintiff Alhindi including by invading their privacy through the obtaining, using and disclosing of their private information, violating their rights under the DPPA, misusing their protected information to claim charges they never agreed to pay, and then doubling, tripling, and even quadrupling those penalties, caused Plaintiff to lose time, and harmed them emotionally by misusing their protected information to threaten them with collection actions.

34.     Defendant Metropolis Technologies Inc. is a Delaware Profit Corporation which regularly conducts business in Tennessee, without having registered as a foreign corporation in Tennessee, having its headquarters located at 144 2nd Ave. N., Ste. 300, Nashville, TN 37201.

## JURISDICTION AND VENUE

35.     This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 because the claims asserted arise from a federal statute.

36.     This Court has personal jurisdiction over Metropolis because it regularly transacts business within the State of Tennessee and its headquarters are located in Nashville, Tennessee.

37.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS RELATING TO METROPOLIS

38.     Metropolis is a Delaware corporation that primarily manages and operates parking lots and garages owned by third parties throughout Tennessee and the United States.

39.     Metropolis deploys an Artificial Intelligence based system that uses computer vision and deep learning algorithms to recognize drivers' vehicles to create a "drive in and drive out" or "checkout-free" system for parking that it developed.

40.     Metropolis utilizes camera-based license plate detection and recognition technology within the parking lots and garages it manages. This technology captures, stores and transmits images of the license plates on vehicles entering and exiting its parking facilities.

41.     Each time a car enters and/or exits one of Defendant's parking facilities, Defendant utilizes the license plate information its cameras collect to obtain DMV records of drivers, including personal information such as their names and address.

42.     Defendant's website explains: "Our technology automates routine tasks like enforcement by automatically identifying and escalating issues, empowering Metropolis-led operations to be more efficient."

43.     When a vehicle exits a Metropolis parking facility, Metropolis utilizes its camera technology to determine whether the driver paid for their parking. If Defendant determines a driver did not pay for parking, it mails them an ominously entitled "Notice of Parking Violation" to the registered owner of the vehicle. Defendant obtains the driver's address through illegally accessing their driver motor vehicle records.

44.     These "Notices of Parking Violation" are disguised to resemble government parking citations. They accuse vehicle owners of committing "violations," and they impose "violation fines" against them.

45.     These citations also illegally threaten to "boot" and "tow" vehicles for unpaid citations, charge illegal services fees, and impose exorbitant penalties against vehicle owners.

46.     Consequently, vehicle owners typically pay the sums demanded in the citations and suffer injury by way of Metropolis's invasion of their privacy.

### Public Reaction and Regulatory Complaints

47.     Complaints about Metropolis and the same practices that appear on this complaint, have been consistently reported in all types of Media. WSMV has shown how Metropolis's charges can balloon stating that a "violation fee…can be 7 times the cost of parking." Their investigations also flagged erroneous billing: "Nashville drivers billed for parking in lots, garages they've never entered." And NewsChannel5 has "spent more than a year" tracking these cases, with the most common issue being that "LPR's appear to misread a plate."

48.     This practice alarms even public officials and fuels widespread public outcry. As Nashville's mayor put it: "My license plate was falsely read in a garage that I had never parked in."

49.     Hundreds of complaints have been made to the Tennessee Attorney General's Office. Upon information and belief, consumers have made thousands of complaints to other state attorney generals and other regulators about these same practices.

50.     This practice is so widespread as evidenced by their 1.04 average customer review rating on Better Business Bureau. For example, on July 7, 2024, "Timothy W" wrote:

> After parking at a lot in downtown Nashville that was operated by LAZ Parking. The QR code worked and informed us that parking was a total of

$4.83 for 2 hours. We were surprised by the low rate and had considered coming back to downtown again in the future and parking at the same lot. We did not exceed the 2 hours. My credit card information was given and charged. Now we received in the mail a violation bill for $93.30 from METROPOLIS. ($23.05 Unpaid Fare + $70.25 Violation Fine). Why not charge the card given before attempting to send a shake-down letter with a violation fine? Lawmakers MUST pass legislation to clamp down on this abuse! Do not park or even drive into a lot owned by Metropolis. After performing a little research it seems they are not good folks. One star is clearly too much for this company.

