IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| YOUSEF ALHINDI, MATTHEW PETRONE, GREGORY ANDERSON, and BRENDAN APPEL, individually and on behalf of all others similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 3:24-cv-00748 |
| v. ) ) | Chief Judge William L. Campbell, Jr. Magistrate Judge Jeffery S. Frensley |
| METROPOLIS TECHNOLOGIES, INC., ) ) | ORAL ARGUMENT REQUESTED |
| Defendant. ) ) | |

**DEFENDANT METROPOLIS TECHNOLOGIES, INC.'S
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Jonathan E. Nelson (TN BPR No. 028029)
**BASS, BERRY & SIMS PLC**
100 Peabody Place, Suite 1300
Memphis, Tennessee 38103
Phone: (901) 543-5900
Facsimile: (615) 742-6293
jenelson@bassberry.com

James W. Miller (TN BPR No. 040369)
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Phone: (615) 742-6200
Facsimile: (615) 742-6293
james.miller@bassberry.com

Suyash Agrawal (*pro hac vice*)
Christopher M. Walling (*pro hac vice*)
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
Phone: (312) 283-1590
Facsimile: (312) 379-0467
sagrawal@masseygail.com
cwalling@masseygail.com

*Attorneys for Defendant Metropolis
Technologies, Inc.*

# TABLE OF CONTENTS

SUMMARY OF THE MOTION ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT AND AUTHORITIES ......................................................................................... 4

I.  APPLICABLE LEGAL STANDARD ................................................................................... 4

II.  PLAINTIFFS HAVE NOT PLED FACTS SUPPORTING THEIR CLAIM THAT METROPOLIS VIOLATED THE DPPA. ................................................................................................. 5

    A.  The Complaint Does Not Plead Facts to Plausibly Support the Legal Conclusion That Metropolis Knowingly Obtained or Used Personal Information from a Motor Vehicle Record. ............................................................. 6

        1.  Plaintiffs Alhindi, Petrone, and Anderson Plead No Facts Supporting Their Claims that Metropolis Obtained their Personal Information from the Tennessee Department of Safety and Homeland Security. ........... 6

        2.  Plaintiff Appel Does Not Allege That Metropolis Obtained His Personal Information at All. ......................................................................... 8

    B.  Plaintiffs Do Not Satisfy Their Burden to Plead Facts that the DPPA's Exemptions Do Not Apply to Metropolis. ................................................................ 9

        1.  "For use in connection with . . . investigation in anticipation of litigation" exemption (18 U.S.C. § 2721(b)(4)) ........................................ 11

        2.  "For use in connection with the operation of private toll transportation facilities" exemption (18 U.S.C. § 2721(b)(10)) ............... 12

        3.  "For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety" exemption (18 U.S.C. § 2721(b)(14)) ............... 15

III.  PLAINTIFFS' DECLARATORY JUDGMENT COUNT FALLS WITH THEIR DAMAGES COUNT. .................................................................................................................. 16

IV.  PLAINTIFFS' COMPLAINT MUST BE DISMISSED WITH PREJUDICE. ..................... 17

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Acosta v. Peregrino*,
　　No. 3:17-cv-01381, 2018 WL 2045938 (M.D. Tenn. May 2, 2018) .........................................4

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)...................................................................................................................4

*Bass v. Anoka County*,
　　998 F. Supp. 2d 813 (D. Minn. 2014)........................................................................................9

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)...................................................................................................................4

*Bennett v. Wal-Mart Inc.*,
　　Case No. 22-12197, 2022 WL 17069557 (E.D. Mich. Nov. 17, 2022)...................................12

*Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*,
　　474 F.3d 365 (6th Cir. 2007) ...................................................................................................13

*Buxton v. Hartin Asset Mgmt., LLC*,
　　Case No. 1:22-cv-600, 2023 WL 4861724 (W.D. Mich. July 31, 2023)...................................5

*Camara v. Metro-N. R.R.*,
　　596 F. Supp. 2d 517 (D. Conn. 2009).......................................................................................10

*United States ex rel. Felten v. William Beaumont Hosp.*,
　　993 F.3d 428 (6th Cir. 2021) ...................................................................................................13

*Frederick v. Wyndham Vacation Ownership, Inc.*,
　　No. 3:24-cv-00528, 2024 WL 5188736 (M.D. Tenn. Dec. 20, 2024) .......................................5

*Garey v. James S. Farrin, P.C.*,
　　35 F.4th 917 (4th Cir. 2022) .................................................................................................6, 8

*Howard v. Crim. Info. Servs., Inc.*,
　　654 F.3d 887 (9th Cir. 2011) ................................................................................................4, 5

*Koenigs, L.L.C. v. City of Savannah*,
　　No. 1:17-cv-01109-STA-egb, 2018 WL 1915084 (W.D. Tenn. Apr. 23, 2018) ......................7

*Kovalchuk v. City of Decherd*,
　　95 F.4th 1035 (6th Cir. 2024) ...................................................................................................4

