# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| YOUSEF ALHINDI, MATTHEW PETRONE, GREGORY ANDERSON and BRENDAN APPEL, Individually and on behalf of all others similarly situated, <br><br>         **Plaintiffs,** <br><br> v. <br><br> Metropolis Technologies Inc., A Delaware corporation, <br><br>         **Defendant.** | **Case No: 3:24-cv-00748** <br><br> **Judge William L. Campbell, Jr.** <br> **Mag. Judge Jeffrey S. Frensley** <br><br> **CLASS ACTION** <br> **DEMAND FOR JURY TRIAL** |

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Companies cannot use public driving records to contact people; it violates their privacy under the Driver's Privacy Protection Act ("DPPA"). But Defendant, Metropolis Technologies, Inc., ("Metropolis" or "Defendant") does it anyway – using state DMV records to mail debt collection letters disguised as citations for supposed "Parking Violations" at Metropolis's parking lots and ramps. And while Metropolis wants the Court to focus on whether Plaintiffs owe the debt (they don't), that is beside the point here. No provision under the DPPA allows Metropolis to use state driving records to contact Plaintiffs, and its motion to dismiss (Dkt. 79) should be denied.

Between December 2023 and May 2024, Plaintiffs started receiving Metropolis's letters. The letters surprised them because they had no relationship with the company, yet Metropolis was alerting them to "Parking Violations." Those "violations" claimed Plaintiffs had parked without paying at Metropolis lots and ramps, a claim that strains credulity when Metropolis did not gate the lots and never warned Plaintiffs they needed to pay. Even so, Metropolis expected payment for

Plaintiffs' supposed "violations," with fees on top, bringing the charges to between $70 and $125 for each Plaintiff.

This disturbed Plaintiffs, not only because the letters demanded payments, but because of *how* Metropolis contacted them: though Plaintiffs had never given Metropolis their contact information each received a letter in the mail. Investigating Metropolis' misconduct revealed the company takes pictures of vehicles that come and go from its lots and ramps, including Plaintiffs.' And then Metropolis uses their license plates to source information on them from state DMV records and mail them its debt collection demands.

The misconduct alleged falls squarely within the core prohibitions of the DPPA, which Congress enacted to prevent precisely this kind of misuse of personal data for abusive commercial purposes. While entities can use the data for *some* purposes, they cannot under any alleged here. Indeed, this case is governed by the Supreme Court's "predominant purpose" framework established in *Maracich v. Spears*, 570 U.S. 48 (2013). The predominant purpose of Metropolis's access to DMV data was not litigation, safety, or any other purpose permitted by the DPPA, but rather was the engine of a commercial profit scheme. The DPPA prohibits obtaining or using motor vehicle data for such purposes, and Plaintiffs have stated a plausible claim to relief for Defendant's flagrant violations.

## FACTUAL BACKGROUND

### A.     Metropolis's Parking Operations and Data Practices

Defendant Metropolis Technologies, Inc. (Metropolis) is a Delaware corporation that manages and operates parking lots and garages across the United States, including in Tennessee, where its headquarters are located. (Dkt. 65 at ¶¶ 34, 38.) Metropolis markets itself as an "AI-powered" parking operator and relies on a camera-based license plate recognition system to

monitor vehicles entering and exiting the parking facilities it manages. *Id.* at ¶¶ 2, 39-40. Rather than using gates, attendants, or ticket dispensers, Metropolis operates many facilities as open lots, requiring drivers to pay for parking through a mobile application or QR code. *Id.* at ¶ 4.

At these facilities, Metropolis captures images of vehicles' license plates when they enter or exit. *Id.* at ¶ 40. Metropolis then uses those license-plate numbers to obtain the registered owner's name and address from state motor-vehicle records. *Id.* at ¶¶ 5, 41. When Metropolis determines that a vehicle has exited without payment, it mails a document entitled "Notice of Parking Violation" to the registered owner's address. *Id.* at ¶¶ 6, 43. These notices include photographs of the vehicle, demand payment of a parking charge and a substantially larger "violation fine," and warn of potential consequences if the fine is not paid. *Id.* at ¶¶ 6-7, 45.

