IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| YOUSEF ALHINDI, MATTHEW PETRONE, GREGORY ANDERSON, and BRENDAN APPEL, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 3:24-cv-00748 |
| v. | )<br>) Chief Judge William L. Campbell, Jr. |
| METROPOLIS TECHNOLOGIES, INC., | ) Magistrate Judge Jeffery S. Frensley<br>) |
| Defendant. | )<br>) |

**DEFENDANT METROPOLIS TECHNOLOGIES, INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
<u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Jonathan E. Nelson (TN BPR No. 028029)
**BASS, BERRY & SIMS PLC**
100 Peabody Place, Suite 1300
Memphis, Tennessee 38103
Phone: (901) 543-5900
Facsimile: (615) 742-6293
jenelson@bassberry.com

James W. Miller (TN BPR No. 040369)
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Phone: (615) 742-6200
Facsimile: (615) 742-6293
james.miller@bassberry.com

Suyash Agrawal (*pro hac vice*)
Christopher M. Walling (*pro hac vice*)
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
Phone: (312) 283-1590
Facsimile: (312) 379-0467
sagrawal@masseygail.com
cwalling@masseygail.com

*Attorneys for Defendant
Metropolis Technologies, Inc.*

# ARGUMENT AND AUTHORITIES

A. **Plaintiffs Do Not Satisfy Their Burden to Plead Facts that the DPPA's Exemptions Do Not Apply to Metropolis.**

Plaintiffs ignore *Thomas* when discussing their burden to adequately plead the third element of their DPPA cause of action: Metropolis's use must be "for a purpose not permitted." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1112 (11th Cir. 2008). "The plain meaning of the third factor is that it is only satisfied if shown that obtainment, disclosure, or use *was not for a purpose enumerated under § 2721(b)*." *Id.* (emphasis added); *see also id.* n.3 ("We note that placing the burden upon the defendant to show the third element would essentially relegate the motion to dismiss stage to something less than a speed bump in § 2724(a) actions."); *see also Lucas v. Moore*, 412 F. Supp. 3d 749, 754 (S.D. Ohio 2019) (citing *Thomas*, 525 F.3d at 1111), *aff'd*, No. 19-4010, 2021 WL 2773936 (6th Cir. Jan. 20, 2021). Plaintiffs *must* plead facts sufficient to show that there are no permissible purposes for use of their information, *including* the inapplicability of the exceptions under 18 U.S.C. § 2721(b). Here, they have not.

1. *"For use in connection with . . . investigation in anticipation of litigation" exemption (18 U.S.C. § 2721(b)(4))*

First, Plaintiffs fundamentally misread *Maracich v. Spears*, 570 U.S. 48 (2013), which only addressed "whether the solicitation of clients is a permissible purpose for obtaining personal information from a state DMV under the DPPA's (b)(4) exception." *Id.* at 56. Analyzing the DPPA's mass-solicitation exception in (b)(12) (which requires express consent of those contacted, which the defendants there did not have) the Court concluded that "communications for the predominant purpose of solicitation" does not fall within the (b)(4) exception. *Id.* at 78. Importantly, the Court specifically noted that its ruling did not "suggest that attorneys may not obtain DPPA-protected personal information for a proper investigatory purpose." *Id.* at 74.

But Plaintiffs' reading of *Maracich* here would create undue barriers that unduly cabin the DPPA's anticipation-of-litigation exemption. *Maracich* itself makes clear that its predominant purpose test expressly applies *only* to determining if a communication is for the "predominant purpose to solicit," even if "in some cases, a communication sent with DPPA-protected information may serve more than one objective," such as "to provide class notice or locate a witness." *Id.* at 72; *see also id.* at 75.

Even if *Maracich* stood for such a broad rule regarding any business transaction (although Plaintiff cites no case supporting that interpretation), it would not apply to Plaintiffs' factual allegations. *Maracich* specifies:

> Where a reasonable observer could discern that the predominant purpose of obtaining, using, or disclosing protected personal information was *to initiate or propose a business transaction with a prospective client*, (b)(4) does not exempt the solicitation.

