YOUSEF ALHINDI, MATTHEW
PETRONE, GREGORY ANDERSON,
And BRENDAN APPEL,
individually, and on behalf of
all others similarly situated,

      Plaintiffs,

v.

METROPOLIS TECHNOLOGIES INC.,
a Delaware corporation,

      Defendant.

_____/

Case No.: 3:24-cv-00748

Judge William L. Campbell, Jr.
CLASS ACTION

## PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS OR, IN THE ALTERNATIVE, TO SEVER

Plaintiffs move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendant Metropolis Technologies, Inc. (hereinafter "Metropolis")'s counterclaims as they do not belong before this Court. They attempt to reframe a federal privacy class action as a state law debt-collection dispute, and because they are permissive counterclaims that share no common nucleus of operative fact with Plaintiffs' federal claims, the Court should dismiss them for lack of supplemental jurisdiction or sever them. *See* 28 U.S.C. § 1367. Plaintiffs further move to dismiss the counterclaims to the extent they seek recovery of "Violation Fines," "penalties," or any amount exceeding the alleged unpaid parking fares. Metropolis seeks a $70.25 penalty on a $6.57 parking fare, a penalty of 10.7 to 1 ratio [ECF No. 86, ¶¶ 34, 56], and pleads no facts justifying it.

Plaintiffs do not concede the existence, validity, enforceability, conspicuousness, or conscionability of any alleged agreement with Metropolis, nor do they concede that any Plaintiff personally entered into any agreement with Metropolis. Plaintiffs further reserve all defenses regarding

contract formation, assent, agency, notice, unconscionability, and enforceability. For purposes of this motion only, Plaintiffs seek dismissal of the counterclaims insofar as Metropolis seeks contractual "penalties," "Violation Fines," or amounts exceeding the nominal parking charges allegedly incurred.

Metropolis alleges that Plaintiffs owe modest parking fares ranging from as low as $6.57, but Metropolis also seeks "Violation Fines" of $65.25 or $70.25 per person. [ECF No. 86, ¶ 56]. It describes those charges as "penalt[ies]" and asserts, without supporting facts, that each penalty represents damages from a customer "taking a spot from a paying customer." [ECF No. 86, ¶¶ 15, 25, 35, 45]. That theory fails as a matter of law. Under both Tennessee and Texas law, contractual penalties are unenforceable. Liquidated damages may be enforced only if the anticipated damages were difficult to estimate and the amount fixed was a reasonable forecast of just compensation, not a punitive surcharge. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 98–100 (Tenn. 1999); *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). Metropolis pleads no facts showing that its claimed "Violation Fines" were a reasonable estimate of anticipated loss. It pleads no facts about lot capacity, lost customers, marginal cost, administrative cost, or any methodology for calculating these charges. Instead, it seeks penalties that dwarf the underlying parking fares. Metropolis cannot recover these punitive charges through its counterclaims.

## I. BACKGROUND

Metropolis asserts three counterclaims against the named Plaintiffs: breach of contract, quantum meruit, and unjust enrichment. [ECF No. 86, ¶¶ 49, 57, 66]. For Plaintiff Alhindi, Metropolis alleges an unpaid parking fare of $60.09 and a "penalty" or "Violation Fine" of $65.25. [ECF No. 86, ¶¶ 14, 56]. For Plaintiff Appel, it alleges an unpaid parking fare of $10.00 and a penalty of $70.25. [ECF No. 86, ¶¶ 24, 56]. For Plaintiff Petrone, it alleges an unpaid parking fare of $6.57 and a penalty of $70.25. [ECF No. 86, ¶¶ 34, 56]. For Plaintiff Anderson, it alleges an unpaid parking fare of $32.78 and a penalty of $65.25. [ECF No. 86, ¶¶ 44, 56]. Metropolis's breach of contract theory is that signs

at its parking facilities formed contracts with Plaintiffs or their alleged agents. [ECF No. 86, ¶¶ 51–52]. The signs attached to the counterclaims are small, QR-code-based, and allegedly state that failure to pay may result in fines or penalties. [ECF No. 86, ¶¶ 9–10, 20–21, 30–31, 40–41]. Metropolis does not plead that Plaintiffs actually saw, read, understood, or assented to a specific penalty term before entering the facilities. Metropolis's equitable claims fare no better. It pleads quantum meruit and unjust enrichment in the alternative, alleging that Plaintiffs received the benefit of parking services and should pay for them. [ECF No. 86, ¶¶ 57–74]. But those theories support, at most, the reasonable value of the parking services provided. They do not support punitive fines.

