IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| YOUSEF ALHINDI, MATTHEW PETRONE, GREGORY ANDERSON, and BRENDAN APPEL, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:24-cv-00748 |
| v. | ) ) ) | Chief Judge William L. Campbell, Jr. Magistrate Judge Jeffery S. Frensley |
| METROPOLIS TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT METROPOLIS TECHNOLOGIES, INC.'S
## OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS

Jonathan E. Nelson (TN BPR No. 028029)
**BASS, BERRY & SIMS PLC**
100 Peabody Place, Suite 1300
Memphis, Tennessee 38103
Phone: (901) 543-5900
Facsimile: (615) 742-6293
jenelson@bassberry.com

James W. Miller (TN BPR No. 040369)
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Phone: (615) 742-6200
Facsimile: (615) 742-6293
james.miller@bassberry.com

Suyash Agrawal (*pro hac vice*)
Christopher M. Walling (*pro hac vice*)
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
Phone: (312) 283-1590
Facsimile: (312) 379-0467
sagrawal@masseygail.com
cwalling@masseygail.com

*Attorneys for Defendant
Metropolis Technologies, Inc.*

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.      APPLICABLE LEGAL STANDARDS. ..................................................................... 3

II.     THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER METROPOLIS'S COMPULSORY COUNTERCLAIMS. ....................................................................... 5

        A.      Metropolis's Counterclaims Arise from a Common Nucleus of Operative Facts with Plaintiffs' Allegations and Therefore Form Part of the Same Case. ............................................................................................................ 5

        B.      This Court Should Not Decline Supplemental Jurisdiction over Metropolis's Counterclaims. ............................................................... 11

III.    METROPOLIS'S CAUSES OF ACTION ARE ADEQUATELY PLED. .......................... 14

        A.      Plaintiffs Have Not Met Their State Law Burden to Show the Violation Fines are Unenforceable as Penalties. ........................................................ 15

        B.      Metropolis Pled Facts Sufficient for Plaintiffs' Assent to the Contracts At-Issue to be Plausible. .............................................................................. 16

        C.      Plaintiffs Fail to Meet their Burden to Show that their Contracts with Metropolis are Unconscionable. .............................................................. 18

        D.      Metropolis Can Plead Equitable Relief in the Alternative. .................................. 21

CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Ammons v. Ally Fin., Inc.*,
305 F. Supp. 3d 818 (M.D. Tenn. 2018)........................................................................ 4, 5, 14

*Anderson v. Amazon.com, Inc.*,
490 F. Supp. 3d 1265 (M.D. Tenn. 2020).............................................................................. 17

*Anderson v. Amazon.com, Inc.*,
478 F. Supp. 3d 683 (M.D. Tenn. 2020)................................................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................. 3

*Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*,
892 F.2d 566 (7th Cir. 1989) ................................................................................................ 10

*Bauman v. Bank of Am., N.A.*,
808 F.3d 1097 (6th Cir. 2015) ........................................................................................ 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................. 3

*Blakely v. United States*,
276 F.3d 853 (6th Cir. 2002) .................................................................................................. 9

*BlueDane, LLC v. Bandura Cyber, Inc.*,
No. 3:20-cv-00553, 2021 WL 2869154 (M.D. Tenn. July 7, 2021).................................... 15

*Buxton v. Hartin Asset Mgmt., LLC*,
No. 1:22-cv-600, 2023 WL 4861724 (W.D. Mich. July 31, 2023) ........................................ 7

*Campos v. Tubi, Inc.*,
716 F. Supp. 3d 6233 (N.D. Ill. 2024),
*appeal dismissed*, No. 24-1368, 2024 WL 5457089 (7th Cir. Oct. 16, 2024)...................... 18

*Chambliss, Bahner & Crawford v. Luther*,
531 S.W.2d 108 (Tenn. Ct. App. 1975)................................................................................ 21

*Cicale v. Professional Parking Mgmt. Corp.*,
No. 0:24-cv-61146-CIV-SINGHAL (S.D. Fla. May 1, 2026)................................... 6, 19, 21

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997)................................................................................................................. 4

*Cooper v. MRM Inv. Co.*,
367 F.3d 493 (6th Cir. 2004) ................................................................................................ 20

Case 3:24-cv-00748    Document 88    Filed 05/28/26    Page 3 of 30 PageID #: 660

*Cowley v. Equifax Info. Servs., LLC*,
     No. 2:18-cv-02846-TLP-CGC, 2019 WL 5328717 (W.D. Tenn. Oct. 21, 2019) ................. 12

*Daye v. Crook*,
     No. 2:22-cv-02109-SHL-ATC, 2022 WL 22858892 (W.D. Tenn. Dec. 5, 2022) .................. 9

*Delfingen US-Texas, L.P. v. Valenzuela*,
     407 S.W.3d 791 (Tex. App. 2013) ..................................................................................... 19

*Doe v. HCA Health Servs. of Tenn., Inc.*,
     46 S.W.3d 191 (Tenn. 2001) ............................................................................................. 17

*Dotson v. Ally Fin. Inc.*,
     No. 2:19-cv-2274, 2019 WL 5847848 (W.D. Tenn. Nov. 7, 2019) ............................ 5, 12, 13

*Eastham v. Chesapeake Appalachia, L.L.C.*,
     754 F.3d 356 (6th Cir. 2014) ............................................................................................. 20

*Edwards v. Equitable Acceptance Corp.*,
     No. 1:14-CV-00888, 2015 WL 3607297 (N.D. Ohio June 8, 2015) ................................. 4, 12

*Emerson v. Tunnell*,
     793 S.W.2d 947 (Tex. 1990) ............................................................................................. 21

*Frankfort v. Metropolis Techs., Inc.*,
     No. 3:24-CV-02283-L, 2025 WL 2994736 (N.D. Tex. Aug. 29, 2025),
     *report and recommendation adopted as modified*, No. 3:24-CV-2283-L,
     2025 WL 2650360 (N.D. Tex. Sept. 16, 2025) ..................................................................... 16

*Franklin v. Parking Revenue Recovery Servs., Inc.*,
     832 F.3d 741 (7th Cir. 2016) ............................................................................................... 2

*Garden Ridge, L.P. v. Advance Int'l, Inc.*,
     403 S.W.3d 432 (Tex. App. 2013) ..................................................................................... 15

*Goodwin v. Summit Cnty.*,
     703 F. App'x 379 (6th Cir. 2017) ........................................................................................ 4

*Guiliano v. Cleo, Inc.*,
     995 S.W.2d 88 (Tenn. 1999) ......................................................................................... 15, 17

*Horton v. Calvary Portfolio Servs., LLC*,
     301 F.R.D. 547 (S.D. Cal. 2014) ......................................................................................... 6

*Howard v. Crim. Info. Servs., Inc.*,
     654 F.3d 887 (9th Cir. 2011) ............................................................................................... 7

*In re Online Travel Co.*,
    953 F. Supp. 2d 713 (N.D. Tex. 2013) ........................................................... 16, 17

