# Exhibit 1

Cicale v. Professional Parking Mgmt. Corp.
No. 0:24-cv-61146-CIV-SINGHAL (S.D. Fla. May 1, 2026)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-61146-CIV-SINGHAL

PETER CICALE, JR.,

      Plaintiff,

vs.

PROFESSIONAL PARKING MANAGEMENT
CORPORATION,

      Defendant.

_____/

## ORDER

Plaintiff Peter Cicale, Jr. entered and used a parking lot operated by Professional Parking Management Corporation ("PPM").  He then left without paying for parking.  PPM mailed him a bill, which he paid.  Normally, that would be the end of the matter.  But not here.  Plaintiff has brought a class action in federal court.  In his Second Amended Class Action Complaint (DE [56]), Cicale alleges that PPM accessed his driving records from the Department of Motor Vehicles (DMV), violating the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ("DPPA").  He also alleges that PPM violated the Florida Consumer Collections Practices Act, § 559.55 *et seq.*, Florida Statutes (2025) and Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, Florida Statutes (2025).  PPM moved to dismiss the Second Amended Complaint, *see* (DE [60]), and that motion is fully briefed and ripe for review.  Because PPM did not injure Cicale, he lacks standing to bring this suit, and the Court dismisses his Second Amended Complaint.

I.      <u>BACKGROUND</u>

The facts are straightforward.  PPM monitors vehicle parking lots and sends notices to vehicle owners who did not pay for parking.  (DE [56] ¶¶ 18-19).  Using license

plate readers, PPM records the license plates of vehicles as they enter and leave the lot. *Id.* ¶ 19.  If a driver does not pay for parking, PPM reaches out to the DMV and, based on the license plate information, requests the vehicle owner's records, including name and address.  *Id.* ¶¶ 19-20.  PPM then sends the vehicle owner the parking bill.  *Id.*

On January 5, 2024, Cicale parked at a parking lot operated by PPM.  *Id.* at ¶ 22. Instead of paying when he parked or paying as he left, Cicale "simply parked in an available parking space, as any driver commonly would, and subsequently drove away." *Id.* at ¶ 23.  Within a few days, however, Cicale received a parking citation for $90.00 plus a $4.99 payment surcharge.  *Id.* at ¶ 24; (DE [56-1]).  The back of the citation contained the following disclaimer:

> FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERRED TO COLLECTIONS. THIS INVOICE IS PRIVATELY ISSUED, IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CRIMINAL PENALTIES. UNPAID PARKING CHARGE NOTICES MAY RESULT IN THE VEHICLE BEING BOOTED OR TOWED AT THE OWNER'S EXPENSE.

*Id.* at ¶ 26; (DE [56-1] at p. 3).  Cicale paid $94.99 to PPM.  *Id.* at ¶ 27.  Cicale then filed the present lawsuit.  (DE [1]).  In his Second Amended Complaint (DE [56]), he alleges that PPM violated his privacy rights by unlawfully obtaining his driving records. (DE [56] ¶ 28).  Cicale also alleges that PPM financially harmed him by collecting money based on false statements that PPM could boot or tow his car.  *Id.* ¶ 31. He seeks declaratory and injunctive relief and damages for himself and the class.  *Id.* ¶ 111.

Prior to beginning the legal discussion of this case, it bears noting that Cicale does not like PPM's business model, yet he attempted to take full advantage of it.  In his Second Amended Class Action Complaint, Cicale alleges "PPM's business model ostensibly involves charging drivers to park their vehicles in its facilities. In reality, however, PPM's business is about mailing parking citations to vehicle owners and threatening them with

severe consequences if they do not pay exorbitant sums demanded in PPM's citations." (DE [56] ¶ 3).  The Court does not purport to fully understand PPM's business model. The Court does not know how much of PPM's revenue comes from billing drivers who failed to pay compared to collecting payments from drivers who responsibly pay before they leave.  The Court does not know this because the Court does not run businesses. What the Court does know is that Cicale utilized PPM's services, under their business model, and left without paying, only to then complain in the form of a federal lawsuit about the method of collection.