51.     Similarly, on June 4, 2024, "elaine I" wrote:

Despicable company - we parked for an event and thought our parking was already handled - there was no attendant, the gate was up and there were no visible signs for paying. We received a "ticket"? in the mail - the fee for parking was $5.50 and the PENALTY FINE was $71 - absolutely criminal!! They should not be able to run a business this way and should be held accountable! I would give zero stars but this website is making me choose at least 1 star....

### Why Metropolis' Scheme Violates the DPPA

52.     The DPPA governs the manner by which certain personal information can be accessed or disclosed and imposes penalties for violations of its provisions.

53.     Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

54.     Metropolis is a "person" within the meaning of 18 U.S.C. 2725(2).

55.     Metropolis obtained Plaintiffs' and Class Members "Personal Information," as defined by the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

56.     A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" *Id*.

57.     DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the access and use of such information for a limited number of purposes designed to promote public welfare.

58.     Metropolis's use of official motor vehicle records to obtain the personal information of Plaintiffs and Class members, and send parking citations when applicable, is not permissible under the DPPA.

59.     Defendant knew or should have known that its access to DMV data was not authorized by any permissible purpose.

60.     In fact, Metropolis has admitted to exactly this practice. In response to complaints made to the Tennessee Attorney General's Office about Defendant's punitive and unfair parking practices (including charging for parking when the driver did not park in the facility, and issuing excessive "fines"),[2] Metropolis responded by admitting that it used the license plate information to obtain drivers' personal information from the Tennessee DMV: "Our system traces license plates attached to Tennessee government records. We send notices to the addresses on file associated with those license plates."[3]

61.     Moreover, in a February 20, 2024 email from a Metropolis representative to Plaintiff Appel, Metropolis again admitted to using license plate information to obtain personal

---

[2] *See* https://www.wkrn.com/news/local-news/nashville/dozens-of-complaints-made-against-metropolis-parking-in-nashville-tn/ (last visited August 6, 2025).
[3] *See* https://www.newschannel5.com/news/metropolis-parking-responds-after-complaints-about-nashville-private-lots (last visited June 14, 2024).

information from the DMV, in that case the Illinois DMV: "Your vehicle was captured by our camera on our facility and State records indicate that you are the registered owner of this vehicle."

62.     Metropolis did not receive Plaintiffs' or Class members' express written consent prior to accessing their personal information as required by the DPPA, 18 U.S.C. § 2721(b)(12). The DPPA does not provide a lawful basis for Defendant to obtain said information.

63.     Plaintiffs and Class members never waived their rights to privacy under 18 U.S.C. § 2721(d).

64.     Metropolis's conduct as set forth above caused Plaintiffs and Class members harm, including violations of their statutory rights, invasion of their privacy, intrusion upon seclusion, disclosure of private information, harassment and annoyance.

65.     By using information drawn from a confidential government database, disclosing this private information to send coercive and threatening communications to Plaintiffs' residences, Defendant further invaded their privacy and caused them harm in the form of offensive, unwanted intrusions into their personal lives, as Defendant's notices invaded the sanctity of their homes with threats and deceptive representations of official power.

66.     Accordingly, Plaintiffs have standing to bring his claims under the DPPA. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.''"); *see also Salazar v. Paramount Global*, 118 F.4th 533 (6th Cir. 2025**)** (holding that plaintiff had Article III standing under the VPPA because alleged disclosure of his private video-viewing history to Facebook without consent was a concrete injury closely related to the common-law privacy torts of disclosure of private information and intrusion upon seclusion, and thus constituted a cognizable injury-in-fact traceable to the defendant's conduct and redressable by damages)

## CLASS ALLEGATIONS

67.     **Class Definition:** Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The proposed Class is defined as follows:

> All natural persons in the United States whose Personal Information, as defined by the DPPA, was obtained, used and/or disclosed by Defendant, Metropolis Technologies, Inc., and/or any of its agents, in the four years preceding the filing of the Complaint, through the date of any order granting certification of the class.