Case 3:24-cv-00748　　Document 79　　Filed 12/05/25　　Page 3 of 22 PageID #: 510

*Loeffler v. City of Anoka*,
   No. 13-CV-2060 (MJD/TNL), 2014 WL 4449674 (D. Minn. June 24, 2014),
   *report and recommendation adopted*, Civil No. 13-2060 (MJD/TNL), 2014
   WL 4449692 (D. Minn. Sept. 9, 2014), *aff'd*, 893 F.3d 1082 (8th Cir. 2018)....................7, 12

*Lucas v. Moore*,
   Case No. 2:18-cv-582, 2019 WL 9832007 (S.D. Ohio Mar. 21, 2019, *aff'd*, No.
   19-4010, 2021 WL 2773936 (6th Cir. Jan. 20, 2021)..............................................................5

*Mass. Port Auth. v. Clerk of E. Bos. Dist. Ct.*,
   214 N.E.2d 23 (Mass. 1966) ....................................................................................................14

*Medrano v. City of San Antonio, Tex.*,
   179 F. App'x 897 (5th Cir. 2006)............................................................................................13

*Nolan v. Detroit Edison Co.*,
   991 F.3d 697 (6th Cir. 2021) ...................................................................................................12

*Orduno v. Pietrzak*,
   Civil No. 14-1393 ADM/JSM, 2014 WL 5464413 (D. Minn. Oct. 28, 2014) ........................5

*Pavone v. Meyerkord & Meyerkord, LLC*,
   118 F. Supp. 3d 1046 (N.D. Ill. 2015)...................................................................................7, 8

*Price v. City of Memphis ex rel. Memphis Police Dep't*,
   Case No. 2:17-cv-02772-JTF-cgc, 2018 WL 6531751 (W.D. Tenn. Sept. 4,
   2018) ........................................................................................................................................15

*Rodriguez v. Ampco Parking Sys.*,
   Case No. C09-1789-MJP, 2010 WL 11682519 (W.D. Wash. Apr. 8, 2010) ..........................10

*Rotello v. Clayton Homes of Del., Inc.*,
   No. 3:03-cv-573, 2006 WL 2771018 (E.D. Tenn. Sept. 25, 2006)..........................................12

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*,
   525 F.3d 1107 (11th Cir. 2008) .......................................................................................4, 5, 9

*United States v. Havener*,
   77 F.3d 493 (10th Cir. 1996) ...................................................................................................13

*Whitaker v. Appriss, Inc.*,
   266 F. Supp. 3d 1103 (N.D. Ind. 2017) ....................................................................................7

**Statutes**

18 U.S.C. § 2721.................................................................................................................... *passim*

18 U.S.C. § 2724.............................................................................................................................6

iii

18 U.S.C. § 2725 ...................................................................................................8

23 U.S.C. § 129 ...................................................................................................15

23 U.S.C. § 217 ...................................................................................................14

49 U.S.C. § 5323 .................................................................................................14

Tenn. Code § 47-18-104 ......................................................................................16

Tenn. Code §55-31-103 .......................................................................................16

Tenn. Code § 55-31-202 ......................................................................................16

Tenn. Code § 55-31-203 ......................................................................................16

**Other Authorities**

139 CONG. REC. 27327-28 (1993) (statement of Rep. Moran) (available at
    https://www.congress.gov/bound-congressional-record/1993/11/03/extensions-
    of-remarks-section) ...........................................................................................10

139 CONG. REC 29468 (1993) (statement of Sen. Boxer) (available at
    https://www.congress.gov/bound-congressional-record/1993/11/16/senate-
    section) .............................................................................................................10

AMERICAN HERITAGE DICTIONARY (3d ed. 1992) ..................................................13, 14

BLACK'S LAW DICTIONARY (6th ed. 1990) ..............................................................13, 14

*Death of Actress Aided by State's Failure to Protect Data in 1989*, Inside CDCR,
    California Department of Corrections and Rehabilitation (September 3, 2020),
    https://www.cdcr.ca.gov/insidecdcr/2020/09/03/death-of-actress-aided-by-
    states-failure-to-protect-data/ ...........................................................................10

Department of Safety & Homeland Security, https://www.tn.gov/safety.html;
    Illinois Secretary of State, https://www.ilsos.gov/ ............................................6

https://balegal.com/ .................................................................................................9

Tennessee Bill Summary, 2025 Reg. Sess. S.B. 1068 (bill passed and codified as §
    55-31-202 ..........................................................................................................16

WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3d ed. 1994) .......................13, 14

iv

Defendant Metropolis Technologies, Inc. ("Metropolis") submits this Motion to Dismiss Plaintiffs' Consolidated Class Complaint and Supporting Memorandum of Law under Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF THE MOTION

Four people driving Plaintiffs' vehicles parked in different Metropolis-operated commercial parking facilities and—undisputedly—did not pay for doing so. Plaintiffs allege that they, or the drivers of their vehicles, did not see the Metropolis signage at those parking facilities indicating that customers must pay, and instead (presumably) concluded that the facilities offered free parking. Plaintiffs then allege shock upon receiving the bill for Metropolis's parking services in the mail. Concerned less about paying for the services they used and more about how Metropolis figured out how to send them a bill, Plaintiffs brought this putative class action. Plaintiffs assert claims under just one statute: the Driver's Privacy Protection Act ("DPPA," 18 U.S.C. § 2721 et seq.).