## B. Plaintiffs

Plaintiff Matthew Petrone received a "Notice of Parking Violation" mailed to his home by Metropolis in approximately May 2024. *Id.* at ¶ 17. The notice stated that a vehicle registered to him had parked at a Metropolis-managed lot in Nashville on April 8, 2024, and left without paying. *Id.* The notice claimed he was in the lot for 15 minutes and demanded payment of $76.82. *Id.* It also warned that, if he didn't pay, he could be subject to additional fees, referred to a collection agency, or his car could be booted or towed. *Id.* Mr. Petrone does not recall parking in the lot and believes he may have merely driven through it. *Id.* at ¶ 18. Mr. Petrone remembers that the lot was ungated, lacked an attendant, and provided no reasonable notice that payment was required or that Metropolis would obtain his personal information through DMV records. *Id.*

Plaintiff Gregory Anderson received a similar "Notice of Parking Violation" from Metropolis at his home address in approximately February 2024. *Id.* at ¶ 19. The notice asserted that his vehicle had parked at a Metropolis-managed facility in Nashville and left without paying.

*Id.* It included photographs of his vehicle, demanded payment of a parking charge and additional fee, and warned of possible collection activity and other consequences if payment was not made. *Id.* Like Mr. Petrone, Mr. Anderson remembers that the lot was ungated, lacked an attendant, and provided no reasonable notice that payment was required or that Metropolis would obtain his personal information through DMV records. *Id.* at ¶ 20.

Plaintiff Brendan Appel received a "Notice of Parking Violation" from Metropolis mailed to his work address, which was the address associated with his vehicle registration, in approximately February 2024. *Id.* at ¶ 21. The notice claimed that a vehicle registered to him had parked at a Metropolis-managed facility in Dallas, Texas, and left without paying. *Id*. It demanded a $10 parking charge and a $70.25 violation fine, and it included photographs of the vehicle. *Id.* Mr. Appel contacted Metropolis through its online chat system and explained that the lot was open, the gates were raised, and there was no apparent method to pay for parking. *Id.* at ¶ 23. During these communications, a Metropolis representative told Mr. Appel that his vehicle had been captured by Metropolis's cameras and state records subsequently identified him as the registered owner. *Id.* at ¶ 24.

Plaintiff Yousef Alhindi received a mailed "Notice of Parking Violation" from Metropolis in approximately December 2023. *Id*. at ¶ 30. The notice demanded payment of an unpaid parking charge and a violation fine totaling more than $125. *Id.* Mr. Alhindi initially thought the notice was issued by a governmental authority, based on how it was styled. *Id*. Mr. Alhindi remembers parking at a lot in Nashville in December 2023, but the lot had no gate or parking attendant. *Id.* at ¶¶ 28, 32. Mr. Alhindi did not know that his license-plate information would be used to obtain his home address from DMV records and was distressed upon learning that a private company had accessed and used his personal information in this manner. *Id.* at ¶¶ 31-32. None of the Plaintiffs

4

consented—expressly or impliedly—to Metropolis's access to their motor vehicle records or to Metropolis's use of their personal information for debt collection purposes. *Id.* at ¶¶ 9, 62.

## <u>LEGAL BACKGROUND</u>

This motion rests entirely on interpretation of the DPPA, a federal statute that restricts the disclosure of personal information from the records of state motor-vehicle departments without the driver's consent. *Reno v. Condon*, 528 U.S. 141, 143, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). Congress enacted this law in response to "a growing threat from stalkers and criminals who could acquire personal information from state DMVs" and "the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Maracich v. Spears*, 570 U.S. 48, 57, 133 S. Ct. 2191, 2198, 186 L. Ed. 2d 275 (2013).

The DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information . . . from a motor vehicle record" unless an exception applies. 18 U.S.C. § 2722. The statute defines "personal information" and "motor vehicle record," both of which are at issue in Metropolis's motion. *Id.* §§ 2725(1), (3).

The DPPA lists fourteen exceptions under which personal information may be released. Three of these permissible purposes are relevant here:

> (4)    For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

> (10)    For use in connection with the operation of private toll transportation facilities.

> (14)    For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

*Id.* §§ 2721(b)(4), (10), (14). Here, Plaintiffs have adequately pleaded that Metropolis violated the

5

DPPA by accessing and using their personal information from a motor-vehicle record, and none of the exceptions apply. As such, Metropolis's motion to dismiss must be denied.