*Id.* at 72 (emphasis added). But Plaintiffs do not allege that the purpose of Metropolis's communications was to "initiate or propose a business transaction with a prospective client," but rather Metropolis contacted Plaintiffs to attempt to resolve the *already live* payment dispute for Plaintiffs' parking. The communications were not about any new business; they were attempts to resolve disputes directly related to Plaintiffs' vehicles without filing a case.

*Maracich* explains, "'investigation in anticipation of litigation' is best understood to allow background research to determine where there is a supportable theory for a complaint, a theory sufficient to avoid sanctions for filing a frivolous lawsuit, or to locate witnesses for deposition or trial testimony." *Id.* at 63–64. Metropolis cannot incur liability for investigating Plaintiffs' failure to pay for parking; indeed, Plaintiffs may have presented facts in response to the communications (as Metropolis invites them to contact them with disputes) that would render a suit against them "frivolous." But there is no requirement that litigation be active at the time of the investigation, or

even ever filed. *Thomas*, 525 F.3d at 1115 n.5 ("[W]e do not see how pre-suit investigation can be considered per se inapplicable to the litigation clause.").

Finally, Metropolis agrees with Plaintiffs that it "knows where to locate the Davidson County Court of General Sessions and have process issued." Doc. 83 at 14 n.1. Metropolis requests this Court to take notice of two cases filed in the Davidson County Court of General Sessions *before* Plaintiffs submitted their opposition. *See Metropolis Techs. v. Johnson*, No. 26GC1151 (Davidson Cty. Ct. Gen. Sess.), attached as Exhibit 1; *Metropolis Techs. v. Lopez*, No. 26GC1152 (Davidson Cty. Ct. Gen. Sess.), attached as Exhibit 2; *see also Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion [to dismiss] into one for summary judgment."). That Metropolis has not (yet) sued Plaintiffs does not support the conclusion that its use of their personal information was not "in connection with . . . investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4).

2. *"For use in connection with the operation of private toll transportation facilities" exemption (18 U.S.C. § 2721(b)(10))*

Plaintiffs argue that the exception in § 2721(b)(10) does not apply *solely* because of the use of the word "toll." *See* Doc. 83 at 15–18. "In common usage then, as now, a 'toll' denoted payment required to pass over or through a defined transportation corridor, not a charge for parking imposed after the fact based on electronic surveillance and retrospective enforcement." *Id.* at 15. But there is no support for this narrow reading; Metropolis has already provided this Court with contemporaneous interpretation evidence that "private toll transportation facility" includes private for-pay parking facilities. *See* Doc. 79 at 12–15.

Plaintiffs' citations to the U.S. Code do not lead to the conclusion that Congress's use of "toll" necessarily denotes "roads, bridges, tunnels, ferries, and closely related highway facilities." Doc. 83 at 16. Rather, Plaintiffs' citations support *exactly* the opposite conclusion. If "toll" were

so limited, all of the language in Plaintiffs' citations would be surplusage. Congress occasionally needed to specify toll "roads, bridges, tunnels, ferries, and closely related highway facilities" because "toll" alone was not specific enough to be so limited.[1] Plaintiffs cannot show that Congress *never* intended "toll" to refer to parking charges; that position defies Congress's use of the word and common sense. *See* Doc. 79 at 13–14; *see also Chestnut Hill & Mt. Airy Bus. Men's Ass'n v. City of Phila.*, 87 Pa. D. & C. 209, 240 (C.P. Phila. Cnty. 1954) ("[The signs] are necessary and essential small instrumentalities erected on the sidewalks for the purpose of collecting tolls for parking on the streets."); *Disabled Rts. Action Comm. v. Fremont St. Experience LLC*, 44 F. App'x 100, 103 (9th Cir. 2002) ("[A]ppellants lack standing to assert ADA violations on . . . the parking attendant toll booths . . . ."); *Pryor v. Comm'r of Soc. Sec.*, 2016 WL 1171589, at *2 (E.D.N.Y. Mar. 22, 2016) ("[An agent of SSA Inspector General] personally observed Plaintiff operating a toll booth at Parking Systems."), *aff'd*, 690 F. App'x 42 (2d Cir. 2017); *Gray v. Colvin*, 2016 WL 1298677, at *1 (N.D. Ill. Apr. 4, 2016) ("Plaintiff is a former commercial union painter and parking lot toll booth operator . . . ."). Against this background—"tolls" *can* plainly refer to parking charges and Congress's use of "private toll transportation facility" in § 2721(b)(10) should be read as a decision *not* to limit the exception's application to just toll bridges, highways, or tunnels.