## II. LEGAL STANDARD

To survive Rule 12(b)(6), a counterclaim must contain enough factual matter to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels, conclusions, and formulaic recitations do not suffice. *Id.* A court need not accept legal conclusions couched as factual allegations.

## III. ARGUMENT

**A.**     **Defendant's state law counterclaims are permissive, not compulsory, and should be dismissed or severed rather than allowed to distort this federal privacy class action.**

At the threshold, Defendant's counterclaims should not proceed in this Court. Plaintiffs filed a federal class action under the Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.*, challenging Metropolis's uniform practices in acquiring and using protected motor-vehicle records. Metropolis answered with small, individualized state law debt claims seeking unpaid parking fares and "Violation Fines" from each named Plaintiff. Those counterclaims attempt to reframe a federal statutory privacy case as a state law debt collection dispute. They are permissive, not compulsory, and carry no independent basis for federal jurisdiction.

A counterclaim is compulsory under Rule 13(a) only where it is logically related to the plaintiff's claim. That is, where "the issues of law and fact raised by the claims are largely the same"

and "substantially the same evidence would support or refute both claims." *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991). The Sixth Circuit has squarely held that a creditor's counterclaim to collect an underlying consumer debt is not compulsory in a federal consumer protection action. In *Maddox v. Kentucky Finance Co.*, the court held that even where a debt counterclaim arises from the same transaction "within the literal terms of Rule 13(a)," it is not logically related to the federal claim where the two "will present entirely different legal, factual, and evidentiary questions." 736 F.2d 380, 382-83 (6th Cir. 1984). Because the counterclaim was permissive and lacked an independent jurisdictional basis, the district court "had no jurisdiction to hear" it. *Id.* The Sixth Circuit reaffirmed that rule in *Bauman v. Bank of America, N.A.*, holding that a debt collection action is not a compulsory counterclaim to a federal consumer claim because the two raise "different issues of law" and the factual questions are not "largely the same," warning that a contrary rule "could systematically usurp these state law debt claims from adjudication by the state courts." 808 F.3d 1097, 1100-04 (6th Cir. 2015) (citations omitted); *accord Whigham v. Beneficial Fin. Co. of Fayetteville*, 599 F.2d 1322 (4th Cir. 1979).

This case falls squarely within *Maddox*. Plaintiffs' DPPA claims turn on whether Metropolis lawfully obtained and used protected motor vehicle records and whether its notice practices comply with federal law, questions common to the class and answered by reference to Metropolis's own uniform conduct. The counterclaims turn on something entirely different: whether each individual Plaintiff parked at a particular lot, who was driving, what a particular sign said and whether it was visible, whether and how payment was attempted, and whether a given lot was full. The claim and the counterclaims share no common nucleus of operative fact; they present "entirely different legal, factual, and evidentiary questions." *Maddox*, 736 F.2d at 382. Nothing in Plaintiffs' complaint puts the payment of any individual parking fare at issue, including the declaratory judgment claim, which is confined to the legality of Metropolis's data practices and the legitimacy of its "Notices of Parking

Violation" under the DPPA, and does not ask the Court to adjudicate whether any Plaintiff owes a fare.

Because the counterclaims are permissive and share no common nucleus of operative fact with Plaintiffs' federal claims, they fall outside the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), and Metropolis pleads no independent basis for federal jurisdiction over them. They should be dismissed on that ground alone. Alternatively, even if § 1367(a) were satisfied, the Court should decline to exercise supplemental jurisdiction under § 1367(c), or sever the counterclaims under Rule 21, because these state law debt claims would substantially predominate over the federal privacy claims and would subject every named Plaintiff to individualized mini-trials over signage, parking duration, lot congestion, and payment systems.