*In re Poly-America, L.P.*,
    262 S.W.3d 337 (Tex. 2008) .............................................................................. 20

*Jenkins v. United Collection Bureau*,
    No. 3:11 CV 1191, 2011 WL 5362085 (N.D. Ohio Oct. 14, 2011),
    *report and recommendation adopted*, 2011 WL 5362073 (N.D. Ohio Nov. 1, 2011) .......... 12

*John M. Peters Const. Co. v. Marmar Corp.*,
    329 F.2d 421 (6th Cir. 1964) ............................................................................. 21

*Leedy v. Hickory Ridge, LLC*,
    663 S.W.3d 537 (Tenn. Ct. App. 2022) ................................................................ 7

*Lisboa v. City of Cleveland Heights*,
    576 F. App'x 474 (6th Cir. 2014) ........................................................................ 4

*Lucas v. Moore*,
    No. 2:18-cv-582, 2019 WL 9832007 (S.D. Ohio Mar. 21, 2019),
    *aff'd*, 2021 WL 2773936 (6th Cir. Jan. 20, 2021) ................................................. 7

*Maddox v. Kentucky Fin. Co.*,
    736 F.2d 380 (6th Cir. 1984) ....................................................................... 10, 11

*Miller v. 3G Collect, LLC*,
    302 F.R.D. 333 (E.D. Pa. 2014) ......................................................................... 6

*Moody Realty Co. v. Huestis*,
    237 S.W.3d 666 (Tenn. Ct. App. 2007) .............................................................. 16

*Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*,
    227 S.W.3d 876 (Tex. App.--Dallas 2007, no pet.) ................................................ 7

*Phillips v. Phillips*,
    820 S.W.2d 785 (Tex. 1991) ......................................................................... 15, 16

*Plant v. Blazer Fin. Servs., Inc. of Georgia*,
    598 F.2d 1357 (5th Cir. 1979) .......................................................................... 10

*Price v. Montgomery Cnty., Kentucky*,
    72 F.4th 711 (6th Cir. 2023) .............................................................................. 4

*Putrawan v. Atlas Used Cars, Inc.*,
    No. 3:20-cv-304-BJB-LLK, 2021 WL 12376902 (W.D. Ky. June 17, 2021) ........................ 9

iv

*Roberts v. Boyd Sports, LLC*,
    712 F. Supp. 3d 1062 (E.D. Tenn. 2024).................................................................... 17, 18

*Rode Oil Co., Inc. v. Lamar Advert. Co.*,
    No. W2007-02017-COA-R3-CV, 2008 WL 4367300 (Tenn. Ct. App. Sept. 18, 2008)....... 17

*Saglioccolo v. Eagle Ins. Co.*,
    112 F.3d 226 (6th Cir. 1997) ............................................................................................ 9

*Shipwash v. United Airlines, Inc.*,
    28 F. Supp. 3d 740 (E.D. Tenn. 2014)............................................................................ 20

*Slaughter v. Reg'l Acceptance Corp.*,
    No. 2:20-cv-01888, 2020 WL 7342898 (S.D. Ohio Dec. 14, 2020) ................................. 13

*Stream, LLC v. Pep Boys-Manny, Moe & Jack, Inc.*,
    No. 2:17-cv-02702-TLP-DKV, 2018 WL 5117012 (W.D. Tenn. Oct. 19, 2018)................. 21

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*,
    847 S.W.2d 218 (Tex. 1992) .......................................................................................... 17

*Tackett v. M & G Polymers, USA, LLC*,
    561 F.3d 478 (6th Cir. 2009) ............................................................................................ 3

*Taylor v. Acxiom Corp.*,
    612 F.3d 325 (5th Cir. 2010) ............................................................................................ 7

*Taylor v. Butler*,
    142 S.W.3d 277 (Tenn. 2004) ........................................................................................ 20

*Tennessee Homes v. Welch*,
    664 S.W.3d 1 (Tenn. Ct. App. 2022)............................................................................... 15

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens*, *P.A.*,
    525 F.3d 1107 (11th Cir. 2008) ........................................................................................ 7

*Tillman v. Michigan First Credit Union*,
    No. 19-12860, 2020 WL 4501744 (E.D. Mich. Aug. 5, 2020)......................................... 13

*Tirone v. Am. Lebanese Syrian Associated Charities, Inc.*,
    No. 20-cv-02807-SHM, 2021 WL 1206413 (W.D. Tenn. Mar. 30, 2021)......................... 10

*Union Leasing, Inc. v. Advantage, Inc.*,
    No. 3-12-0666, 2012 WL 5331566 (M.D. Tenn. Oct. 26, 2012) ....................................... 3

*Valencia v. Anderson Bros. Ford*,
    617 F.2d 1278 (7th Cir. 1980) ........................................................................................ 10

*Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,*
   787 S.W.2d 942 (Tex. 1990) ...................................................................................... 21

*Watkins v. Synchrony Bank*,
   No. 4:15-cv-00842, 2015 WL 5178134 (M.D. Pa. Sept. 4, 2015) ......................................... 5

*Whigham v. Beneficial Fin. Co. of Fayetteville, Inc.*,
   599 F.2d 1322 (4th Cir. 1979) .................................................................................... 10

*Wright v. Linebarger Googan Blair & Sampson, LLP*,
   782 F. Supp. 2d 593 (W.D. Tenn. 2011) ........................................................................ 21

**Statutes**

18 U.S.C. § 2721 ................................................................................................... 7, 9

18 U.S.C. § 2724 ..................................................................................................... 7

28 U.S.C. § 1367 ............................................................................................... passim

28 U.S.C. § 2724 .................................................................................................... 14

**Rules**

Fed. R. Civ. P. 13 ................................................................................................. 4, 10

**Treatises**

6 Fed. Prac. & Proc. Civ. § 1414 (3d ed.) .......................................................................... 4

13 Fed. Prac. & Proc. Juris. § 3523 (3d ed.) ....................................................................... 4

13 Fed. Prac. & Proc. Juris. § 3567 (3d ed.) ....................................................................... 4

**Other Authorities**

https://agency.illinoistollway.com/paybyplate ...................................................................... 9

https://e470.com/how-tolling-works/license-plate-toll/ ............................................................... 9

https://www.bayareafastrak.org/en/ways-to-pay/pay-invoice -or-violation-notice.shtml ............... 9

https://www.mobilityauthority.com/pay-your-toll/options/payment-program/ ............................ 9

Case 3:24-cv-00748     Document 88     Filed 05/28/26     Page 7 of 30 PageID #: 664

Defendant/Counter-Claimant Metropolis Technologies, Inc. ("Metropolis") submits this Opposition to Plaintiffs/Counter-Defendants Yousef Alhindi, Matthew Petrone, Gregory Anderson, and Brendan Appel ("Plaintiffs") Motion to Dismiss or Sever Metropolis's Counterclaims.