Contrary to Cicale's seeming assertion that reasonable people use the property of others and then scurry away—in this case, driving off without paying for their parking, (DE [56] ¶ 23), such behavior is criminal and amounts to theft and trespass.  In other words, the Court doesn't even get to the DMV record lookup—the alleged DPPA violation—until Plaintiff here, and ostensibly each of the class members, have used Defendant's property and failed to pay for that use.  Put simply, the alleged DPPA violation occurs only after Plaintiff and those he represents have easily met the definition of Theft under Florida Statute § 812.014(1)(a). That definition gives fair notice of the following criminal conduct:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>   (a) Deprive the other person of a right to the property or a benefit from the property.
>
> *Id.*

Because Cicale does not allege a cognizable injury, this Court finds he lacks standing and so thankfully the Court need not address whether PPM violated the DPPA (including whether Cicale committed theft).[1]

---

[1] Taken to it's logical conclusion, Cicale would prefer that the business owner contact the police with the license plate number of any individuals who—in the parking context—dined and dashed.  The police would

II.     LEGAL DISCUSSION

A. Standing

For standing, Plaintiff must show: "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cnty.*, 879 F.3d 1274, 1281 (11th Cir. 2018).  An injury can be considered concrete "if it actually exists—that is, if it is 'real, and not abstract.'"  *Hunstein v. Preferred Collection & Mgmt. Servs.*, Inc., 48 F.4th 1236, 1242 (11th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).  Physical injury and financial harm are obvious real injuries, but intangible harm can also be a real injury.  *Id.* at 1243.  For intangible harms, courts analogize to "longstanding torts" to "determine whether an alleged intangible injury meets the concreteness requirement."  *Id.* at 1244 (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204–05 (2021)).

When alleging harm, a plaintiff must plead facts showing the actual injury, not just conclusions of law.  "Only factual allegations, and not legal conclusions, are relevant to our inquiry, and 'mere conclusory statements . . . do not suffice.'"  *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When alleging intangible injuries, the Plaintiff must explain "how and why" he was injured. *Id.* at 1241.  *See, e.g. Mraz v. I.C. Sys., Inc.*, 2020 WL 7125629, at 1 (M.D. Fla. Dec. 4, 2020) ("Mraz alleged he suffered emotional distress (i.e., 'anger, anxiety, emotional distress, fear, frustration, humiliation, and embarrassment') from ICS' collection attempt. . . . Mraz alleged the how and why of his injury by telling ICS the distress he felt from the letter . . . .").

---

then secure Plaintiff's information and issue a Notice to Appear to answer criminal charges.  This would avoid any DPPA issue but it would also potentially lead to a true injury to the miscreant.

Cicale alleges two types of injury.  He claims intangible injuries including emotional distress, harassment, annoyance, and violation of his privacy rights.  *See* (DE [56] ¶¶ 29-30, 32, 45).  Cicale also alleges tangible financial harm from having to pay the bill that PPM sent him after obtaining his contact information.  *Id.* at ¶ 31.

We first examine Cicale's claim of intangible privacy injuries.  Cicale makes cursory and conclusory allegations.  He professes that PPM's alleged violation of the DPPA "caused harm to Plaintiff and the Class Members by violating their statutory rights, invading their privacy of the kind long recognized at common law, and causing distress, harassment and annoyance." *Id.* ¶ 3. This is a bare-bones recitation of legal causes of action, not an allegation of facts.  His other allegations are little better.  He states that "PPM's invasion of privacy resulted in distress to Plaintiff Cicale." *Id.* ¶ 29.  He also alleges that "PPM's statements asserting a legal right where none exists (PPM's false statement that it has the legal right to "boot" and "tow" consumers' vehicles for unpaid citations) caused emotional distress to Plaintiff Cicale and the Class." *Id.* ¶ 30.  Cicale just alleges that he suffered emotional distress—he does not explain *how* he was actually emotionally hurt.  *See Glynn*, 26 F.4th at 1241.  He does not allege that he felt violated or embarrassed, or that receiving this notice impacted his sleep. He only offers a conclusory statement that he suffered emotional distress.  *See Preisler v. Eastpoint Recovery Grp., Inc.*, 2021 WL 211079, at *5 (S.D. Fla. May 25, 2021) ("With respect to Plaintiff's position that he suffered actual damages by virtue of his emotional distress, such claims are insufficient to confer standing . . . .").  Cicale fails to allege how he was actually hurt by PPM's actions.  He falls short of claiming that he suffered an intangible injury to his privacy.

Even if Cicale had explained how he was intangibly hurt, he still fails to allege a cognizable cause of action.  To adequately allege a statutory violation as an injury, the plaintiff must analogize the statutory violation to a common-law tort cause of action.  *Hunstein*, 48 F.4th at 1243.  To be sufficiently analogous, the statutory violation must satisfy all the elements of the common-law tort.  *Id.* at 1244.