68.     Expressly excluded from the Class are:

    (a)    Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

    (b)    Metropolis and any entity in which Metropolis has a controlling interest, or which has a controlling interest in Metropolis and its legal representatives, assigns and successors; and

    (c)    All persons who properly execute and file a timely request for exclusion from the Class.

69.     **Numerosity:** The number of persons within the Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiffs.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

70.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which

do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

(a) Whether Metropolis's parking citation is uniform in all relevant aspects for the Class;

(b) Whether Metropolis had any permissible purpose within the meaning of the DPPA when it obtained the Personal Information of Plaintiffs and the Class;

(c) Whether Metropolis obtained, disclosed, or used the Personal Information of Plaintiffs and the Class in violation of the DPPA and is therefore liable to Plaintiffs and the Class;

(d) Whether Plaintiffs are entitled to a judicial determination that Defendant's actions violate the DPPA as well as the rights and obligations of the Parties with respect to the demand for payment;

(e) Whether Plaintiffs are entitled to an injunction against Defendant from committing future violations of the DPPA and sending unlawful demands for payment;

(f) Whether Metropolis's systematic conduct was willful or in reckless disregard of the law, warranting the award of punitive damages against Metropolis and in favor of Plaintiffs and the Class, as provided by the DPPA.

(g) Whether Plaintiffs and the members of the Class have sustained damages and, if so, the proper measure of such damages.

71. **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint

to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendant took.

72. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with the DPPA.

**Rule 23(b)(2) Class – Declaratory and Injunctive Relief**

73. In addition to, or in the alternative to, certification under Rule 23(b)(3), Plaintiffs seek certification of a Class pursuant to Rule 23(b)(2) for purposes of obtaining declaratory and injunctive relief.

74. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the Class as a whole. Defendant's uniform policies and practices—specifically, its use of license-plate recognition systems to obtain, use, and disclose drivers' personal information from state

motor-vehicle records and to issue and collect "Notices of Parking Violation"—apply identically to all members of the Class.

75. Because Defendant's conduct constitutes a common course of unlawful behavior and is ongoing, Plaintiffs and the Class continue to face a real and immediate threat of repeated injury through future unauthorized access and use of their personal information. Monetary damages alone cannot remedy these continuing harms, which include the loss of privacy, the risk of further misuse of protected data, and the chilling effect of receiving misleading, government-styled enforcement notices at one's home.

76. Furthermore, certification under Rule 23(b)(2) is particularly appropriate here because Defendant's conduct is uniform, automated, and ongoing. Metropolis employs the same AI-driven license-plate-recognition system and DMV data-access process in all of the parking facilities it operates and manages, and it continues to issue standardized "Notices of Parking Violation" using information obtained in the same unlawful manner. The injunctive and declaratory relief sought by Plaintiffs will benefit every Class Member equally by halting Defendant's continued misuse of personal information and clarifying the parties' respective legal rights under the DPPA. Because the requested equitable relief would provide a single, indivisible remedy for the Class as a whole, class-wide treatment under Rule 23(b)(2) is superior to, and fully consistent with, the efficient administration of justice.

## COUNT I

**Violation of the Driver's Privacy Protection Act**
**18 U.S.C. § 2721, *et seq.***
**(DPPA Damages Class).**

77. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-76, as if set forth fully herein.

78. The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

79. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

80. The names, addresses, telephone numbers and other information that Defendant obtained from motor vehicle records pertaining to Plaintiffs and Class Members was "personal information" as defined under 18 U.S.C. §2725(3).

81. The contents of Plaintiffs' and Class Members' records obtained by Defendant constitute a "motor vehicle record," because they contain records that "pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," within the meaning of 18 U.S.C. §2725(1).