Plaintiffs' Consolidated Class Complaint does not allege sufficient facts to render their DPPA claim plausible as required to survive this Motion to Dismiss:

- ***First***, Plaintiffs do not plead facts to support their claim that Metropolis obtained personal information from a Tennessee or Illinois Department of Motor Vehicles "motor vehicle record," as they must. Plaintiffs' factual allegations are instead merely "consistent with" that possibility and so fail to state a *plausible* claim for relief.

- ***Second***, Plaintiffs have not met their burden to plead facts suggesting that any such gathering of personal information was not for a "permitted use" under the DPPA. Three permitted uses plainly apply: (1) for use in

anticipated litigation; (2) for use in connection with private transportation facilities; and (3) for use permitted by state law.

Therefore, because Plaintiffs fail to plead enough facts to support their DPPA claim, this Court should dismiss the Consolidated Class Complaint. And because the issues with Plaintiffs' claims are legal and incurable by amendment, the dismissal should be with prejudice.

## BACKGROUND

Metropolis operates public paid-parking facilities.[1] Plaintiffs' Consolidated Class Complaint (the "Complaint" or "Compl.") ¶ 38 (ECF 65). Three of the Plaintiffs, and a daughter of the fourth Plaintiff, entered Metropolis facilities and left without paying. *Id.* ¶¶ 17–20, 22, 27–32. Only Plaintiff Petrone alleges that his vehicle was never parked at the Metropolis facility at issue; he "may have" just driven through it. *Id.* ¶¶ 18, 20, 22, 28–29. All four Plaintiffs thereafter received a "Notice of Parking Violation" (the "Notices") in the mail at their personal or commercial addresses. *See id.* ¶ 6. Plaintiffs allege that the "Notices of Parking Violation" are "standardized" (*id.* ¶ 76) and contain the following information.[2]

- The issuer of the Parking Notice (Metropolis) and how Plaintiffs could pay it (directly to Metropolis). *Id.*

- The Metropolis parking facility location where Plaintiffs' vehicles went into and left the Metropolis-operated facility. *Id*.

---

[1] The facts in this section are adapted from the Complaint solely for purposes of this motion without admitting their veracity beyond the Rule 12(b)(6) stage.

[2] Plaintiffs included a copy of a Notice of Parking Violation in the Complaint and allege that this is the notice form sent to Plaintiffs. Compl. ¶ 6. All the facts Plaintiffs plead for each notice sent to them are identical, save the "violation details," the "violations summary," and the personal information included. *Id*. ¶¶ 17-32. As such, this Motion will treat the Notice of Parking Violation included at paragraph six of the Complaint as the common template for each individual notice and will refer to them collectively as "the Notices."

2

- "[P]hotos of the vehicle" entering and exiting Metropolis's facility, under "Entry" and "Exit." *Id.*

- A "Unpaid Fare," a "Violation Fine," and a combined "Amount due." *Id*.

- The following message for disputing the amount due on the Notices: "For help or to dispute this ticket, you may contact customer service via www.payments.metropolis.io. If you do not dispute this violation within 30 days of receiving this notice, Metropolis will assume the ticket and monies owed are valid." *Id.*

- A disclaimer at the bottom: "**THIS INVOICE IS PRIVATELY ISSUED, IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CRIMINAL PENALTIES**. **Metropolis is not a debt collection agency**. Please note, all vehicles that fail to pay for parking violations may be subject to additional fees, referred to a dedicated collection agency, or incur other legal action, future ticketing, booting and/or towing, at the sole discretion of Metropolis." *Id*. (emphases and capitalization in original).

Plaintiffs allege that there was no "reasonable notice that [they] may be charged if [they] parked in the [Metropolis] lot," although they carefully do not allege facts regarding whether or when the drivers actually knew that the Metropolis facilities charged for their services. Compl. ¶¶ 18, 20, 22, 32. Plaintiffs do not attempt to explain why they presumed that they could park on private property for free. To date, Plaintiffs have not paid for Metropolis's services. *Id.* ¶¶ 18, 20, 26, 32.

3

The Notices contain nothing about Metropolis requesting information from any department of motor vehicles. *Id.* ¶ 6. Instead, Plaintiffs allege that Metropolis has made a general statement to the press, and a specific one to Plaintiff Appel, that it used Plaintiffs' license plate information to verify Plaintiffs' personal information from the government—which the Complaint equates with "the DMV," without identifying a particular government agency in Illinois or Tennessee. *Id.* ¶¶ 60–61. Plaintiffs allege that Metropolis's purpose in sending the Notices to Plaintiffs was to initiate contact with Plaintiffs so that Plaintiffs would pay the amounts due on the Notices. *Id.* ¶ 85.