## STANDARD OF REVIEW

Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer more than the mere possibility of misconduct." *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1102 (E.D. Tenn. 2024) (internal quotations omitted). Put differently, dismissal under Rule 12(b)(6) is appropriate only when the defendant establishes that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

## ARGUMENT

I. **Metropolis obtained or used Plaintiffs' information from a "motor vehicle record" as defined by the DPPA.**

A. **Plaintiffs Alhindi, Petrone, and Anderson plausibly allege the personal information Metropolis obtained about them was from a motor vehicle record.**

Metropolis's first argument ignores the pleadings, including Plaintiffs' allegations detailing how it sourced their information from DMV records—according to Metropolis's own *admission*. Metropolis does not argue it acted unknowingly or, with the exception of Plaintiff

Appel, that the information it accessed was not "personal information" as defined in the DPPA. Instead, it contends it *might* have obtained the information from a source other than a DMV – an argument that amounts to nothing more than a reasonable-doubt defense in a civil case at the pleading stage. Metropolis seems to believe that Plaintiffs were required to list in the Complaint the specific state agencies Metropolis used to match the license plates with Plaintiffs' addresses, such as the Tennessee Department of Safety and Homeland Security. But that is not what the statute requires.

The DPPA defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles" 18 U.S.C. § 2725(1). And Plaintiffs allege throughout the complaint that Metropolis obtained or disclosed information from DMV records:

- "Defendant utilizes the license plate numbers they collect from unknowing drivers to obtain personal information from their DMV records, including their name and address." (Dkt. 65 at ¶ 5.)

- "Each time a car enters and/or exits one of Defendant's parking facilities, Defendant utilizes the license plate information its cameras collect to obtain DMV records of drivers, including personal information such as their names and addresses." (*Id*. at ¶ 41.)

- "Defendant obtains the driver's address through illegally accessing their driver motor vehicle records." (*Id*. at ¶ 43.)

Metropolis argues there are "many possible sources" it could have used to access Plaintiffs' personal information, "such as an accident report created by the police," but it does not (and cannot) claim it actually used any source other than a motor-vehicle record. (*See* Dkt. 79 at 6–8.) Metropolis then back-pedals from a public statement it made to *Nashville News Channel 5* in which it admitted to this very practice: "Our system traces license plates attached to Tennessee government records." (Ex. A to MTD at 4.) "We send notices to the addresses on file associated with those license plates." *Id*. And Metropolis tries to side-step *its own admission* to Plaintiff Appel

that it obtained his information from a motor-vehicle record (Compl. ¶ 61) by making a frivolous argument about the categories of information covered by the DPPA. Defendant's mere suggestion that it *may* have obtained Plaintiffs' personal information from "another source" "Plaintiffs provided [their personal information] to" (Dkt. 79 at 6), without more, cannot defeat Plaintiffs' claims at this stage. *See, e.g.*, *Loeffler v. City of Anoka*, 2014 WL 4449674, at *35 (D. Minn. June 24, 2014) ("While discovery may reveal support for this suggestion, dismissal at this stage on such a supposition is premature.").

Moreover, the cases Metropolis cites in support of its argument are readily distinguishable. For example, Metropolis points to *Garey v. James S. Farrin, P.C.*, despite the fact that *Garey* was decided on summary judgment rather than a motion to dismiss and, more importantly, the plaintiff in *Garey* did not allege that the defendant accessed a DMV database. 35 F.4th 917, 924-927 (4th Cir. 2022). Metropolis cites to *Pavone v. Meyerkord & Meyerkord, LLC*, where the information in question was pulled from crash reports; because the plaintiffs did not adequately allege that the crash reports used information from state records, the crash reports did not fall within the DPPA definition of "motor vehicle record." 118 F. Supp. 3d 1046, 1053 (N.D. Ill. 2015) ("Although the [Crash] Report includes personal information of the Pavones and refers to—albeit redacted—Mr. Pavone's driver's license number, the Report is not 'part of,' nor is it a 'member of,' 'accessory to,' or 'product of' an Illinois DMV-issued motor vehicle operator's permit, vehicle title, vehicle registration, or ID card."). Metropolis also cites *Loeffler v. City of Anoka*, where the plaintiff sued 19 cities, eight counties, and several individuals, claiming they were all liable under the DPPA for improperly accessing her DMV records. 2014 WL 4449674. The court in *Loeffler* dismissed most of the claims because the plaintiff hadn't sufficiently alleged the information was accessed for an impermissible purpose, and the court also implied the plaintiff hadn't drawn adequate connections

between individual officers employed by each defendant and the illegal access of the plaintiff's information. *See id*. at *22.