There is a parade of horribles in this case, but Metropolis does not create it. Plaintiffs fail to provide *any* support that charges for "valet services, towing operators, car washes, or any other

---

[1] *See, e.g.*, 23 U.S.C. § 301 ("with respect to certain toll bridges and toll tunnels"); 23 U.S.C § 129(11)(E) ("In *this subsection*, the following definitions apply: . . . . Toll facility.—The term 'toll facility' means a toll highway, bridge, or tunnel or approach to the highway, bridge, or tunnel constructed und*er this subsection.*" (emphasis added)); 23 U.S.C. § 166(c) (incorporating 23 U.S.C § 129, both part of Title 21, "Highways"); 23 U.S.C. § 120(i)(1)(A) (referencing "toll revenues that are generated and used by . . . . highways, bridges, or tunnels"); 33 U.S.C § 525(c) ("[I]t shall be unlawful to construct or commence the construction of any privately owned *highway toll bridge* . . . ." (emphasis added)); 33 U.S.C. § 527 ("After the completion of any *interstate toll bridge* . . . ." (emphasis added)).

entity that imposes a fee related to transportation could claim entitlement to personal motor-vehicle data" (Doc. 83 at 17) could ever be reasonably described as "tolls." In contrast, *many* authorities support the plain text: "tolls," without narrowing, includes parking charges. *See* Doc. 79 at 13–14; *see also supra*. But Plaintiffs' interpretation, that "private toll transportation facility[ies]" are only "roads, bridges, tunnels, ferries, and closely related highway facilities," presents this Court with the *true* Pandora's Box. That interpretation—if adopted—would disrupt an *entire* industry of parking technology companies that *all* use license plate readers (just as private toll roads, bridges, and tunnels) to ensure that vehicles pay for their parking. There is no support for Plaintiffs' conclusion that, despite the DPPA's broad text ("private toll transportation facility") and its fundamental purpose (to stop stalkers while protecting legitimate commercial uses of DMV information), Congress in 1994 intended to throttle innovation in transportation.

Finally, Plaintiffs argue that Metropolis's alleged use of their personal information is not "conduct undertaken 'in connection with the operation' of such a facility." Doc. 83 at 16 n.2. That defies logic. "For use in connection with the operation of private toll transportation facilities" means for collecting the "tolls" for those "private transportation facilities." There is no daylight between a bridge using a license plate reader to charge a toll for passage (which Plaintiffs do not dispute is excepted) and a parking facility using a license plate reader to charge for parking (for "the act of transit" in and out of the facility). *See* Doc. 83 at 15.

## CONCLUSION

Plaintiffs' Consolidated Class Complaint should be dismissed in its entirety with prejudice.[2]

---

[2] Plaintiffs' "throwaway argument in the concluding paragraph of [their] opposition brief . . . is insufficient because it is well settled in the Sixth Circuit that a 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *Valmont Indus., Inc. v. Better Meal, LLC*, 736 F. Supp. 3d 573, 581 n.4 (M.D. Tenn. 2024) (citing *La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)).

Date: February 13, 2026                                   Respectfully submitted,

                                                          */s/ Jonathan E. Nelson*

Jonathan E. Nelson (TN BPR No. 028029)     Suyash Agrawal (*pro hac vice*)
**BASS, BERRY & SIMS PLC**                 Christopher M. Walling (*pro hac vice*)
100 Peabody Place, Suite 1300              **MASSEY & GAIL LLP**
Memphis, Tennessee 38103                   50 E. Washington Street, Suite 400
Phone: (901) 543-5900                      Chicago, Illinois 60602
Facsimile: (615) 742-6293                  Phone: (312) 283-1590
jenelson@bassberry.com                     Facsimile: (312) 379-0467
                                           sagrawal@masseygail.com
James W. Miller (TN BPR No. 040369)        cwalling@masseygail.com
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Phone: (615) 742-6200                      *Counsel for Defendant*
Facsimile: (615) 742-6293                  *Metropolis Technologies, Inc.*
james.miller@bassberry.com