The Court should also consider the procedural posture. Plaintiffs bring a federal class action under the Driver's Privacy Protection Act. Metropolis has now asserted tiny debt style counterclaims against each named Plaintiff, seeking to recast the case as a dispute over unpaid parking rather than alleged misuse of motor vehicle records. Plaintiffs do not ask the Court to resolve, on this motion, whether Metropolis may pursue nominal unpaid parking fares. But they represent a different case entirely, the penalty components, in particular. They are punitive, legally defective, and strategically prejudicial. They threaten to inject individualized disputes over signage, parking duration, lot capacity, and alleged lost opportunities into a case concerning Metropolis's uniform data-access and notice practices. The Court should not permit state law debt collection claims to discourage class representatives from enforcing federal privacy rights.

**B.     The alleged "Violation Fines" are unenforceable penalties under Tennessee and Texas law.**

Metropolis's breach of contract claim should be dismissed to the extent it seeks "Violation Fines" or "penalties." Under Tennessee law, a liquidated damages provision is enforceable only if the stipulated amount is a reasonable estimate of damages that would be difficult to prove. If the provision

functions as a penalty, it is unenforceable. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 98–100 (Tenn. 1999). Texas law is the same. A liquidated damages provision is enforceable only when "the harm caused by the breach is incapable or difficult of estimation" and "the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991) (citations omitted).

Metropolis's counterclaims do not plausibly plead either requirement. They do not allege facts showing that its damages were difficult to estimate. Nor do they allege facts showing that the "Violation Fine" was a reasonable forecast of any actual loss. On the contrary, Metropolis literally calls it a "penalty," and simply declares that it "is the damages incurred" because Plaintiffs allegedly occupied a parking space that could have been used by a paying customer. [ECF No. 86, ¶¶ 15, 25, 35, 45]. Metropolis relies on identical, formulaic language for each plaintiff. That conclusory assertion is not enough; to the contrary, it is a textbook example of a legal conclusion lacking the underlying factual content *Twombly and Iqbal* require. This is a pleading deficiency under Rule 12(b)(6). Metropolis pleads no facts showing that any lot was full, that any paying customer was turned away, or that any incremental cost was incurred.

To put it simply, the law does not permit a private parking company to convert a small, disputed parking charge into a punitive, private fine by labeling it "damages." And Metropolis alleges no facts suggesting its fines are anything other than punitive. Indeed, Metropolis seeks a $70.25 penalty on a $6.57 fare from Petrone and a $70.25 penalty on a $10.00 fare from Appel [ECF No. 86, ¶¶ 24, 34, 56], while providing no facts supporting how these penalties bear *any* relationship to the marginal value of a parking space. In *Phillips*, the Texas Supreme Court voided a contract provision that imposed a multiple of actual damages that was a near-perfect parallel to the Petrone and Appel ratios of fines to parking fares (10x and 7x). 820 S.W.2d at 788. *Phillips* directly held such punitive structures unenforceable and expressly stated that whether a provision is a penalty is "a question of law for the

court." The same is true here. The "violation fines" are penalties, and this component of Metropolis's counterclaims should be dismissed.

**C.      Metropolis fails to plead assent to any specific penalty term.**

Even apart from the penalty doctrine, Metropolis fails to plead an enforceable agreement to pay the "Violation Fines." Both Tennessee and Texas require mutual assent and sufficiently definite terms to form a contract. In Tennessee, the parties must have a meeting of the minds as to essential terms. *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). In Texas, contract formation likewise requires an offer, acceptance, meeting of the minds, consent to the terms, and execution and delivery with intent to bind. *Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 635 (Tex. 2007); Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555–56 (Tex. App.—Houston [14th Dist.] 2002).*