Plaintiffs sued Metropolis claiming that Metropolis violated the federal Drivers' Privacy Protection Act ("DPPA") by using their personal information to send them letters in the mail asking them to pay for parking that they (or their authorized agents) enjoyed at Metropolis's lots. Then, when Metropolis moved to dismiss on the basis (amongst others) that it sent the letters "in anticipation of litigation," Plaintiffs countered with a factual argument:

> The issuance of private parking tickets, which serve as after-the-fact demands for payment, is a revenue-driven operation designed to maximize profits, not initiate legal action. (Id. ¶ 6-7.)[1] Similarly, Metropolis's internal dispute-resolution procedure is aimed at extracting payments and is not a genuine step towards legal proceedings.
>
> [Footnote 1] In fact, Metropolis has never actually initiated litigation against any Plaintiff for their failure to pay.

Dkt. 83 at 14. To put it bluntly: Metropolis's counterclaims (Dkt. 86 at 33–46) *are* the litigation that Plaintiffs factually claimed would never come when opposing Metropolis's Motion to Dismiss.

Confusingly, despite arguing that Metropolis's failure to sue Plaintiffs made it liable under the DPPA, Plaintiffs now claim that Metropolis *cannot* sue them for the money they owe for their parking (the very legal connection between Metropolis and Plaintiffs that gave rise to their DPPA claims). Plaintiffs argue that this Court should dismiss the counterclaims (or sever them) for procedural reasons and substantive ones. But these arguments fail. Metropolis's claims against Plaintiffs are interwoven with their DPPA claims against Metropolis and Metropolis must bring them in this suit or risk losing its right to recovery. And Plaintiffs' merits arguments are factual in nature; as this Court has explained, Metropolis need only meet "the low bar of plausibility" at the pleading

1

stage, and the counterclaims certainly meet that bar. The Court should deny Plaintiffs' Motion to Dismiss; in the alternative, this Court should grant Metropolis leave to amend its counterclaims to add factual allegations if the Court deems additional allegations are necessary.

## BACKGROUND

Metropolis operates and manages parking garages across the country utilizing computer vision technology that gives consumers the option to pay for their parking using QR Codes without stopping and waiting at cumbersome entry and exit gates. Three of the Plaintiffs, and a daughter of the fourth Plaintiff (his authorized agent), entered Metropolis facilities and left without paying. Dkt. 65, Consolidated Complaint ("Compl.") ¶¶ 17–20, 22, 27–32. Only Plaintiff Petrone alleges that his vehicle was never parked at the Metropolis facility at issue; he "may have" just driven through it. *Id*. ¶¶ 18, 20, 22, 28–29. All four Plaintiffs thereafter received a Notice of Parking Violation in the mail at their personal or commercial addresses. *See id.* ¶ 6. Instead of paying the fines or contacting Metropolis to dispute any part of the Notice, Plaintiffs sued Metropolis, alleging that Metropolis violated the DPPA when it sent them the Notices. Dkt. 86, Metropolis Answer and Counterclaims ("Countercls.") ¶¶ 8, 11–13, 16–19, 22, 25–29, 32, 36–39, 42, 46–48.

Metropolis subsequently filed an Answer and Counterclaims to Plaintiffs initial claims alleging breach of contract and quantum meruit and unjust enrichment in the alternative for Plaintiffs' unpaid parking fare and violation fines. *See generally id*. Metropolis's theory of recovery for each Plaintiff, as pled, is this: Plaintiffs (or their authorized agents) parked at Metropolis facilities which contained signs warning parkers that the facility was not offering free parking and warning parkers of the possibility of fines or penalties if they failed to pay for parking. *See id*. at ¶¶ 8–10 (Alhindi), 19–21 (Appel), 29–31 (Petrone), 39–41 (Anderson). These signs formed contracts that the Plaintiffs agreed to when they (or their authorized agent) parked at the facility. *Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744 (7th Cir. 2016) (holding that when

2

plaintiffs parked in a private lot, "a contract was formed obligating [the plaintiffs] to pay the stated price or pay a higher price if they left the parking lot without paying."). No Plaintiff paid for his (or his agent's) parking. *See* Countercls. ¶¶ 11 (Alhindi), 22 (Appel), 32 (Petrone), 42 (Anderson). Therefore, Plaintiffs owe Metropolis under the agreements entered into when they parked their cars; in the alternative, Plaintiffs equitably owe Metropolis for the value of their parking.

Only Plaintiff Appel attempted to contact Metropolis regarding the payment;[1] the other Plaintiffs simply sued Metropolis instead of even attempting to pay for their parking.

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARDS.

Metropolis need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the pleading stage, factual allegations are accepted as true and are construed in the light most favorable to the nonmoving party. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009); *see also Union Leasing, Inc. v. Advantage, Inc.*, No. 3-12-0666, 2012 WL 5331566 (M.D. Tenn. Oct. 26, 2012) (denying dismissal of unjust enrichment and liability for acts of agent counterclaims). Therefore, as this Court previously held, "[a]ccepting [a party's] factual allegations as true and drawing all reasonable inferences in [its] favor, as the Court must at the pleading stage, the [pleading] includes enough facts to clear the low bar of plausibility." Dkt. 85, Motion to Dismiss Order (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell*, 550 U.S. at 570).

This Court has subject matter jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

---

[1] At this time, Metropolis does not know what Plaintiff Appel and the Metropolis representative discussed during this conversation; that will be a subject for discovery in both Plaintiffs' claims and in Metropolis's counterclaims.

under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (supplemental jurisdiction defined).[2] "The invocation of supplemental jurisdiction over compulsory counterclaims is particularly useful when jurisdiction over plaintiff's claim is based on a federal question and there is no diversity of citizenship between the parties . . . . [or] when the counterclaim fails to meet the necessary jurisdictional amount." 6 Fed. Prac. & Proc. Civ. § 1414 (3d ed.) (also discussing history of § 1367 and its interaction with Fed. R. Civ. Proc. 13(a)). Counterclaims are compulsory if they "share a 'common nucleus of operative fact' with" claims in the case that this Court has original jurisdiction over (namely, Plaintiffs' DPPA claims). *Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 718 (6th Cir. 2023) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)).[3] Although Plaintiffs rely on some cases to the contrary, "[I]n this Circuit the Court's analysis no longer turns upon the identification of counterclaims as 'compulsory' or 'permissive.'" *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 821 n.1 (M.D. Tenn. 2018) (citing *Edwards v. Equitable Acceptance Corp.*, No. 1:14-CV-00888, 2015 WL 3607297, at *4 (N.D. Ohio June 8, 2015)).

This Court has the discretion to decline to exercise supplemental jurisdiction only if (as relevant here): "(1) the claim raises a novel or complex issue of State law, (2) the claim

---

[2] Congress abolished a then-growing distinction between pendent jurisdiction (over claims brought by plaintiffs) and ancillary jurisdiction (over claims by defendants or third parties) by passing § 310 of the Judicial Improvements Act of 1990, codified at 28 U.S.C. § 1367. *See* 13 Fed. Prac. & Proc. Juris. § 3523 (Terminology and Historical Development) (3d ed.); 13 Fed. Prac. & Proc. Juris. § 3567 (3d ed.).