Cicale unsuccessfully attempts to analogize PPM's access of his DMV records to an invasion of privacy claim.  Under Florida law, establishing invasion of privacy requires a physical or electronic intrusion "into a 'place' in which there is a reasonable expectation of privacy."  *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003); *Spilfogel v. Fox Broad. Co.*, 433 Fed. App'x 724, 727 (11th Cir. 2011) ("Florida law explicitly requires an intrusion into a private place and not merely into a private activity.").  Plaintiff points to *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023), where the Court determined that an unwanted text message constituted "an intrusion into peace and quiet in a realm that is private and personal."  74 F.4th at 1445-46 (quoting *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 n.1 (7th Cir. 2020)).  But an expectation of privacy in a cellphone is a far cry from an expectation of privacy in DMV records.  Accessing motor vehicle records is not equivalent to an intrusion into a "place."  *See Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015) ("The City's accessing of Watts's driver's license information in the DAVID system is likewise not an intrusion into a 'place.'").  Cicale has no claim for intrusion of privacy based on PPM's access of his driving records.

Cicale's attempt to frame this as an intrusion into the privacy of the home fails, because there is no expectation of privacy to not receive a bill at your home.  *See Heres v. Medicredit, Inc.*, 2024 WL 3291738, at *12 (S.D. Fla. July 3, 2024) ("Plaintiff fails to show receiving a single debt letter is like receiving an unwanted telephone call, text

message, or other acknowledged intrusion upon one's seclusion."); *Valiente v. Palm Beach Credit Adjustors, Inc.*, 2025 WL 3724704, at *8 (S.D. Fla. Dec. 24, 2025) ("Plaintiff's reliance on *Drazen* is misplaced. . . . None of the cases relied upon concerned letters delivered to a mailbox—an altogether different type of injury.").  Even though the letter threatened towing and booting, it was still a letter to Cicale's mailbox for a bill that he owed.  It was not an invasion of his seclusion.  Cicale's claim of intangible harm is unfounded.

Relatedly, Cicale also fails to allege financial harm.  His argument is that he was injured by receiving a bill that he owed.  He acknowledges in his complaint that he drove off without paying.  Although most of us have felt upset by receiving an unwanted bill, receiving a bill for services accepted is not a legal injury.  *Maitland v. Spectrum*, 2019 WL 13072397, at *2 (M.D. Fla. Aug. 22, 2019) (plaintiff was not injured by paying a bill that he owed); *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (plaintiff lacked standing because he only paid what he owed).  Paying a bill that you owe is the most basic tenet of financial responsibility, not a legal injury.

Cicale attempts to frame PPM's bill as coercive, since it threatened to boot or tow his car, but Cicale owed the money he paid.[2]  He admits that he parked in the parking lot, and he does not claim to have paid for parking at the time he parked.  (DE [56] ¶ 23).  In

---

[2] Cicale argues that PPM overcharged him—charging $90.00 on the parking notice and $4.99 for the convenience charge, in comparison with the $85.00 and $3.99 listed in the picture of the sign that PPM included in its Motion to Dismiss (DE [60]).  As PPM points out in its reply brief, PPM's prices changed in 2022, since that picture was taken but before Cicale parked there.  *See* (Decl. Orue (DE [72-2] ¶¶ 10-13)).  PPM also changed the prices on the sign prior to Cicale parking there.  *Id.*  The Court considers the declaration, even though it is outside of the four corners of the complaint, as evidence incorporated by reference into the complaint.  *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  The evidence must be "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."  *Id.*  Whether PPM properly charged Cicale is central to his standing argument, and Cicale does not challenge the authenticity of Orue's statement that PPM raised their prices.  (Cicale could have moved to file a sur-reply to challenge it, but he did not.)  Considering PPM's attestation that it raised its prices and changed the prices on the signs outside of the parking lot, Cicale owed PPM the $94.99 that he paid.

his Response, Plaintiff argues that "[i]n ordinary life, when a driver encounters an open lot with no barrier, attendant, or ticketing mechanism, the social expectation is simple: that he may park, conduct his errand, and depart . . . ."  (DE [70] at 7).  This head in the sand type of ordinary life view is starkly reminiscent of the George Costanza line in Seinfeld, "Jerry, just remember. It's not a lie if you believe it."  In the Court's experience of ordinary life, especially in South Florida, where most private parking lots rely on customers paying via QR codes and parking apps, open private lots are commercial lots requiring payment to park.  Parking without paying is stealing.

By parking in Defendant's lot, Cicale did several things.  For example, he received a benefit.  He deprived Defendant of the use of their land for other things.  He owed PPM for the time he parked in their lot.  Without being able to show that he was injured by the bill, Cicale lacks standing to challenge the mailing itself.

III.    CONCLUSION

Because Cicale fails to allege an injury, he lacks standing to bring this suit. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's [60] Motion to Dismiss is **GRANTED**.   Plaintiff Cicale's Second Amended Complaint (DE [56]) is **DISMISSED WITHOUT PREJUDICE.**  The Clerk is directed to **CLOSE** this case, and any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 30th day of April 2026.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel of record via CM/ECF