82. Defendant was not an authorized recipient under 18 U.S.C. § 2721(c).

83. 18 U.S.C. §§ 2721(a) and 2722(a) make nondisclosure of personal information the default rule. See 18 U.S.C. § 2721(a) ("In general" prohibiting disclosure of personal information "except as provided in subsection (b)"); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title.").

84. 18 U.S.C. §2721(b) provides fourteen discrete exceptions to non-disclosure. None of those exceptions are applicable to Defendant's use of Plaintiffs' and Class Members' personal information.

85.     Metropolis knowingly obtained, disclosed and used personal information from a motor vehicle record in order to track who utilizes its parking facilities and to send Plaintiffs and Class members an illegal parking citation, which is not a permissible purpose under the DPPA.

86.     Upon information and belief, Defendant acted with respect to Plaintiffs and Class members in willful, or at the very least, reckless disregard of the law in that Defendant knew it was unlawful to access, disclose, obtain and/or use Plaintiffs' and Class members' personal information from non-public motor vehicle records in violation of the DPPA.

87.     Plaintiffs and Class members did not provide Defendant with any form of consent to access their personal information from their driver motor vehicle records.

88.     Plaintiffs and Class members were harmed by Defendant's conduct in that Defendant's violated Plaintiffs' and Class members' right to privacy and statutory rights.

89.     On behalf of themselves and Class members, Plaintiffs seek: (i) declaratory relief; (ii) injunctive relief and equitable relief as is necessary to protect the interests of Plaintiffs and Class members by requiring Defendant to comply with DPPA and/or seize their current practices; (iii) statutory damages of $2,500 per violation of the DPPA pursuant to 18 U.S.C. § 2724(b) of the DPPA; and (iv) reasonable attorneys' fees and costs and other litigation expenses.

**COUNT II**
**Declaratory Judgment**
**(28 U.S.C. § 2201 et seq.)**

90.     Plaintiffs repeat and reallege the foregoing paragraphs 1 through 76 as though fully set forth herein.

91.     An actual, present, and justiciable controversy exists between Plaintiffs and Defendant within the meaning of 28 U.S.C. § 2201 because Defendant continues to operate its license-plate-scanning and data-access systems in the same manner that gave rise to this suit.

92.     Defendant contends, expressly or implicitly, that its acquisition and use of driver information from state motor-vehicle databases is lawful and that its "Notices of Parking Violation" are legitimate charges. Plaintiffs contend the opposite: that Defendant's conduct violates the Driver's Privacy Protection Act, 18 U.S.C. § 2721 et seq., and other applicable law.

93.     Declaratory relief is necessary to resolve the parties' rights and obligations and to prevent ongoing uncertainty, harm, and invasion of privacy to Plaintiffs and the Class.

94.     Accordingly, Plaintiffs, individually and on behalf of the Class, seek a declaration that:

(a)     Defendant's acquisition, use, and disclosure of Personal Information obtained from state motor-vehicle records for commercial enforcement and collection purposes is not a "permissible use" under the DPPA;

(b)     Defendant's practice of sending "Notices of Parking Violation" based on such data violates federal law and the privacy rights of Plaintiffs and the Class; and

(c)     Defendant has no lawful right to obtain, store, use, or disclose drivers' personal information from any motor-vehicle record for purposes of enforcement or collection of private parking fees.

95.     Pursuant to 28 U.S.C. § 2202, Plaintiffs further request such supplemental relief—including injunctive and equitable relief—as is necessary and proper to enforce this declaration and to ensure Defendant's future compliance with the DPPA and this Court's orders.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek a judgement against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the Class representatives, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)   For an order declaring that Defendant's conduct violates the DPPA, as reference herein;

(c)   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)   An award of statutory damages equal to actual damages, but not less than liquidated damages in the amount of $2,500;

(e)   Punitive damages upon proof of willful or reckless disregard of the law;

(f)   Declaring that Defendant's acquisition, use, and disclosure of motor-vehicle records for private enforcement or collection purposes violate the DPPA;

(g)   Enjoining Defendant from obtaining, using, or disclosing Class Members' personal information derived from state motor-vehicle records without a lawful, permissible purpose; and

(h)   Requiring Defendant to implement procedures sufficient to ensure compliance with the DPPA and to purge or destroy unlawfully obtained personal information in its possession; and

(i)   For an order awarding Plaintiffs and Class members their reasonable attorneys' fees and expenses.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury on all claims so triable.