## ARGUMENT AND AUTHORITIES

### I. APPLICABLE LEGAL STANDARD

To satisfy Rule 8(a)'s pleading standard and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Allegations that are "'merely consistent' with a defendant's liability" or show "the mere possibility of misconduct" are not enough. *Iqbal*, 556 U.S. at 678–79. "If a plaintiff does not 'nudge the claim across the line from conceivable to plausible, the complaint must be dismissed.'" *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1037 (6th Cir. 2024) (quoting *Twombly*, 550 U.S. at 570) (citation modified). A complaint that "imitates the statutory language" but "does not provide sufficient factual support" for violations of that statute must be dismissed. *Acosta v. Peregrino*, No. 3:17-cv-01381, 2018 WL 2045938, at *2 (M.D. Tenn. May 2, 2018).

For their sole DPPA cause of action, Plaintiffs bear the burden to plead facts showing that Metropolis (1) knowingly obtained their personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted by the statute. *See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1111–14 (11th Cir. 2008); *Howard v. Crim.*

4

*Info. Servs., Inc.*, 654 F.3d 887, 891 (9th Cir. 2011) ("The burden of proving these elements is on the plaintiffs."). "The circuit courts which have addressed the issue of burden of proof have held the plaintiff has the burden of proving each element of the civil claim, including whether the retrieval was for a 'purpose not permitted' by the Act." *Orduno v. Pietrzak*, Civil No. 14-1393 ADM/JSM, 2014 WL 5464413, at *1 (D. Minn. Oct. 28, 2014); *Thomas*, 525 F.3d at 1111–14; *Howard*, 654 F.3d at 891. Because an impermissible purpose is the third element of a DPPA cause of action, Plaintiffs have "the burden of proving that disclosure of the personal information was for a purpose not permitted under the DPPA." *Lucas v. Moore*, Case No. 2:18-cv-582, 2019 WL 9832007, at *2 (S.D. Ohio Mar. 21, 2019, *aff'd*, No. 19-4010, 2021 WL 2773936 (6th Cir. Jan. 20, 2021); *see also Buxton v. Hartin Asset Mgmt., LLC*, Case No. 1:22-cv-600, 2023 WL 4861724, at *8 (W.D. Mich. July 31, 2023)(same).

> We note that placing the burden upon the defendant to show the third element would essentially relegate the motion to dismiss stage to something less than a speed bump in [DPPA] actions. Plaintiffs could survive a Fed. R. Civ. P. 12(b)(6) challenge upon the bare allegation of a defendant's mere obtainment of information from a vehicle record.

*Thomas*, 525 F.3d at 1111 n.3.

The Court may "consider exhibits attached to a defendant's motion to dismiss under Rule 12(b)(6) when 'they are referred to in the Complaint and are central to the claims contained therein.'" *Frederick v. Wyndham Vacation Ownership, Inc.*, No. 3:24-cv-00528, 2024 WL 5188736, at *1 (M.D. Tenn. Dec. 20, 2024)(quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

## II. PLAINTIFFS HAVE NOT PLED FACTS SUPPORTING THEIR CLAIM THAT METROPOLIS VIOLATED THE DPPA.

Plaintiffs have the burden to plead that the three elements of their DPPA claim, including that the information alleged to be acquired from a state DMV was not for a permitted purpose. But

5

the Complaint is not more than "merely consistent with" Metropolis's liability under the DPPA. Instead of pleading supporting facts, Plaintiffs recite the bare statutory elements of their claim. Therefore, this Court should dismiss the Complaint.

## A. The Complaint Does Not Plead Facts to Plausibly Support the Legal Conclusion That Metropolis Knowingly Obtained or Used Personal Information from a Motor Vehicle Record.

Plaintiffs provide no factual allegations supporting their legal allegation that Metropolis (1) knowingly obtained, disclosed, or used personal information (2) from a motor vehicle record provided by the Tennessee Department of Safety and Homeland Security or the Illinois Secretary of State.[3] 18 U.S.C. § 2724(a).

### 1. Plaintiffs Alhindi, Petrone, and Anderson Plead No Facts Supporting Their Claims that Metropolis Obtained their Personal Information from the Tennessee Department of Safety and Homeland Security.

There are many possible sources from which Metropolis could have obtained Plaintiffs Alhindi, Petrone, and Anderson's (the Tennessee plaintiffs) information that are not (and did not originate from) a motor vehicle record from the Tennessee Department of Safety and Homeland Security. "The phrase 'obtain, disclose or use personal information, from a motor vehicle record' is most naturally read to refer to a defendant who obtains such information directly '*from* a motor vehicle record' (or a defendant who uses or discloses that information once so obtained), not a defendant who obtains information that, at some point in time, appeared in a motor vehicle record." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 926 (4th Cir. 2022). Personal information held by the Tennessee Department of Safety and Homeland Security is not protected if the Tennessee Plaintiffs provided it to another source. "When the holder of a driver's license hands over her

---

[3] These are the proper state agencies that issue drivers' licenses in these respective jurisdictions. *See* Department of Safety & Homeland Security, https://www.tn.gov/safety.html; Illinois Secretary of State, https://www.ilsos.gov/.

personal information to an entity other than a DMV, even when that information is printed onto a driver's license, the DPPA doesn't protect it." *Whitaker v. Appriss, Inc.*, 266 F. Supp. 3d 1103, 1110 (N.D. Ind. 2017). And personal information is not protected by the DPPA if obtained from another source, even a governmental one, that is *not* the equivalent of a state department of motor vehicles, such as an accident report created by the police. *See Pavone v. Meyerkord & Meyerkord, LLC*, 118 F. Supp. 3d 1046, 1053 (N.D. Ill. 2015) (holding that information obtained from accident report is not protected by DPPA).