Here, Plaintiffs detailed how Metropolis accessed DMV records. Unlike in *Loeffler*, Plaintiffs have sued only one defendant, and the Complaint draws clear connections between Metropolis and the improper access. Taking all allegations in the Complaint as true, Plaintiffs have pleaded more than enough facts for the Court to reasonably infer that Defendant obtained their personal information from a motor vehicle record. For example, Plaintiffs allege that Defendant uses an artificial-intelligence-based camera system that photographs license plates and searches DMV records for personal information on the registered owners of the vehicles. Defendant then uses that information to send deceptive citations to the registered addresses. (*See* Dkt. 65 at ¶¶ 2–6, 39–43, 60–61.) Plaintiffs allege that consumers, including themselves, are shocked to receive such misleading citations and suffer an "eerie realization that a private company somehow access their home address and vehicle information—data that, for the past half-century, only law enforcement officers have been authorized to use for issuing citations." *Id*. ¶ 3.

Defendant's factual arguments are more appropriate for a jury, or perhaps summary judgment, but they have no place at the Rule 12 stage. Plaintiffs Alhindi, Anderson, and Petrone have provided sufficient factual support at this stage of the litigation, where Defendant holds key information, to plausibly allege Defendant obtains their personal information from a motor vehicle record. *See Pavone*, 118 F. Supp. 3d at 1048 ("A plaintiff's pleading burden should be commensurate with the amount of information available to him.") (internal quotations and citations omitted).

**B.      Metropolis obtained and misused Mr. Appel's "personal information" as defined by the DPPA.**

Metropolis next argues that Plaintiff Appel – who alleges Metropolis admitted on the phone to him that it obtained his personal information from a motor-vehicle record – fails to state a claim because Metropolis accessed his business address rather than his home address. (*See* MTD at 9.) But Metropolis overlooks how the DPPA defines "personal information," which does not distinguish between residential and business addresses. Instead, it defines personal information as "information that identifies an individual" and specifically includes one's "name" and "address." 18 U.S.C. § 2725(3). By its plain language, the DPPA protects people, not locations, and the fact that Metropolis obtained and used Mr. Appel's name alone violated the statute, even if it had not used either of his addresses. Furthermore, the Seventh Circuit has explained that the definition of "personal information" in the DPPA is to be broadly construed, and the enumerated list of examples in the statute is not exhaustive. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 945 (7th Cir. 2015) (applying an "expansive reading" of the definition in a DPPA case and holding that "personal information" includes types of information not listed in the statute, like height and weight). *See also Reno v. Condon*, 528 U.S. 141, 144, 120 S. Ct. 666, 668-69 (2000) ("The DPPA defines 'personal information' as *any* information 'that identifies an individual[.]'") (emphasis added).

In this case, as in *In re Municipal Parking Servs.*, "the consolidated amended complaint alleges that Defendant obtains Plaintiffs' personal information from DMV records, discloses that information to a third-party mailing service, and uses that information to send parking tickets to Plaintiffs." *In re Municipal Parking Servs., Inc. DPPA Litig.*, 2025 WL 1475794, at *6 (N.D. Fla. Feb. 12, 2025). "Those allegations, which must be accepted as true at this stage of the case, are sufficient to attribute the DPPA violations to Defendant." *Id*. Defendant's motion must be denied.

## II. Metropolis's conduct does not satisfy any of the DPPA's enumerated exceptions for "permissible purposes."

### A. Plaintiffs are not required to allege that each specific exception is inapplicable.

Metropolis next contends that Plaintiffs' DPPA claim fails because the Complaint does not plead facts negating each of the statute's fourteen "permissible use" exceptions in § 2721(b). Metropolis argues that Plaintiffs must disprove every statutory carve-out at the pleading stage. Not so, as this mischaracterizes what Rule 8 requires. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It does not require an anticipatory rebuttal of every conceivable defense a defendant might later invoke. A plaintiff states a DPPA claim by alleging that the defendant knowingly obtained, used, or disclosed personal information from a motor-vehicle record for a purpose not permitted by the statute. Plaintiffs have done just that by pleading specific facts showing that Metropolis accessed DMV records for commercial enforcement and collection of private parking charges. This conduct falls outside the DPPA's limited exceptions. Metropolis's attempt to transform § 2721(b)'s affirmative exceptions into a fourteen-part pleading checklist is incompatible with Rule 8 and long-settled pleading principles.