Metropolis alleges only that signs were present and that Plaintiffs or their alleged agents parked. [ECF No. 86, ¶¶ 50–52]. But the counterclaims do not allege that Plaintiffs saw or read any term imposing a $65.25 or $70.25 "Violation Fine." They do not allege that the amount of the fine was disclosed on the signs before parking. They do not allege that the specific penalty amount was visible from a vehicle. They do not allege that Plaintiffs had a meaningful opportunity to reject the term before the alleged obligation arose. The photographs attached to Metropolis's own pleading underscore the problem. [ECF No. 86, ¶¶ 9, 20, 30, 40]. The signs are QR-code-based, small, and location-specific. Some appear to say "Pay by phone," "Scan to park," or "Enforced 24/7," while the alleged fine amounts are not clearly visible as part of any bargain. None of the photographed signs display the actual $65.25 or $70.25 figure.

The defect goes deeper than inconspicuous signage. The counterclaims do not plead any contractual term setting the amount of the alleged penalty at all. As to Plaintiffs Alhindi, Petrone, and Anderson, Metropolis alleges only that a sign "warned that failure to pay [for parking] would result in

Metropolis 'seeking a penalty.'" [ECF No. 86 ¶¶ 10, 31, 41]. The signs are not alleged to have stated any penalty amount, any formula for calculating a penalty, or any method of computation. There is no pleaded stipulated sum — no $65.25, no $70.25, no number at all — that any Plaintiff could have agreed to. Yet a liquidated-damages claim necessarily presupposes a liquidated-damages clause. Under both Tennessee and Texas law, the essential terms of an alleged agreement must be sufficiently definite to be enforced. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *T.O. Stanley Boot Co. v. Bank of El Paso, Inc.*, 847 S.W.2d 218, 221 (Tex. 1992). The stipulated sum is the essential term of any liquidated-damages provision; without it, there is nothing the parties could have agreed to and nothing for the Court to enforce. A bare warning that Metropolis might "seek a penalty" of an unspecified amount is not a contractual term but a unilateral reservation of the right to make a future demand.

The counterclaims against Plaintiff Appel fail at an even more basic level. Unlike the allegations as to the other Plaintiffs, the Appel-specific allegations do not assert that *any* sign warned Appel of a penalty at all, generic or otherwise. [ECF No. 86 ¶¶ 19-28]. There is no pleaded contractual basis, definite or indefinite, for the $70.25 charge against Appel. The breach of contract counterclaim against Appel therefore cannot survive Rule 12(b)(6) on any reading of the pleading.

Apparently recognizing that the signs themselves disclose no penalty amount, Metropolis attempts to supply one after the fact. Paragraphs 15, 25, 35, and 45 of the counterclaim allege, in identical language as to each Plaintiff, that the "penalty amount is the damages incurred to Metropolis from [Plaintiff] parking at the facility without paying, taking a spot from a paying customer." [ECF No. 86, ¶¶ 15, 25, 35, 45]. That paragraph is not a contractual term; it is Metropolis's own post-hoc legal conclusion about what its damages must be, and a conclusory one at that. It cannot cure the absence of any pleaded penalty term in the alleged agreement. And even if it could, it does not justify the amounts Metropolis seeks. By Metropolis's own theory, the "damages" sustained when a Plaintiff

occupied a spot are, at most, the parking fare a displaced customer would have paid for the same spot, and even that depends on Metropolis pleading facts showing that the lot was full and that a paying customer was in fact turned away, neither of which it has done. Metropolis's own pleading therefore caps the recoverable amount at the parking fare. It cannot support a $65.25 or $70.25 demand on top of fares as low as $6.57 and $10.00. The breach of contract counterclaims should be dismissed to the extent they seek any amount above those nominal fares.