[3] The Sixth Circuit has also described this test as whether the claims are "logically related." *See Goodwin v. Summit Cnty.*, 703 F. App'x 379, 386 (6th Cir. 2017) ("[T]wo sets of claims arise out of the same transaction or occurrence if they share 'a common nucleus of operative facts, or if, in the language of everyday people, they are logically related.'") (quoting *Lisboa v. City of Cleveland Heights*, 576 F. App'x 474, 476 (6th Cir. 2014)).

substantially predominates over the claim or claims over which the district court has original jurisdiction . . . or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

## II. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER METROPOLIS'S COMPULSORY COUNTERCLAIMS.

Metropolis's counterclaims arise from a common nucleus of operative fact and are logically related to Plaintiffs' claims, as they revolve around the same events that Plaintiffs cite in support of their DPPA claim and the facts at issue overlap with the facts Plaintiffs must argue to overcome their burden to show specific DPPA exemptions do not apply. And the court need not decline supplemental jurisdiction for fear that state law claims are novel or complex, nor will predominate over the federal claims: the evidence that Plaintiffs and Metropolis must rely on to satisfy each of their *prima facie* theories of recovery overlaps.

### A. Metropolis's Counterclaims Arise from a Common Nucleus of Operative Facts with Plaintiffs' Allegations and Therefore Form Part of the Same Case.

Metropolis's counterclaims are "part of the same case" as Plaintiffs' under § 1367 because they rely on a common nucleus of operative fact with the Plaintiffs' DPPA claims; therefore, this Court has supplemental jurisdiction over them. A court's determination of whether it has supplemental jurisdiction over counterclaims is case and fact-specific: courts can come out differently in similar cases because of that case-by-case inquiry. *Compare Ammons*, 305 F. Supp. 3d at 823 (no supplemental jurisdiction over state law counterclaim in Telephone Consumer Protection Act ("TCPA") action); *Watkins v. Synchrony Bank*, No. 4:15-cv-00842, 2015 WL 5178134, at *5 (M.D. Pa. Sept. 4, 2015) (same) *with Dotson v. Ally Fin. Inc.*, No. 2:19-cv-2274, 2019 WL 5847848, at *6 (W.D. Tenn. Nov. 7, 2019) (holding that the court had supplemental jurisdiction over breach of contract counterclaim in TCPA action, but declining to exercise it); *Horton v. Calvary Portfolio*

*Servs., LLC*, 301 F.R.D. 547, 551 (S.D. Cal. 2014) (holding that the court has supplemental jurisdiction over breach of contract counterclaim in TCPA case and exercising that jurisdiction); *Miller v. 3G Collect, LLC*, 302 F.R.D. 333, 338 (E.D. Pa. 2014) (same).

Analyzing the facts the Metropolis and Plaintiffs plead here, Plaintiffs cannot dispute that both their claims and Metropolis's counterclaims rely on the same events: Plaintiffs using Metropolis facilities and leaving without paying and Metropolis's subsequent mailing in an attempt to resolve its dispute with Plaintiffs. *Compare* Compl. ¶¶ 17–22, 28–29 *with* Countercls. ¶¶ 8–48. Plaintiffs all allege that they (or the person driving their vehicle) (i) saw no warning they would need to pay a fee for parking, (ii) there was no gate or ticket that indicated a payment was necessary, and (iii) no facts support a lawful reason for Metropolis to use Plaintiffs' personal information to send them a letter to ask that they pay for their parking. *Id*. ¶¶ 18, 20, 22, 32, 84, 85. Metropolis's breach of contract counterclaim relies on the (i) signs at the parking facilities stating that Plaintiffs needed to pay for their parking, (ii) which contained QR codes to allow them to pay for parking, and (iii) Metropolis's letter was a valid attempt to investigate or otherwise resolve its pending breach of contract claims against Plaintiffs due to their failure to pay for parking. *See* Countercls. ¶¶ 9–10, 20–21, 30–31, 40–41.

Plaintiffs cannot factually divorce their initial decision not to pay for parking (which caused Metropolis to send them a letter) from their claims that Metropolis violated the DPPA. As another court has found, "the Court doesn't even get to the DMV record lookup—the alleged DPPA violation—until Plaintiff here, and ostensibly each of the class members, have used Defendant's property and failed to pay for that use." *Cicale v. Professional Parking Mgmt. Corp.* No. 0:24-cv-61146-CIV-SINGHAL, Dkt. 73 at 3 (S.D. Fla. May 1, 2026) (order granting motion to dismiss).[4]

---

[4] In accordance with Local Rule 7.03(b)(5), a copy of the *Cicale* order is attached at **<u>Exhibit 1</u>**.

6

At issue in Metropolis's counterclaim is the same conduct Plaintiffs pled that led to the alleged DPPA violation: Plaintiffs using Metropolis parking facilities and refusing to pay for that service.

Legally, this Court can also compare the elements of Plaintiffs and Metropolis's legal theories to see that the third element of Plaintiffs' DPPA claim overlaps with Metropolis's counterclaims. Under the DPPA it is Plaintiffs' burden to show Metropolis (1) knowingly obtained their personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted by the statute. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens*, *P.A.*, 525 F.3d 1107, 1111–14 (11th Cir. 2008).[5] That third element encompasses three relevant purposes (which Plaintiffs must prove do not apply here): Whether Metropolis's use of that information was (a) part of an "investigation in anticipation of litigation" (18 U.S.C. § 2721(b)(4)), (b) "in connection with the operation of private toll transportation facilities" (18 U.S.C. § 2721(b)(10)), or (c) permitted by state law (18 U.S.C. § 2721(b)(14)). To prove its own state law breach claims, Metropolis must prove (1) existence of a valid contract; (2) performance by Metropolis; (3) breach by Plaintiffs; and (4) damages sustained by Metropolis as a result of that breach. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.--Dallas 2007, no pet.); *see also Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 548 (Tenn. Ct. App. 2022) ("The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2)

---

[5] Plaintiffs' characterization of the last element as a "defense" (*see* Dkt. 83 at 11) is flat wrong. When creating the DPPA cause of action, Congress required that plaintiffs prove that a defendant's use of their personal information was "for a purpose not permitted under this chapter." *Thomas*, 525 F.3d at 1111 (quoting 18 U.S.C. § 2724(a)). A defendant's lack of permissible use is a *prima facie* element of a DPPA claim that a plaintiff must prove. *See id.*; *see also, e.g.*, *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010); *Howard v. Crim. Info. Servs., Inc.*, 654 F.3d 887, 891 (9th Cir. 2011); *Lucas v. Moore*, No. 2:18-cv-582, 2019 WL 9832007, at *2 (S.D. Ohio Mar. 21, 2019), *aff'd*, 2021 WL 2773936 (6th Cir. Jan. 20, 2021); *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *8 (W.D. Mich. July 31, 2023).

nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.") (internal quotations omitted).