Dated: October 15, 2025                    Respectfully submitted,

| | |
|---|---|
| **VARNELL & WARWICK, P.A.**<br><br>/s/ Janet R. Varnell<br>Janet R. Varnell; FBN: 0071072*<br>Brian W. Warwick; FBN: 0605573* Christopher J.<br>Brochu; FBN: 1013897*<br>400 N Ashley Drive, Suite 1900<br>Tampa, FL 33602<br>Telephone: (352) 753-8600<br>Facsimile: (352) 504-3301<br>jvarnell@vandwlaw.com<br>bwarwick@vandwlaw.com<br>cbrochu@vandwlaw.com<br><br>***Interim Co-Lead Class Counsel for Plaintiffs***<br><br>**PARKER & CROFFORD**<br>Mary A. Parker<br>TN Bar # 006016<br>5115 Maryland Way<br>Brentwood, TN 37027<br>Tel.: 615-244-2445<br>Fax: 615-255-6037<br>mparker@parker-crofford.com<br><br>**BRET LUSSKIN, P.A.**<br>Bret L. Lusskin, Jr.; FBN: 28069*<br>1025 E. Hallandale Beach Blvd., Ste 1532<br>Hallandale Beach, FL 33009<br>Tel: (954) 454-5841<br>blusskin@lusskinlaw.com<br><br>**SCOTT D. OWENS, P.A.**<br>Scott D. Owens; FBN: 597651*<br>2750 N. 29th Ave., Suite 209A<br>Hollywood, Florida 33020<br>Telephone: (954) 589-0588<br>scott@scottdowens.com<br>*pro hac vice* | **STRANCH, JENNINGS & GARVEY, PLLC**<br><br>/s/ J. Gerard Stranch<br>J. Gerard Stranch<br>The Freedom Center<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, TN 37203<br>Telephone: (615) 254-8801<br>Email: gstranch@stranchlaw.com<br><br>***Interim Co-Lead Class Counsel for Plaintiffs***<br><br>**BURSOR & FISHER, P.A.**<br>Philip L. Fraietta<br>Caroline C. Donovan<br>1330 Avenue of the Americas, Fl 32<br>New York, NY 10019<br>Telephone: (646) 837-7150<br>Facsimile: (212) 989-9163<br>Email: pfraietta@bursor.com<br>          cdonovan@bursor.com<br><br>**ALMEIDA LAW GROUP LLC**<br>Matthew J. Langley<br>849 W. Webster Avenue<br>Chicago, Illinois 60614<br>t: 773-554-9354<br>matt@almeidalawgroup.com<br><br>**STRAUSS BORRELLI PLLC**<br>Raina Borrelli<br>980 N. Michigan Avenue, Suite 1610<br>Chicago, Illinois 60611<br>t: (872) 263-1100<br>raina@straussborrelli.com |

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2025 a true and correct copy of the Consolidated

Complaint was served on the party listed below via electronic notice on the CM/ECF to:

Brigid M. Carpenter
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1600 West End Ave., Suite 2000
Nashville, TN 37203
Tel: (615) 726-7341
bcarpenter@bakerdonelson.com

Melissa A. Siebert (Pro Hac Vice)
Corey Hickman (Pro Hac Vice)
Cozen O'Connor
123 N. Wacker Dr. Suite 1800
Chicago, IL 60606
Tel.: (312) 832-3100
msiebert@cozen.com chickman@cozen.com

/s/ Mary A. Parker
Mary A. Parker; #06016