Here, Plaintiffs Alhindi, Anderson, and Petrone have no factual allegations whatsoever concerning the source of the information used to send them the Notices. They rely on conclusory statements about the source of the names and addresses used on their individual Notices of Parking Violation. Compl. ¶¶ 18, 20, 32. Plaintiffs must show "specific, concrete facts adequate to allow the Court to draw reasonable inferences that support the general allegations of Defendants' liability for *each*" of their claims. *Koenigs, L.L.C. v. City of Savannah*, No. 1:17-cv-01109-STA-egb, 2018 WL 1915084, at *1 (W.D. Tenn. Apr. 23, 2018) (emphasis added). The Complaint alleges the existence of particular retrievals of personal information for Plaintiffs Alhindi, Anderson, and Petrone, but only contains general allegations in support of the source of the personal information and fails to allege facts connecting the general allegations to Plaintiffs Alhindi, Anderson, and Petrone in particular. Such allegations, without supporting facts rendering the legal allegations regarding the acquisition of their personal information plausible, cannot support their DPPA claims here. *Loeffler v. City of Anoka*, No. 13-CV-2060 (MJD/TNL), 2014 WL 4449674, at *22 (D. Minn. June 24, 2014), *report and recommendation adopted*, Civil No. 13-2060 (MJD/TNL), 2014 WL 4449692 (D. Minn. Sept. 9, 2014), *aff'd*, 893 F.3d 1082 (8th Cir. 2018).

Nor can the Tennessee Plaintiffs plausibly rely on years-old, general statements about Metropolis's business practices to support an allegation that *their* information was accessed from a "motor vehicle record." Plaintiffs state, for example, that Metropolis "admitted . . . in response to complaints made to the Tennessee Attorney General's Office . . . that it used the license plate information to obtain drivers' personal information from the Tennessee DMV." Compl. ¶ 60. The source that Plaintiffs cite for that "admiss[ion]" is Metropolis's statement to a Nashville news station in October 2022, that Metropolis traced license plates to "Tennessee government records." (attached as Exhibit A). Plaintiffs all parked in Metropolis facilities in late 2023 or early 2024 (Compl. ¶¶ 17, 19, 21, 26); the temporal connection to Metropolis's statement to the news station is not obvious. But "government records" by their nature are not "motor vehicle records." *See Pavone*, 118 F. Supp. 3d at 1053. "The phrase 'obtain, disclose or use personal information, from a motor vehicle record' is most naturally read to refer to a defendant who obtains such information directly '*from* a motor vehicle record' (or a defendant who uses or discloses that information once so obtained), not a defendant who obtains information that, at some point in time, appeared in a motor vehicle record." *Garey*, 35 F.4th at 926. A statement that the information was obtained from "government records" does not support an allegation that Plaintiffs' information was from a "motor vehicle record" as defined in the DPPA.

### 2. Plaintiff Appel Does Not Allege That Metropolis Obtained His Personal Information at All.

Plaintiff Appel alleges that he "received a 'Notice of Parking Violation' from Defendant Metropolis *that was mailed to his work address*." Compl. ¶ 21 (emphasis added). "Personal information" does not include a business address. Under the DPPA, "'personal information' means information that identifies an individual, including an individual's . . . address (but not the 5-digit zip code)." 18 U.S.C. § 2725 (3). Indeed, Plaintiff Appel's business address is publicly available

8

on his law firm's website. *See* https://balegal.com/ (last visited December 3, 2025) (address in Northfield, IL, at the bottom of the page). Therefore, Plaintiff Appel has no facts to support the conclusion that Metropolis obtained his personal information; as he alleged, the only information Metropolis used was his commercial address, which was freely available on the internet.

Plaintiffs have the burden at this stage to plead facts showing, beyond being merely consistent with, that Metropolis obtained their personal information from a knowing request to the Tennessee Department of Safety and Homeland Security or the Illinois Secretary of State. Without those requisite factual allegations, this Court should dismiss Plaintiffs' DPPA claim.

### B. Plaintiffs Do Not Satisfy Their Burden to Plead Facts that the DPPA's Exemptions Do Not Apply to Metropolis.

As to the third element of the claim, Plaintiffs again plead no facts to show that Metropolis used their information for a "purpose not permitted" under the DPPA. *See Thomas*, 525 F.3d at 1111 n.3 (noting that plaintiffs must plead that the use of personal information was for a purpose not permitted under the DPPA). Plaintiffs merely intone that none of the DPPA exceptions apply without distinguishing them. Compl. ¶ 84 ("18 U.S.C. §2721(b) provides fourteen discrete exceptions to non-disclosure. None of those exceptions apply to Defendant's use of Plaintiffs' and Class Members' personal information."). That conclusory pleading *alone* is insufficient to survive a motion to dismiss. *See Bass v. Anoka County*, 998 F. Supp. 2d 813, 821 (D. Minn. 2014) (alterations in original) (holding that it is conclusory to state that "[n]one of the [i]ndividual [d]efendants' activities fell within the DPPA's permitted exceptions for procurement of . . . information" because "the court will not infer from bare, conclusory allegations that defendants'