Contrary to what Metropolis would have the Court believe, *Bass v. Anoka County* does not support its position. 998 F. Supp. 2d 813 (D. Minn. 2014). *Bass* involved alleged access to DMV records by government actors where the plaintiff pleaded no facts about how or why the records were used beyond a conclusory allegation that none of the permitted exceptions applied. *Id.* 821. In that context, the court declined to infer an impermissible purpose from access alone, emphasizing the presumption of regularity afforded to public officials. *See id.* This case is different. There are no public officials. Rather, Plaintiffs allege a private company knowingly obtained DMV records and used them to mail deceptive "Notices of Parking Violation," demand

payment, impose punitive fees, and threaten collections, towing, and other consequences. This is a concrete, impermissible commercial use, pleaded in detail. Plaintiffs do not ask the Court to speculate about purpose; they allege it. *Bass* therefore has no application to this case, and it does not impose the fourteen-exception pleading requirement Metropolis desires.

*Rodriguez v. Ampco Parking Systems* is likewise inapposite. Case No. C09-1789-MJP, 2010 WL 11682519 (W.D. Wash. Apr. 8, 2010). In *Rodriguez*, the defendant acquired DMV data in bulk in order to "stockpile" it, *id.* at *1, but failed to plead why that use fell outside the DPPA's permitted purposes, *id.* at *2. The court dismissed the complaint because it relied entirely on conclusory assertions that the defendants "cannot and do not have a permissible purpose . . .", while conceding that the defendants had certified a lawful use to the state licensing authority. *Id*. Here, again, Plaintiffs allege far more than mere acquisition. This is a DPPA claim grounded in concrete, uncontested access and usage of protected motor-vehicle records by Metropolis, not a speculative challenge to bulk access. Thus, *Rodriguez* does not support the heightened pleading requirement Metropolis seeks to invent here.

In short, Plaintiffs have more than satisfied Rule 8 by plausibly alleging that Metropolis knowingly obtained and used motor-vehicle records for a specific, commercial purpose that is not authorized by the DPPA. Nothing in the statute or case law requires Plaintiffs to disprove every conceivable permissible use at the pleading stage, particularly where the Complaint pleads affirmative facts showing an impermissible use. In any event, none of the particular DPPA exceptions Metropolis invokes apply to the conduct alleged here, as explained below.

**B.** **The exception in 18 U.S.C. § 2721(b)(4) does not apply: Metropolis did not obtain, use, or disclose Plaintiff's motor-vehicle information as part of an "investigation in anticipation of litigation."**

Metropolis argues that its use of Plaintiffs' motor-vehicle information is authorized under § 2721(b)(4) because the information was obtained as part of an "investigation in anticipation of litigation." (Dkt. 79 at 11.) This is a *post hoc* justification and is unsupported by the pleadings. The real purpose of Metropolis's use of motor-vehicle data is not to investigate or litigate but to solicit payment. Nevertheless, Metropolis argues it only obtained the Plaintiffs' protected motor-vehicle records "for the purpose of identifying a potential litigant, and then initiating that process by mailing those potential litigants a 'note.'" *Id.* at 11.

It would defeat the DPPA's purpose to interpret the Act the way Metropolis does, as explained in the Supreme Court's controlling decision in *Maracich v. Spears*, 570 U.S. 48 (2013). *Maracich* clarifies that an overly expansive reading of the litigation exception in § 2721(b)(4) would "undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records," *id.* 60-61, noting that the statute's exceptions must be "read … narrowly in order to preserve the primary operation" of the DPPA, *id.* at 60 (citations omitted). The court rejected any interpretation that would allow a mere tangential connection to litigation to justify access to personal information, stating that "[t]he 'in connection with' language in (b)(4) must have a limit." *Id.* at 61.

Crucially, *Maracich* established the "predominant purpose" test, which requires courts to examine the actual purpose behind the use of motor-vehicle data. *Id.* at 71-72. If the predominant purpose of the data use is solicitation or a commercial endeavor, rather than *bona fide* preparation for litigation, the use does not fall within the (b)(4) exception. *Id.* Applying this test here, it becomes clear that Metropolis's predominant purpose, as in *Maracich*, was commercial. The goal

was to solicit payments for parking, not to actually prepare for litigation. Metropolis's primary business is operating parking lots and collecting payments from customers who use their services. (Dkt. 65 at ¶ 1.) The issuance of private parking tickets, which serve as after-the-fact demands for payment, is a revenue-driven operation designed to maximize profits, not initiate legal action. (*Id.* ¶ 6-7.)[1] Similarly, Metropolis's internal dispute-resolution procedure is aimed at extracting payments and is not a genuine step towards legal proceedings.