**D.      Even Assuming Arguendo That a Limited Parking Agreement Existed, the Alleged "Violation Fine" Provisions Are Unconscionable and Unenforceable.**

Even if the Court were to assume, solely for purposes of this motion, that some limited agreement existed requiring payment of ordinary parking charges, Metropolis still fails to plausibly plead that its extraordinary "Violation Fines" are enforceable. The alleged penalty provisions are both procedurally and substantively unconscionable under Tennessee and Texas law. Under Tennessee law, unconscionability exists in contracts where the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." _Taylor v. Butler_, 142 S.W.3d 277, 285 (Tenn. 2004) (citations omitted).

Tennessee courts examine both procedural unconscionability—oppression, surprise, unequal bargaining power, and lack of meaningful choice—and substantive unconscionability, which concerns overly harsh or one-sided terms. *Id.*; *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001) (overruled in part). Texas law is materially similar. _In re Halliburton Co._, 80 S.W.3d 566, 571 (Tex. 2002) (unconscionability can be either procedural or substantive.).

Metropolis's own allegations and exhibits establish the hallmarks of procedural unconscionability. The alleged agreement is entirely adhesive. Consumers allegedly assent while operating moving vehicles and entering parking lots where they have no realistic opportunity to stop, review, negotiate, or reject the purported terms. The signs attached to the counterclaims are small,

cluttered, QR-code-based, and not reasonably readable from a vehicle entering the premises. [ECF No. 86, ¶¶ 9, 20, 30, 40]. Metropolis does not allege that Plaintiffs actually saw the purported "Violation Fine" terms, much less knowingly agreed to them.

Nor does Metropolis plausibly allege meaningful notice of the sweeping consequences it claims arise from merely driving onto its property. According to the counterclaims, consumers supposedly agree not merely to pay for parking, but also to: incur penalties many multiples greater than the underlying parking fare; face collection activity, towing, booting, and litigation threats; and become liable for quasi-governmental "violations" imposed unilaterally by a private entity. And, of course, nothing in the signs ever informs consumers that they are submitting to automated surveillance and license-plate tracking or retrieval and use of protected DMV information. Those allegations present precisely the kind of surprise, oppression, and absence of meaningful assent that support procedural unconscionability.

The alleged penalty provisions are also substantively unconscionable. Metropolis seeks "Violation Fines" of approximately $65–$70 for alleged unpaid parking charges as low as $6.57 and $10.00. [ECF No. 86, ¶ 56]. The disproportionality is facially extreme. Metropolis pleads no facts showing that these amounts bear any reasonable relationship to anticipated damages, administrative costs, or actual economic injury. Instead, the alleged terms function exactly as punitive, private fines designed to compel payment through threat and coercion. Courts routinely refuse to enforce adhesive contractual provisions imposing grossly disproportionate financial consequences untethered to actual harm. See *Taylor*, 142 S.W.3d at 286; *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348–49 (Tex. 2008). This is especially true where the provisions arise in a fast-moving consumer setting involving minimal-value transactions and no meaningful opportunity to review terms. A private parking company cannot plausibly convert a nominal parking charge into an oppressive punitive obligation through inconspicuous signage and unilateral declarations of "Violation Fines." Accordingly, even assuming

arguendo that Plaintiffs entered into some limited agreement to pay ordinary parking charges, Metropolis fails to plausibly allege that its punitive "Violation Fine" provisions are enforceable. The Court should dismiss the counterclaims to the extent they seek recovery of such penalties.

**E.      Quantum meruit cannot support punitive Violation Fines.**

Metropolis pleads quantum meruit in the alternative. [ECF No. 86, ¶¶ 57–65]. That claim should be dismissed to the extent it seeks anything beyond the reasonable value of the parking allegedly provided. Under Tennessee law, quantum meruit is an equitable remedy that permits recovery for the reasonable value of goods or services provided where no enforceable contract exists. *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). Under Texas law, quantum meruit is likewise limited to the reasonable value of services rendered and knowingly accepted. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018).

Metropolis's own pleading separates the alleged "parking fare" from the "Violation Fine." [ECF No. 86, ¶ 56]. That distinction is dispositive for quantum meruit. The service allegedly provided was parking. The reasonable value of that service is, at most, the parking fare. A punitive Violation Fine is not the reasonable value of a service rendered.