For Plaintiffs to prove that Metropolis did not use their information for a permitted purpose, they must prove that Metropolis's use of their information was not actually in anticipation of a real legal claim. Metropolis, in turn, will need to prove that it can recover from the Plaintiffs under *that very claim*: Plaintiffs again admitted as much when they argued in opposition to Metropolis's Motion to Dismiss that there was a factual issue as to whether Metropolis's anticipation-of-litigation purpose was a "*post hoc* justification." Dkt. 83 at 13. Metropolis will prove that it has real, valid state law claims against Plaintiffs, countering their argument.[6]

Additionally, whether Metropolis has valid legal claims to payment against Plaintiffs is tetherd to what Plaintiffs must prove to show that Metropolis is not operating "private toll transportation facilities" under the DPPA.[7] As Plaintiffs explained previously, there is a factual dispute over whether Metropolis's "use of motor-vehicle data is truly 'in connection with the operation of a private toll transportation facility' as opposed to after-the-fact debt collection[, which] depends on the nature, timing, and function of the use alleged." Dkt 83 at 17. The "nature, timing, and function" of Metropolis's use of Plaintiffs' personal information is on all fours with Metropolis's legal claims: just as other toll transportation facilities, Metropolis allegedly used Plaintiffs' license plates to send them a bill in the mail (which forms the basis of its breach of contract claim). One need not be an expert in transportation to have familiarity with similar license plate toll systems.[8]

---

[6] Indeed, if this Court dismisses or severs Metropolis's counterclaims, there is a real risk of a trial within a trial where the parties dispute whether Metropolis had valid claims against Plaintiffs without the ability to resolve Metropolis's claims directly.

[7] As this Court held, whether Metropolis fits under this permitted use is a dispute of fact. *See* Dkt. 85.

[8] At least Texas, Illinois, California, and Colorado have toll roads which allow users to "pay by plate," wherein they receive a bill in the mail based on a license plate photo taken on the toll road.

Finally, Plaintiffs will need to prove that Metropolis's actions are not permitted by state law. *See* 18 U.S.C. § 2721(b)(14). The legal validity of Metropolis's state law counterclaims overlaps with Plaintiffs' argument that Metropolis's actions were not permitted by state law. If Metropolis were foreclosed from bringing its counterclaims here, Plaintiffs' argument that Metropolis lacked a state law basis for using their personal information may become a collateral attack on Metropolis's state law right to recover money from them. That risk of overlapping judgments or collateral consequences shows how interwoven Plaintiffs' claims are with Metropolis's counterclaims.

Plaintiffs' Motion suffers from a few legal issues. First, Plaintiffs misunderstand the standard for whether a court can exercise supplemental jurisdiction over Metropolis's counterclaims (but this confusion is justified given some conflicting precedent in the Sixth Circuit). "[T]he test [] does not depend on Fed. R. Civ. P. 13's distinction between compulsory and permissive counterclaims." *Daye v. Crook*, No. 2:22-cv-02109-SHL-ATC, 2022 WL 22858892, at *2 n.4 (W.D. Tenn. Dec. 5, 2022) (citing *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002)). Under § 1367 the "relevant question" became whether counterclaims "derive from a common nucleus of operative facts or 'the same transaction or occurrence.'" *Putrawan v. Atlas Used Cars, Inc.*, No. 3:20-cv-304-BJB-LLK, 2021 WL 12376902, at *3 n.1 (W.D. Ky. June 17, 2021) (citing *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 232 (6th Cir. 1997) (ruling counterclaims stemming from a repossessed car in payment of consumer debt were from a common nucleus of operative facts but dismissing counterclaims on statute of limitation grounds). Section 1367 is "broader and more

---

*See, e.g.,* https://www.mobilityauthority.com/pay-your-toll/options/payment-program/ (Texas); https://agency.illinoistollway.com/paybyplate (Illinois); https://www.bayareafastrak.org/en/ways-to-pay/pay-invoice-or-violation-notice.shtml (California); https://e470.com/how-tolling-works/license-plate-toll/ (Colorado).

encompassing" than the Rule 13(a) standard. *Tirone v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 20-cv-02807-SHM, 2021 WL 1206413, at \*4 (W.D. Tenn. Mar. 30, 2021) (distinguishing *Maddox v. Kentucky Fin. Co., Inc.*, 736 F.2d 380, 382 (6th Cir. 1984)).

In addition to analyzing a different question (whether Metropolis's counterclaims are permissive or compulsory, not whether this Court has supplemental jurisdiction over them), Plaintiffs' cases are easily distinguishable on the substantive law and alleged facts. In *Maddox v. Kentucky Finance Co.* (decided before Congress passed § 1367), the Sixth Circuit held that there was no "logical relat[ionship]" between a plaintiff's Truth in Lending Act ("TILA") claims and a defendant's common law debt counterclaim. 736 F.2d at 383. Key to this analysis was the court's conclusion that a "TILA claim does not involve the obligations created by the underlying contract," and instead is related to "a federal policy regarding disclosure." *Id.* at 382.[9] Plaintiffs think *Maddox* declares a broad rule, but as explained above, there is not much this Court can gather from other cases beyond the applicable legal standard. Metropolis agrees that a TILA claim may not overlap with a debt claim, but that conclusion does not say anything about whether Plaintiffs' DPPA claim here overlaps with Metropolis's claims against them for failing to pay for parking.

*Bauman v. Bank of Am., N.A.*, 808 F.3d 1097 (6th Cir. 2015), is also irrelevant here. In that case, two consumers brought a Fair Debt Collection Practices Act ("FDCPA") case against their mortgage lender, claiming that it falsely represented to a court in a separate foreclosure action that

---

[9] *Maddox* relies on *Whigham v. Beneficial Fin. Co. of Fayetteville, Inc.*, 599 F.2d 1322 (4th Cir. 1979) and *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278 (7th Cir. 1980), other TILA cases which came to similar conclusions, but also notes that the Fifth Circuit came to the opposite conclusion in *Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1366 (5th Cir. 1979); *see also Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989) (court calling into question the outcome in *Valencia*). Again, *Maddox's* application here is questionable, as the Western District recently explained, because it was analyzing the application of supplemental jurisdiction under a different standard. *See Tirone*, 2021 WL 1206413, at \*3.

10

Case 3:24-cv-00748     Document 88     Filed 05/28/26     Page 17 of 30 PageID #: 674

it held the consumer's mortgage note (and also made a false representation regarding "the availability of a loan modification." *Id.* at 1099–1100. The court ruled in favor of the defendants in the FDCPA action, holding that the plaintiffs failed to show that the defendants were debt collectors bound by the FDCPA. *Id.* at 1100. The lender did not assert counterclaims in the FDCPA case, and the plaintiffs creatively filed a quiet title action, claiming that the lender was now barred by *res judicata* "from bringing a future foreclosure action." *Id.*

Unsurprisingly, the *Bauman* court did not allow the plaintiffs to succeed in their creative gambit to free their home title from their mortgage. Again, although the *Bauman* court cited *Maddox*, its analysis is bound up with the particular facts and law of the case. The *Bauman* court held that the legal issues were different in that case because it was legally irrelevant for those particular plaintiffs' FDCPA theory as to whether they had defaulted on their loan. *Id.* at 1102. "Indeed, *the Baumans'* FDCPA claim does not contest their debt obligation, but rather focuses on who attempted to collect the debt and the manner in which they attempted to do so." *Id.* (emphasis added). The *Bauman* court's analysis is inapplicable here, where Plaintiffs must prove that Metropolis lacked a permissible purpose for the use of their information, and Metropolis's use of that information is the basis of its counterclaims. Again, that a court lacks supplemental jurisdiction over counterclaims in different factual and legal circumstances is not relevant to Metropolis's particular counterclaims here.