9

purposes were improper"); *Rodriguez v. Ampco Parking Sys.*, Case No. C09-1789-MJP, 2010 WL 11682519, at \*2 (W.D. Wash. Apr. 8, 2010) (similar).[4]

But if it were Metropolis's burden to argue otherwise (to be clear, it is not), the Complaint shows that Metropolis was using the alleged personal information for permitted purposes under the DPPA. Congress enacted the DPPA in 1994 as a part of the Violent Crime Control and Law Enforcement Act to respond to violent crimes committed by stalkers who obtained their victims' personal information from DMV records. *Camara v. Metro-N. R.R.*, 596 F. Supp. 2d 517, 524 (D. Conn. 2009); *Death of Actress Aided by State's Failure to Protect Data in 1989*, Inside CDCR, California Department of Corrections and Rehabilitation (September 3, 2020), https://www.cdcr.ca.gov/insidecdcr/2020/09/03/death-of-actress-aided-by-states-failure-to-protect-data/. Several senators who supported the bill emphasized the importance of "strik[ing] a critical balance between the legitimate governmental and business needs for this information, and the fundamental right of [the] people to privacy and safety." 139 CONG. REC 29468 (1993) (statement of Sen. Boxer) (available at https://www.congress.gov/bound-congressional-record/1993/11/16/senate-section); *see also* 139 CONG. REC. 27327–28 (1993) (statement of Rep. Moran) (noting "this bill does not limit those legitimate organizations in using the information") (available at https://www.congress.gov/bound-congressional-record/1993/11/03/extensions-of-remarks-section). The statute's purpose is to protect victims from insidious or criminal invasions of privacy—not to stymy "legitimate organizations in using the information." 139 CONG. REC. 27328 (statement of Rep. Moran)*.*

---

[4] Whether the parking lots Metropolis allegedly operates "appear to be open to the public—often without gates, ticket dispensers, or any clear warning that payment is required"—is irrelevant to Metropolis's purpose in sending the Notices. Compl. ¶ 1. Plaintiffs' pleading on this issue, when not boilerplate, is internally inconsistent. For example, Plaintiff Appel alleges both that there "was no gate at the lot" and that "the gates at the parking lot . . . were up." *Id.* ¶¶ 22–23.

Logically, then, Metropolis's use of information, as Plaintiffs plead (to send Notices of Parking Violation to scofflaw parkers), is not what Congress meant to curtail. Indeed, Metropolis's alleged conduct falls under three express statutory exceptions in the DPPA.

1.     *"For use in connection with . . . investigation in anticipation of litigation" exemption (18 U.S.C. § 2721(b)(4))*

Plaintiffs (or others using their vehicles) all parked in a Metropolis parking facility and did not pay for the use of that service. The DPPA permits use of motor vehicle record-derived personal information "[f]or use in connection with . . . investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4). Metropolis's actions, as Plaintiffs allege them, fall firmly within the litigation exception, as it is accused of obtaining DMV records for the purpose of identifying a potential litigant, and then initiating that process by mailing those potential litigants a note, the failure to respond to which would logically include Metropolis initiating "legal action" against those potential litigants. Compl. ¶ 6. Plaintiffs individually plead that this statement to initiate legal action was in the Notice of Parking Violation sent to each Plaintiff. *Id*. ¶¶ 17, 19, 21, 30. Plaintiffs further allege that Metropolis's purpose is to "obtain the personal information of Plaintiffs" and then "send parking citations when applicable." *Id*. ¶ 58. The Notices also include a dispute-resolution procedure that invites Plaintiffs to contact Metropolis if they believe they received the notice by mistake. *Id*. ¶ 6. Indeed, Plaintiff Appel availed himself of these processes. *Id*. ¶¶ 23–25.

Metropolis must acquire basic information about the potential litigant to further its factual investigation in anticipation of that enforcement litigation. Metropolis needed the party's contact information to initiate the dispute resolution process that indisputably encompasses litigation. This is precisely the situation 18 U.S.C. § 2721(b)(4) is designed to cover.

Plaintiffs' poorly framed statements about Metropolis's purpose do not adequately allege otherwise. Indeed, they conspicuously never allege any purpose for Metropolis's actual

11

transmission of Notices of Parking Violation to each individual Plaintiff. *See* Compl. ¶¶ 17–34. Plaintiffs never specifically allege that any of the Notices Metropolis sent to them were false or intended to mislead (or, indeed, actually misled them, given that no Plaintiff paid the amounts due). And Plaintiffs cannot rely on general allegations regarding the "fals[ity]" or "fake[ness]" (Compl. ¶¶ 3, 7) of Notices in the abstract to establish an improper purpose under the DPPA. *See Loeffler*, 2014 WL 4449674, at \*22; *see also Bennett v. Wal-Mart Inc.*, Case No. 22-12197, 2022 WL 17069557, at \*2 (E.D. Mich. Nov. 17, 2022); *Rotello v. Clayton Homes of Del., Inc.*, No. 3:03-cv-573, 2006 WL 2771018, at \*3 (E.D. Tenn. Sept. 25, 2006).