Metropolis's reliance on the (b)(4) exception is simply a pretext to justify its commercial use of confidential motor-vehicle data, which falls squarely outside the narrow scope of the litigation exception. If Metropolis's theory were accepted, any business could access DMV records simply by threatening litigation in a form letter, a result that would eviscerate the DPPA's privacy protections. Metropolis's failure to address *Maracich*, the definitive authority on this issue, reveals the weakness of its arguments and underscores that its use of confidential motor-vehicle information violates the DPPA.

Moreover, Metropolis's assertion that its "Notice of Parking Violation" could not have been misleading because of a disclaimer is directly undercut by the findings of the Tennessee Attorney General. Following an investigation into Metropolis's parking and enforcement practices, including use of these very Notices, the Tennessee Attorney General concluded that Metropolis's documents were confusing and misleading to consumers, who reasonably believed the Notices were issued by a government authority. As a result, Metropolis entered into a court-

---

[1] In fact, Metropolis has never actually initiated litigation against any Plaintiff for their failure to pay. Indeed, Defendant emphasizes the fact that Plaintiffs have never paid the fees referenced in their "Notice of Parking Violation[s]." (Dkt. 79 at 3). Plaintiffs received these notices years prior to commencing this action, and yet, they have not been summoned to a litigation by Defendant as a result of non-payment. Presumably, Defendant knows where to locate the Davidson County Court of General Sessions and have process issued. It never did so.

enforceable Assurance of Voluntary Compliance ("AVC"), agreeing to provide refunds, revise its Notices and signage, and ensure that future communications are not styled or worded in a manner likely to confuse recipients. *See* **Ex. A** (AVC and Final Order, *In re Metropolis Technologies, Inc.*, No. 26-0028-III (Davidson County Chancery Court, Jan. 9, 2026.)) This official enforcement action directly refutes Metropolis's suggestion that the disclaimer on its Notices renders the design non-misleading as a matter of law. At minimum, whether the Notices were misleading remains a fact issue not resolvable at the pleading stage. *See Maracich*, 570 U.S. at 60–61. Nonetheless, the misleading nature of the notices are inconsequential to Plaintiffs' claims under the DPPA.

### C. The exception in 18 U.S.C. § 2721(b)(10) does not apply: Metropolis did not obtain, use, or disclose Plaintiffs' motor-vehicle information "in connection with the operation of private toll transportation facilities."

Metropolis's reliance on the "private toll transportation facilities" exception in § 2721(b)(10) rests on an expansive reading of a narrow statutory carve-out that cannot be reconciled with the text, structure, or purpose of the DPPA. As a matter of plain meaning, a "toll" refers to a charge for passage on a road, bridge, or similar transportation infrastructure; it does not include every fee imposed by a private entity connected in some way to vehicles or driving. Moreover, Congress enacted the DPPA in 1994, before the internet was widely used, and it seems likely that the drafters intended the phrase "private toll transportation facility" to refer to physical toll booths that regulate passage on toll roads, bridges, tunnels and similar facilities, and charge a fee for the act of transit itself. In common usage then, as now, a "toll" denoted payment required to pass over or through a defined transportation corridor, not a charge for parking imposed after the fact based on electronic surveillance and retrospective enforcement. Nothing in contemporaneous statutory usage or ordinary language would have led a reasonable reader to understand "private toll transportation facility" to include ungated parking lots that allow free entry and exit, impose no

charge at the point of entry or exit, and permit unrestricted passage without payment, followed days or weeks later by mailed demands styled as "violations" and accompanied by punitive fines. Reading § 2721(b)(10) to cover such conduct would divorce the phrase from its historical meaning and dramatically expand the exception beyond anything Congress plausibly intended.