Quantum meruit is not a vehicle for recovering contractual penalties, expectation damages, or deterrent fines. Texas law is explicit that quantum meruit damages are measured by reasonable value, not contractual expectation or consequential damages. Accordingly, Count II should be dismissed to the extent it seeks Violation Fines, penalties, or any amount above the reasonable parking fare.

**F.      Unjust enrichment likewise cannot support punitive Violation Fines.**

Metropolis's unjust enrichment claim fails for the same reason. Unjust enrichment is not a free-floating right to impose punishment. It is an equitable doctrine designed to prevent a defendant from retaining a benefit unjustly. Under Tennessee law, the focus is the benefit conferred and retained under circumstances making it inequitable to retain the benefit without payment. Under Texas law, unjust

enrichment similarly requires that one party obtained a benefit from another by fraud, duress, or taking undue advantage, or that retention of the benefit would be unjust.

Here, the alleged benefit is parking. Metropolis pleads that Plaintiffs received parking services. [ECF No. 86, ¶¶ 67, 69]. The benefit retained, if any, is the value of those services. Metropolis cannot use unjust enrichment to recover a private fine untethered from the value of the alleged benefit. The counterclaims therefore fail as a matter of law to the extent Metropolis seeks "Violation Fines" under unjust enrichment.

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court dismiss Metropolis's counterclaims under Rule 12(b)(6), or in the alternative, sever them under Rule 21.

[SIGNATURES ON NEXT PAGE]

Respectfully submitted,

/s/Mary A. Parker
Mary A. Parker
TN Bar # 006016
PARKER & CROFFORD
5115 Maryland Way
Brentwood, TN 37027
(615) 244-2445 Office
(615) 255-6037 Fax
mparker@parker-crofford.com

SCOTT D. OWENS, P.A.
Scott D. Owens, Esq., FBN: 597651
(pro hac vice)
2750 N. 29TH AVE., SUITE 209A
HOLLYWOOD, FLORIDA 33020
TELEPHONE: (954) 589-0588
scott@scottdowens.com

BURSOR & FISHER P.A.
Caroline C. Donovan
1330 Ave. of the Americas
32nd Floor
New York, NY 10019
(914) 874-0710
cdonovan@bursor.com

BURSOR & FISHER P.A.
Philip Lawrence Fraietta
50 Main Street, Ste. 475
White Plains, NY 10606
(914) 874-0710
cdonovan@bursor.com

STRAUSS BORRELLI PLLC
Raina C Borrelli (pro hac vice)
(872) 263-1100
Fax: (872) 263-1109
980 N Michigan Ave.
Suite 1610
Chicago, IL 60611
raina@straussborrelli.com

J. Gerard Stranch, IV
John C. Roberts
STRANCH, JENNINGS & GARVEY, PLLC
Tel.: (615) 254-8801
Fax: (615) 250-3937
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
jroberts@stranchlaw.com

VARNELL & WARWICK, P.A.
Janet R. Varnell; FBN:  0071072
(pro hac vice)
Brian W. Warwick; FBN:  0605573
(pro hac vice)
Christopher J. Brochu; FBN: 1013897
(pro hac vice)
400 N Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
cbrochu@vandwlaw.com
ckoerner@vandwlaw.com

*Interim Co-Lead Class Counsel for Plaintiffs*

BRET LUSSKIN, P.A.
Bret L. Lusskin, Jr., Esq. (pro hac vice)
FBN: 28069
1025 E. Hallandale Beach Blvd., Ste 1532
Hallandale Beach, FL 33009
Tel: (954) 454-5841 / Fax: (954) 454-5844
blusskin@lusskinlaw.com

ALMEIDA LAW GROUP LLC
Matthew J. Langley (pro hac vice)
849 W. Webster Ave.
Chicago, IL 60614
(708) 529-5418
matt@almeidalawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2026, a true and correct copy of the Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss was served via electronic notice on the CM/ECF to all counsel of record.


/s/Mary A. Parker

33