**B.      This Court Should Not Decline Supplemental Jurisdiction over Metropolis's Counterclaims.**

As stated above, because Plaintiffs' claims remain live, Section 1367(c) allows this Court to decline to exercise supplemental jurisdiction over Metropolis's counterclaims only if: (1) the counterclaims raise a novel or complex issue of State law, (2) the claim substantially predominates

11

over Plaintiffs' DPPA claim or (3) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." None of these justifications applies here.

First, Plaintiffs do not argue that Metropolis's counterclaims raise novel or complex issues, and rightly so. Metropolis's claims are standard contract and quasi-contract equitable claims that this court (and other federal courts) regularly decide under their diversity jurisdiction. This Court will not be breaking new legal ground in deciding Metropolis's counterclaims. Therefore, that factor is no reason to decline jurisdiction here.

As to the second factor, "[a]lthough there appears to be no definitive test to determine whether state law predominates over federal claims, courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether the state-law claims involve proof that is not needed to establish the federal law claims." *Dotson*, 2019 WL 5847848, at *6 (internal citations omitted). In this Circuit, district courts often exercise supplemental jurisdiction over contract-like state law counterclaims when the initial claims stem from federal consumer protection statutes. *See, e.g.*, *Cowley v. Equifax Info. Servs., LLC*, No. 2:18-cv-02846-TLP-CGC, 2019 WL 5328717, at *3 (W.D. Tenn. Oct. 21, 2019) (finding breach of contract counterclaim did not predominate over Fair Credit Reporting Act ("FCRA") claims because "the Court d[id] not see how a simple breach of contract claim for collection of a debt could substantially predominate over Plaintiff's FCRA claim"); *Edwards v. Equitable Acceptance Corp.*, No. 1:14-CV-00888, 2015 WL 3607297, at *4 (N.D. Ohio June 8, 2015) (finding breach of contract and unjust enrichment counterclaims did not predominate over federal TCPA claims); *Jenkins v. United Collection Bureau*, No. 3:11 CV 1191, 2011 WL 5362085, at *3 (N.D. Ohio Oct. 14, 2011), *report and recommendation adopted*, 2011 WL 5362073 (N.D. Ohio Nov. 1, 2011) (finding a breach of contract counterclaim did not predominate over TCPA and FDCPA claims).

When district courts choose to decline supplemental jurisdiction because the state law claims "predominate," they cite concern over the scope of evidence needed to prove up initial claims versus counterclaims. *See, e.g., Dotson*, 2019 WL 5847848, at *7 (declining counterclaim jurisdiction because the scope of evidence necessary for a TCPA violation would focus on the format and number of calls, not on the breach of contract to pay back a line of credit); *Slaughter v. Reg'l Acceptance Corp.*, No. 2:20-cv-01888, 2020 WL 7342898, at *6–7 (S.D. Ohio Dec. 14, 2020) (same); *Tillman v. Michigan First Credit Union*, No. 19-12860, 2020 WL 4501744, at *4 (E.D. Mich. Aug. 5, 2020) (holding defenses to the Fair Credit Reporting Act had "little to do with" the initial claims of investigation and fair reporting into Plaintiff's debt and therefore declining supplemental jurisdiction of breach of contract counterclaim).

And though Plaintiffs try to create distinct issues of fact distinct from their Complaint, it's clear the scope of evidence for Metropolis's counterclaims directly overlay Plaintiffs' claims. This Court should credit Plaintiffs' arguments in opposing Metropolis's Motion to Dismiss, made before Metropolis asserted its counterclaims, when they argued that it was a disputed fact as to whether Metropolis was going to litigate its claims against them. *See* Dkt. 83 at 13–14. Now, Plaintiffs argue the distinct evidence required for Metropolis's counterclaims include "whether each individual Plaintiff parked at a particular lot, who was driving, what a particular sign said and whether it was visible, whether and how payment was attempted, and whether a given lot was full." Dkt. 87 at 4. But Plaintiffs' own Complaint *already* pleads whether each individual parked, who was driving, Plaintiffs' awareness of the parking signs, and facts about payment in support of their allegations. Compl. ¶¶ 18, 20, 22, 28–29, 32. And again, Plaintiffs need to argue the inapplicability of multiple exceptions, the proofs of which overlap with Metropolis's counterclaims. *See supra*, Section II(A).

Finally, no exceptional circumstances exist justifying this Court's declination of supplemental jurisdiction. Plaintiffs' Motion argues that allowing Metropolis's claims here could "discourage" plaintiffs from enforcing their privacy rights and are inappropriate given the case's "procedural posture." Dkt. 87 at 5. But this argument doesn't hold up to any scrutiny. In other cases, courts have held that allowing a counterclaim would put "fear" into plaintiffs and disincentivize them from bringing consumer protection claims. *See, e.g., Ammons*, 305 F. Supp. 3d 818, 824 (M.D. Tenn. 2018). But that doesn't apply here because Plaintiffs here have nothing to fear. If they prevail on their claims, they are entitled to "actual damages, but not less than liquidated damages in the amount of $2,500," in addition to punitive damages and attorneys fees. *See* 28 U.S.C. § 2724(b). In other words, if Plaintiffs' theory of liability is meritorious, they stand to receive more than even compensatory remuneration. Why would any Plaintiff fear owing Metropolis, at most, approximately $120 in a breach of contract action when they stand to gain more than *twenty times* that in their own suit (before considering any class representative compensation)?

None of the possible reasons for declining supplemental jurisdiction under § 1367(c) are met here; therefore, this Court should exercise supplemental jurisdiction over Metropolis's counterclaims.

III.    **METROPOLIS'S CAUSES OF ACTION ARE ADEQUATELY PLED.**

Plaintiffs do not move to dismiss Metropolis's claims for unpaid parking fares. *See* Dkt,. 87 at 5–6. Because this Court has supplemental jurisdiction over Metropolis's claims, Plaintiffs only remaining dispute is whether Metropolis has pled enough to show that it can recover the Violation Fine or any additional amounts beyond the parking fares. Plaintiffs are wrong; Metropolis's claims to amounts in addition to the parking fares are adequately pled.