The one *specific* allegation in the Complaint regarding the Notices' "fake[ness]" states that the Notices "are designed to look like official parking citations" and thus are "misleading." Compl. ¶¶ 6, 7, 75. This is expressly contradicted by the Notices themselves, which state in bold and all caps: "**THIS INVOICE IS PRIVATELY ISSUED, IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CRIMINAL PENALTIES**." *Id*. ¶ 6. "When a document contradicts allegations in the complaint, rendering them implausible, the exhibit trumps the allegations." *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021) (cleaned up).

Plaintiffs plead no facts in support of any improper purpose under the DPPA as applied to any of the Notices sent to any of the Plaintiffs. Instead, Plaintiffs generally plead facts suggesting that Metropolis transmitted its Notices in anticipation of litigation.

> 2. *"For use in connection with the operation of private toll transportation facilities" exemption (18 U.S.C. § 2721(b)(10))*

Putting aside Metropolis's purpose, another DPPA exemption would allow Metropolis's use of allegedly DMV-obtained personal information "in connection with the operation of private toll transportation facilities." 18 U.S.C. § 2721(b)(10). That exception covers Metropolis, the

12

operator of a private for-pay parking facility, which is a "private toll transportation facilit[y]" under the plain language of § 2721(b)(10). *See United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021) ("We first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case, relying on the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.") (cleaned up). If this Court determined that the statutory language is ambiguous, then it can rely on persuasive authorities such as "other statutes, interpretations by other courts, legislative history, policy rationales, and the context in which the statute was passed." *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 372 (6th Cir. 2007).

But here, the language of the exemption in § 2721(b)(10) is unambiguous. The statutory analysis of "private toll transportation facility" is simple. A "toll" is "[a] fixed charge or tax for a privilege, especially for passage across a bridge or along a road," or "a charge for a service, such as a long-distance telephone call." *Toll*, AMERICAN HERITAGE DICTIONARY (3d ed. 1992) (attached as Exhibit B); *see also Toll,* WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3d ed. 1994) (attached as Exhibit C) ("a tax or charge for a privilege, esp. for permission to pass over a bridge, along a highway, etc. [ ] a charge for service or extra service, as for transportation, for a long-distance telephone call, or, formerly, for having one's grain milled."); Toll, BLACK'S LAW DICTIONARY (6th ed. 1990) (attached as Exhibit D) ("A sum of money for the use of something, generally applied to the consideration which is paid for the use of a road, highway, bridge, or the like, of a public nature. . . . Charge for long-distance telephone calls."). "Toll" is often used to refer to the money charged by parking facilities. *See, e.g., United States v. Havener*, 77 F.3d 493 (10th Cir. 1996) (table decision) ("They observed Havener retrieve his car from the parking lot and intercepted him after he left the parking lot toll booth."); *Medrano v. City of San Antonio, Tex.*, 179

F. App'x 897, 903 (5th Cir. 2006) ("The positions of "Parking Toll Attendant/Full Time" and "Parking Toll Attendant/Part Time" constitute separate job classifications under the City's seniority policy."); *Mass. Port Auth. v. Clerk of E. Bos. Dist. Ct.*, 214 N.E.2d 23, 26 (Mass. 1966) (holding that "toll" in a statute encompasses a "fine for parking" or "funds from metered parking").

As alleged, Metropolis charges a "toll" for the use of its parking facility. "Private" in this context plainly means "[b]elonging to a particular person or persons, as opposed to the public or the government." *Private*, AMERICAN HERITAGE DICTIONARY (3d ed. 1992) (Exhibit B); *see also Private,* WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3d ed. 1994) (EXHIBIT C) ("of, belonging to, or concerning a particular person or group; not common or general . . . not holding public office"); *Private*, BLACK'S LAW DICTIONARY (6th ed. 1990) (Exhibit D) ("Affecting or belonging to private individuals, as distinct from the public generally. Not official; not clothed with office."). As alleged, Metropolis's parking facility is privately owned. The parking facility is a "transportation facility" because people park vehicles there. And it is operated for pay.

Even if the phrase "transportation facility" was ambiguous, persuasive authority shows that parking facilities are transportation facilities. In other federal statutes, parking facilities are subsets of transportation facilities: "(1) Bicycle *transportation facility*.—The term 'bicycle transportation facility' means a new or improved lane, path, or shoulder for use by bicyclists and a traffic control device, shelter, or *parking facility* for bicycles." 23 U.S.C. § 217(j) (emphasis added). "Reasonable access to public *transportation facilities*.—A recipient of assistance under this chapter may not deny reasonable access for a private intercity or charter transportation operator to federally funded public transportation facilities, including intermodal facilities, *park and ride lots*, and bus-only highway lanes." 49 U.S.C. § 5323(r) (emphasis added). This language is not narrowly tied to certain kinds of transportation facilities. Indeed, if Congress intended this exception to narrowly

14

apply to "toll roads" or "toll bridges," it could have used those terms, as it does in other statutes. *See, e.g.*, 23 U.S.C. § 129(a)(1)(A) ("Subject to the provisions of this section, Federal participation shall be permitted on the same basis and in the same manner as construction of toll-free highways is permitted under this chapter in the [ ] initial construction of a toll highway, bridge, or tunnel."). That Congress did not use a narrower term than "transportation facility" must be explained by the correct statutory construction of the DPPA: Private, for-pay parking facilities are "private toll transportation facilities."