Federal statutory usage confirms that, when Congress uses the term "toll," it consistently refers to passage-based transportation infrastructure, not parking facilities. Across the U.S. Code, "toll" appears exclusively in provisions governing roads, bridges, tunnels, ferries, and closely related highway facilities. *See*, *e.g.*, 23 U.S.C. § 301 (guaranteeing "freedom from tolls" on federal-aid highways); 23 U.S.C. § 129 (defining "toll facility" as "a toll highway, bridge, or tunnel or approach to the highway, bridge, or tunnel constructed under this subsection"); 23 U.S.C. § 166 (addressing tolls for high-occupancy vehicles); 23 U.S.C. § 120 (permitting toll credits for highway funding); 33 U.S.C. § 508 (regulating just and reasonable bridge tolls); 33 U.S.C. § 525 (approval of private toll bridges); 33 U.S.C. § 527 (state acquisition of toll bridges). In each instance, the toll is tied to the act of passage through a defined transportation corridor, not to parking or storage. Congress has legislated extensively in the transportation space for decades, and when it has intended to regulate parking facilities, it has done so expressly and separately. The complete absence of parking facilities from federal toll statutes is telling. Against that backdrop, Metropolis's attempt to treat an ungated parking lot as a "private toll transportation facility" is a wholesale departure from how Congress has used the term "toll" throughout federal law.[2]

---

[2] Even if Metropolis could plausibly characterize its parking facilities as "toll" facilities, § 2721(b)(10) limits the exception to conduct undertaken "in connection with the operation" of such a facility. Metropolis's alleged use of motor-vehicle data occurs only after a vehicle has exited the facility and serves no operational function at all. It is instead directed solely at revenue recovery, which is not a permissible purpose under § 2721(b).

16

If the Court were to adopt Metropolis's reading of the exception, it would create a blanket authorization for private companies to access motor-vehicle records whenever they charge money in connection with vehicle use. Under such a theory, private garages, valet services, towing operators, car washes, or any other entity that imposes a fee related to transportation could claim entitlement to personal motor-vehicle data. Nothing in the DPPA suggests Congress meant to create such a sweeping commercial exception, particularly in a statute designed to curb the very misuse of motor-vehicle data at issue here. An interpretation that would allow virtually any parking operator to mine government databases for personal information simply by labeling its charges a "toll" cannot be squared with the statute's text, structure, or purpose.

Finally, Metropolis's attempt to shoehorn its enforcement scheme into § 2721(b)(10) raises fact-intensive questions that cannot be resolved on a motion to dismiss. Whether a private entity's use of motor-vehicle data is truly "in connection with the operation of a private toll transportation facility" as opposed to after-the-fact debt collection depends on the nature, timing, and function of the use alleged. Plaintiffs have plausibly pleaded a use well outside the core of the exception. That is sufficient at the pleading stage. Metropolis's effort to expand § 2721(b)(10) into a categorical safe harbor for private parking operators should be rejected, and dismissal on this ground denied.

**D.** **The exception in 18 U.S.C. § 2721(14) does not apply: the Tennessee statutes cited by Metropolis do not "specifically authorize" it to exploit motor-vehicle records to collect its accounts receivable.**

In an attempt to reframe the basis of Plaintiffs' claims, Metropolis argues that the DPPA exception in § 2721(b)(14) applies here because, according to Metropolis, Tennessee statutes expressly permit its use of Plaintiffs' personal information. (*See* MTD at 15–16.) Metropolis points to T.C.A. § 55–31–202 and its enforcement analog under the Tennessee Consumer Protection Act, T.C.A. § 47–18–104(65), but neither statute "specifically authorizes" the use of personal

information obtained from motor-vehicle records for debt-collection purposes. Rather, the statutes merely authorize the use of license-plate readers when certain requirements are met. The statutes do not authorize anyone to access DMV records or other state records. Further, no such statute existed in Tennessee until July 2024, and all violations alleged by the named plaintiffs took place before that time. Moreover, Tenn. Code Ann. § 55–31–202, the automatic license-plate reader statute cited by Metropolis, was not enacted until May 9, 2025. A statute enacted after the conduct at issue, of course, cannot retroactively "specifically authorize" prior violations of a federal privacy statute.[3]

## III.   Plaintiffs sufficiently allege a claim for declaratory judgment.

In a two-sentence argument, Metropolis contends that Plaintiffs have not stated a claim concerning whether Metropolis's activities are unlawful, and thus Plaintiffs' declaratory judgment count should be dismissed. (*See* Dkt. 79 at 16–17.) But if the Court finds that Plaintiffs have stated a claim, then the declaratory judgment count must stand until the case is resolved and the Court determines whether declaratory relief is proper. Declaratory relief is necessary to clarify whether Metropolis may continue accessing DMV records nationwide under the same practices at issue in this case.

The AVC that Metropolis entered with the Tennessee Attorney General further supports the need for declaratory relief. Although Metropolis agreed to revise certain practices in Tennessee, the AVC does not bind or protect consumers in other states. Without a federal declaratory judgment, Metropolis remains free to resume or continue the same conduct in other jurisdictions.