**A.** **Plaintiffs Have Not Met Their State Law Burden to Show the Violation Fines are Unenforceable as Penalties.**

It is a question of law whether a damages provision constitutes liquidated damages or a penalty regardless of the language either party uses. *Tennessee Homes v. Welch*, 664 S.W.3d 1, 12 (Tenn. Ct. App. 2022); *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 437–38 (Tex. App. 2013). Both Texas and Tennessee courts are clear that the burden of demonstrating damages are unenforceable penalties lies with the objecting party. *Id.* ("The party asserting that a liquidated-damages clause is a penalty provision bears the burden of pleading and proof."); *BlueDane, LLC v. Bandura Cyber, Inc.*, No. 3:20-cv-00553, 2021 WL 2869154, at *3 (M.D. Tenn. July 7, 2021) (the party opposing a contract clause bears the burden of establishing its invalidity, unenforceability, or other reason it should not be applied). Plaintiffs have not met their burden.

Liquidated damages are agreed upon prior to any breach as a reasonable estimate of potential damages "where damages are likely to be uncertain and not easily proven." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 97 (Tenn. 1999); *see also Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991) (holding liquidated damages in Texas are difficult to estimate and a reasonable forecast of compensation). The contractual provision is not required to identify a specific dollar amount or explicitly identify itself as a liquidated damages provision. *Guiliano*, 995 S.W.2d at 97. The court "must focus on the intentions of the parties based upon the language in the contract and the circumstances that existed at the time of contract formation," and not on post-breach information. *Id.* at 100; *see also Garden Ridge*, 403 S.W.3d at 438. Tennessee courts balance the freedom of parties to contract versus limitations set by public policy. *Guiliano*, 995 S.W.2d at 100.

Plaintiffs brazenly assert "the law does not permit" Metropolis's violation fines. Dkt. 87 at 6. But one court has already found Metropolis's violation fines to be legally enforceable (even though the exact amounts of the fines are not on Metropolis's signage). *Frankfort v. Metropolis*

*Techs., Inc.*, No. 3:24-CV-02283-L, 2025 WL 2994736, at *11 (N.D. Tex. Aug. 29, 2025), *report and recommendation adopted as modified*, No. 3:24-CV-2283-L, 2025 WL 2650360 (N.D. Tex. Sept. 16, 2025). The only case Plaintiffs find to support their argument applies to a completely different situation in which a penalty clause is calculated based on multiples of the actual damages that a party incurs: in other words, it was expressly punitive. *Phillips*, 820 S.W.2d 785. *Phillips* did not permit the multiplier provision because it flew in the face of what liquidated damages are meant to do; namely by situating liquidated damages based on a multiplier of damages after a breach, the damages cannot be said to be difficult to quantify or done prior to any breach. *Id*. at 789.

Estimating damages for scofflaw parkers is difficult, as the cost of parking is not the only loss presented by nonpayment; that is why Metropolis warns parkers that they risk incurring additional fees if they fail to pay for their parking. As Metropolis pled, the Violation Fine amounts in the Notices reflect the damages Metropolis incurred because of Plaintiffs' (and others like them) refusal to pay for their parking. *See* Countercls. ¶¶ 15, 25, 35, 45.

**B.      Metropolis Pled Facts Sufficient for Plaintiffs' Assent to the Contracts At-Issue to be Plausible.**

Contracts, like the ones here which all warn of possible fines,[10] are formed when a reasonable onlooker would conclude both parties intended to be bound based on their outward manifestations. *Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 676 (Tenn. Ct. App. 2007); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013) (necessitating "offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and

---

[10] Plaintiff Appel's agent parked his vehicle at a facility that warned her that Metropolis "enforced 24/7"; this constituted a warning of potential fines if consumers did not pay for their parking. Countercls. ¶ 20.

consideration"). "Unless the other party has reason to know of it, contract law does not typically credit a claim that, in spite of a party's objective manifestations of assent, it subjectively did not intend to be bound." *Rode Oil Co., Inc. v. Lamar Advert. Co.*, No. W2007-02017-COA-R3-CV, 2008 WL 4367300, at *9 (Tenn. Ct. App. Sept. 18, 2008). In other words, "[a]cting in a manner that indicates acceptance of a contract is generally deemed to be acceptance." *Id.* And the contracts are not required to identify a specific dollar amount, even if it pertains to a liquidated damages provision. *Guiliano*, 995 S.W.2d at 97; *see also supra*, Section II(A). And despite Plaintiffs' claims that both *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191 (Tenn. 2001) and *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992) show courts require specific amounts in the contract for liquidated damages, they fatally omit that both cases are decided at a higher standard (*Doe* at a summary judgment standard and *T.O. Stanley Boot* at trial) and neither pertain to liquidated damages provisions.

In modern day consumer contexts, consumers demonstrate their assent by accepting the business's services. *See, e.g., Roberts v. Boyd Sports, LLC*, 712 F. Supp. 3d 1062, 1067 (E.D. Tenn. 2024) (holding consumers accepted conditions from baseball team when purchasing tickets and attending the game); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1274 (M.D. Tenn. 2020) (holding consumers assented to retailer's terms and conditions when buying seatbelt extenders online because the terms were prominently displayed on the website before purchase); *In re Online Travel Co.*, 953 F. Supp. 2d at 718–19 (holding consumers accepted Travelocity's User Agreement when making bookings "by completing the online transactions"). And "[w]here the terms are not displayed but must be brought up by using a hyperlink, courts [] have looked for a clear prompt directing the user to read them" when determining assent. *Campos v. Tubi, Inc.*, 716 F. Supp. 3d

17

623, 633 (N.D. Ill. 2024), *appeal dismissed*, No. 24-1368, 2024 WL 5457089 (7th Cir. Oct. 16, 2024).

*Roberts* is especially instructive here. *See* 712 F. Supp. 3d at 1062. Those plaintiffs ordered tickets to a baseball game by telephone and subsequently attended the game. *Id*. at 1064–65. One of the plaintiffs was injured by a foul ball and claimed she was not aware of the arbitration agreement and therefore did not assent to the contract. *Id*. at 1065. The court held that a reasonable onlooker would think the parties assented to the terms of the contract because the Roberts plaintiffs bought the tickets, attended the game, and never contacted the baseball team to inquire or dispute the terms. *Id*. at 1068. The court found the Roberts plaintiffs had constructive notice of the terms and therefore there was mutual assent, so the contract terms were binding. *Id*. at 1069.

By parking in a Metropolis garage, Plaintiffs have constructive notice of each of the signs displayed that lay out parking fares and the possibility of fines for nonpayment. Countercls. ¶¶ 9, 20, 30, 40. And to be sure, the garage Plaintiff Appel's vehicle parked at gave plenty of notice to consumers of potential fines, as the signs warned "[e]nforced 24/7." *Id.* at ¶ 20. That is more than enough to meet "the low bar of plausibility" at the pleading stage. *See*. Dkt. 85.