Non-governmental actors seeking to charge money for the use of a privately owned, for-pay parking facility, which is a "private toll transportation facilit[y]," are exempt from liability under 18 U.S.C. § 2721(b)(10). Metropolis allegedly requested information from the Illinois and Tennessee Departments of Motor Vehicles in connection with the operation of its private toll transportation facility, specifically its privately owned parking facility (Compl. ¶¶ 38–46). That use is exempted from liability under the DPPA. 18 U.S.C. § 2721(b)(10).

> 3. *"For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety" exemption (18 U.S.C. § 2721(b)(14))*

For the Tennessee Plaintiffs (Alhindi, Petron, and Anderson), Metropolis's alleged use of Plaintiffs' information is expressly permitted under Tennessee law, falling into another DPPA exception for "any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). The "DPPA, in part, defers to state law for 'permissible purposes' under which the personal information contemplated by the DPPA may be disclosed." *Price v. City of Memphis ex rel. Memphis Police Dep't*, Case No. 2:17-cv-02772-JTF-cgc, 2018 WL 6531751, at *3 (W.D. Tenn. Sept. 4, 2018).

15

In Tennessee, Metropolis is *expressly* allowed to install "license plate reader[s]" at its parking facilities "to enforce the commercial parking lot owner's parking requirements." Tenn. Code § 55-31-202(a); *see also* Tennessee Bill Summary, 2025 Reg. Sess. S.B. 1068 (bill passed and codified as § 55-31-202) ("Present law requires commercial parking lot owners to post signage providing notice if the owner uses automatic license plate readers to enforce their parking requirements or charges a penalty for non-payment of parking fees. This bill makes technical changes to the signage requirements."). Tennessee also sets requirements on when Metropolis can charge a "penalty for non-payment of parking fees." Tenn. Code § 55-31-203(a). Indeed, Plaintiffs Petrone, Alhindi, and Anderson have a Tennessee state law cause of action if they believe that Metropolis improperly read their license plates. Tenn. Code §§ 47-18-104(65), 55-31-103(a)(1)(A). Given the Tennessee state law and cause of action available to Tennessee residents, Metropolis's use of the Tennessee Plaintiffs' license plates to send them parking notices is expressly "authorized under the law of the State that holds the record." 18 U.S.C. § 2721 (b)(14).

In sum, no Plaintiff can satisfy his burden to show that Metropolis obtained his information "for a purpose not permitted" under the DPPA. Metropolis gathered Plaintiffs' information in anticipation of litigation—namely, to collect their outstanding parking fares (if they default). The Plaintiffs all parked at Metropolis's private toll transportation facilities, and Metropolis used their information in connection with those facilities. And for the Tennessee Plaintiffs, Metropolis scans their license plate and mails an invoice for parking in accordance with Tennessee law. The Complaint says nothing to vitiate these exceptions. This Court should dismiss Count I.

III. **PLAINTIFFS' DECLARATORY JUDGMENT COUNT FALLS WITH THEIR DAMAGES COUNT.**

Plaintiffs seek a declaration that Metropolis's ongoing activities, as described in the Complaint, are unlawful, such that Metropolis should stop. Compl. ¶¶ 90-95. Because Plaintiffs

16

have not stated a claim concerning whether Metropolis's activities are actually unlawful, *see supra*, Count II should also be dismissed.

## IV.    PLAINTIFFS' COMPLAINT MUST BE DISMISSED WITH PREJUDICE.

The issues with the Complaint are legal in nature; they cannot be cured by amendment. For example, Plaintiffs have no basis to add additional facts as to how Metropolis acquired their personal information (and Plaintiff Appel can't even allege that Metropolis acquired his personal, not his commercial, information). The use of personal information as alleged here is expressly permitted, as a matter of law, by the DPPA. Amendment would be futile; therefore, the Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Metropolis Technologies, Inc. requests that the Court dismiss Plaintiffs' Consolidated Class Complaint in its entirety with prejudice.

Date: December 5, 2025

Respectfully submitted,

*/s/ Jonathan Nelson*

Jonathan E. Nelson (TN BPR No. 028029)
**BASS, BERRY & SIMS PLC**
100 Peabody Place, Suite 1300
Memphis, Tennessee 38103
Phone: (901) 543-5900
Facsimile: (615) 742-6293
jenelson@bassberry.com

James W. Miller (TN BPR No. 040369)
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Phone: (615) 742-6200
Facsimile: (615) 742-6293
james.miller@bassberry.com

Suyash Agrawal (*pro hac vice*)
Christopher M. Walling (*pro hac vice*)
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
Phone: (312) 283-1590
Facsimile: (312) 379-0467
sagrawal@masseygail.com
cwalling@masseygail.com

*Counsel for Defendant Metropolis Technologies, Inc.*

17