---

[3] The earliest version of such a statute in Tennessee, however, became effective on July 1, 2024. TN LEGIS 1017 (2024), 2024 Tennessee Laws Pub. Ch. 1017 (S.B. 1692).

Declaratory relief would establish the federal legality of these practices under the DPPA and prevent inconsistent enforcement across jurisdictions.

**IV.      Should the Court grant Metropolis's Motion, even in part, the Complaint should not be dismissed with prejudice.**

If the Court determines Plaintiffs' allegations are deficient in any respect, then Plaintiffs respectfully request that the Court grant them leave to amend their complaint rather than dismissing it with prejudice as Metropolis requests. *See Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (recognizing the Sixth Circuit's "liberal amendment policy" based on Rule 15(a)(2)'s direction to courts to "freely give leave [to amend] when justice so requires") (quoting Fed. R. Civ. P. 15(a)(2)); *see also, e.g.*, *Azarm v. $1.00 Stores Servs., Inc.*, 2009 WL 10692014, at *1 (M.D. Tenn. Apr. 29, 2009) (granting leave to amend "consistent with the Sixth Circuit's 'liberal policy'" toward amendment and the standard under Rule 15(a)(2)).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

19

Dated: January 30, 2026

Respectfully submitted,

PARKER & CROFFORD
Mary A. Parker
TN Bar # 006016
5115 Maryland Way
Brentwood, TN 37027
(615) 244-2445 Office
(615) 255-6037 Fax
mparker@parker-crofford.com

SCOTT D. OWENS, P.A.
Scott D. Owens, Esq., FBN: 597651
(pro hac vice)
2750 N. 29TH AVE., SUITE 209A
HOLLYWOOD, FLORIDA 33020
TELEPHONE: (954) 589-0588
scott@scottdowens.com

BURSOR & FISHER P.A.
Caroline C. Donovan
1330 Ave. of the Americas
32nd Floor
New York, NY 10019
(914) 874-0710
cdonovan@bursor.com

BURSOR & FISHER P.A.
Philip Lawrence Fraietta
50 Main Street, Ste. 475
White Plains, NY 10606
(914) 874-0710
cdonovan@bursor.com

STRAUSS BORRELLI PLLC
Raina C Borrelli (pro hac vice)
(872) 263-1100
Fax: (872) 263-1109
980 N Michigan Ave.
Suite 1610
Chicago, IL 60611
raina@straussborrelli.com

/s/ J. Gerard Stranch, IV
J. Gerard Stranch , IV
John C. Roberts
STRANCH, JENNINGS & GARVEY, PLLC
Tel.: (615) 254-8801
Fax: (615) 250-3937
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
jroberts@stranchlaw.com

VARNELL & WARWICK, P.A.
Janet R. Varnell; FBN:  0071072
(pro hac vice)
Brian W. Warwick; FBN:  0605573
(pro hac vice)
Christopher J. Brochu; FBN: 1013897
(pro hac vice)
400 N Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
cbrochu@vandwlaw.com
ckoerner@vandwlaw.com

*Interim Co-Lead Class Counsel for Plaintiffs*

BRET LUSSKIN, P.A.
Bret L. Lusskin, Jr., Esq. (pro hac vice)
FBN: 28069
1025 E. Hallandale Beach Blvd., Ste 1532
Hallandale Beach, FL 33009
Tel: (954) 454-5841 / Fax: (954) 454-5844
blusskin@lusskinlaw.com

ALMEIDA LAW GROUP LLC
Matthew J. Langley (pro hac vice)
849 W. Webster Ave.
Chicago, IL 60614
(708) 529-5418
matt@almeidalawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026, a true and correct copy of the Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss was served on the party listed below via electronic notice on the CM/ECF to:

Brigid M. Carpenter
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1600 West End Ave., Suite 2000
Nashville, TN 37203
Tel: (615) 726-7341
bcarpenter@bakerdonelson.com

Melissa A. Siebert (Pro Hac Vice)
Corey Hickman (Pro Hac Vice)
Cozen O'Connor
123 N. Wacker Dr. Suite 1800
Chicago, IL 60606
Tel.: (312) 832-3100
msiebert@cozen.com
chickman@cozen.com

/s/ J. Gerard Stranch, IV
J. Gerard Stranch , IV

21