**C.      Plaintiffs Fail to Meet their Burden to Show that their Contracts with Metropolis are Unconscionable.**

The contracts at issue between Metropolis and the Plaintiffs are not unconscionable under either Tennessee or Texas law. Indeed, Plaintiffs' unconscionability argument rings hollow considering the context. As another court recently explained:

> Contrary to [Plaintiff's] seeming assertion that reasonable people use the property of others and then scurry away—in this case, driving off without paying for their parking, (DE [56] ¶ 23), such behavior is criminal and amounts to theft and trespass. In other words, the Court doesn't even get to the DMV record lookup—the alleged DPPA violation—until Plaintiff here, and ostensibly each of the class members, have used Defendant's property and failed to pay for that use. Put simply, the alleged DPPA violation occurs only after

> Plaintiff and those he represents have easily met the definition of Theft. . . . In the Court's experience of ordinary life, especially in South Florida, where most private parking lots rely on customers paying via QR codes and parking apps, open private lots are commercial lots requiring payment to park. Parking without paying is stealing.

*Cicale*, Order, Dkt. 73 at 3, 8 (Ex. 1). Plaintiffs parked at Metropolis's parking facilities, did not pay for that parking, then sued Metropolis for violating the DPPA, and now argue that their contracts with Metropolis were unconscionable.

Regardless, Tennessee and Texas law allow parties to challenge a contract as unconscionable. *See Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 696 (M.D. Tenn. 2020) (Tennessee law requires a showing of both procedural and substantive unconscionability); *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex. App. 2013) (Texas law allow showing of unconscionability to be either procedural or substantive). Under both states' laws, the party seeking to avoid a contract as unconscionable bears the burden of proving its unconscionability.[11] Plaintiffs argue that their contracts with Metropolis were both procedurally and substantively unconscionable.

Plaintiffs' procedural unconscionability argument relies on disputed facts (like the size of the signs at the facilities, not all of which are included in the photographs in Metropolis's counterclaims) and their legal assertion that the contracts were impermissibly "entirely adhesive." Dkt. 87 at 9–10. This Court cannot determine factual disputes on a motion to dismiss. And the contracts here are not adhesive under Tennessee law. Tennessee law defines a contract of adhesion as a standardized form offered on a take-it-or-leave-it basis when the consumer doesn't have other like

---

[11] In Tennessee, the burden flips if the contract is adhesive. But the contracts here were not adhesive under Tennessee law. *See, e.g., Cooper v. MRM Inv. Co.*, 367 F.3d 493, 500 (6th Cir. 2004) ("A contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis.").

19

options. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 500 (6th Cir. 2004) (collecting cases to hold that if a consumer can go to another business for relatively fungible goods, the standardized contract with one business is not one of adhesion). Plaintiffs had other options for parking (and do not argue otherwise): therefore, their parking contracts with Metropolis were not contracts of adhesion.

Regardless, there was no procedural unconscionability. "[E]nforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d 740, 755 (E.D. Tenn. 2014) (internal citations omitted). "[T]he mere failure to read a contract does not make the contract procedurally unreasonable." *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 366 (6th Cir. 2014). There is no procedural unconscionability when a consumer voluntarily parks at a private parking facility and chooses not to pay despite signs at the lot telling him he must do so. That is not an "oppressive" circumstance.

Plaintiffs also argue the contracts are substantively unconscionable because the Violation Fines are "grossly disproportionate" and "extreme." Dkt. 87 at 10.[12] But again, this argument does not hold up to any scrutiny once this Court actually looks at the amounts Metropolis is seeking to collect: All the Violation Fines are under $71 for each Plaintiff. Substantively, this is not an extreme amount considering Plaintiffs' initial decision not to pay for their parking, and the sought amounts are not in line with Plaintiffs' hyperbolic rhetoric here. *See id.* at 10–11.

---

[12] The two cases Plaintiffs cite to argue substantive unconscionability both concern lopsided arbitration agreements that either provided judicial relief for the drafter but not the consumer (*Taylor v. Butler*, 142 S.W.3d 277, 286–87 (Tenn. 2004)) or limited the remedies available for the employee under the Workers' Compensation Act (*In re Poly-America, L.P.*, 262 S.W.3d 337 (Tex. 2008)). Neither are close to applicable to the instant case.

### D. Metropolis Can Plead Equitable Relief in the Alternative.

Quantum meruit and unjust enrichment are equitable remedies that can be pled in the alternative to a breach of contract to compensate a party when an offending party is unjustly enriched from its behavior. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990); *Stream, LLC v. Pep Boys-Manny , Moe & Jack, Inc.*, No. 2:17-cv-02702-TLP-DKV, 2018 WL 5117012, at *10 (W.D. Tenn. Oct. 19, 2018) (holding plaintiff stated a claim for quantum meruit under Tennessee law); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 610 (W.D. Tenn. 2011) (denying motion to dismiss on plaintiff's unjust enrichment count).

Recovery under both equitable theories is definitionally not based in contract, and therefore "not limited to damages alleged for breach of contract." *Emerson v. Tunnell*, 793 S.W.2d 947, 948 (Tex. 1990) (modifying judgment and remanding case because Plaintiff "[could] not be limited to recovery of the amount he alleged [Defendant] agreed to pay"); *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn. Ct. App. 1975) (holding "the amount recoverable is not limited to the contract price"). And at the pleading stage, courts are only concerned with "the procedural aspects of th[e] case and not with plaintiff's future difficulties in establishing a substantive right to recover." *John M. Peters Const. Co. v. Marmar Corp.*, 329 F.2d 421, 422 (6th Cir. 1964).

Metropolis has pled sufficient facts to support its alternative claims for equitable relief. Plaintiffs clearly benefitted from using Metropolis parking services to Metropolis's detriment by failing to pay. Countercls. ¶¶ 8, 11, 19, 22, 29, 32, 39, 42; *see also Cicale*, Order, Dkt. 73 at 3 (Ex. 1). The amount of recovery under either a reasonable-value theory for in quantum meruit or a benefit-conferred theory for unjust enrichment remains to be proven at a later stage. Indeed, Metropolis does not dispute it will have to prove its equitable remedy, but its allegations are more than sufficient to survive a motion to dismiss. *See John M. Peters Const. Co.*, 329 F.2d at 422; Dkt. 85.

21

**CONCLUSION**

For these reasons, Metropolis requests the Court deny Plaintiffs' Motion to Dismiss or Sever Metropolis's Counterclaims.

Dated: May 28, 2026

Respectfully submitted,

/s/ Christopher M. Walling

Jonathan E. Nelson (TN BPR No. 028029)
**BASS, BERRY & SIMS PLC**
100 Peabody Place, Suite 1300
Memphis, Tennessee 38103
Phone: (901) 543-5900
Facsimile: (615) 742-6293
jenelson@bassberry.com

James W. Miller (TN BPR No. 040369)
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Phone: (615) 742-6200
Facsimile: (615) 742-6293
james.miller@bassberry.com

Suyash Agrawal (*pro hac vice*)
Christopher M. Walling (*pro hac vice*)
**MASSEY & GAIL LLP**
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
Phone: (312) 283-1590
Facsimile: (312) 379-0467
sagrawal@masseygail.com
cwalling@masseygail.com

*Attorneys for Defendant*
*Metropolis Technologies, Inc.*

22

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF system on May 28, 2026.

*/s/ Christopher M. Walling*
Christopher M. Walling