IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| YOUSEF ALHINDI, MATTHEW PETRONE, GREGORY ANDERSON, and BRENDAN APPEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLIS TECHNOLOGIES, INC.,<br><br>Defendant. | **Case No. 3:24-cv-00748**<br><br>**Chief Judge William L. Campbell, Jr.**<br>**Magistrate Judge Jeffery S. Frensley** |

**JOINT ELECTRONICALLY STORED INFORMATION PROTOCOL**

The Parties in the caption above hereby agree to the following protocol ("Protocol") for the production of electronically stored information ("ESI") and paper ("hardcopy") documents. Together with the agreed-upon protective order (the "Protective Order"), this Protocol governs all production in this case. In case of any conflicts between the Protocol and the Protective Order, which are necessarily inadvertent, the Protective Order controls.

**1.** **Scope.** In Section L of the Initial Case Management Order (Dkt. 96), the Parties agreed to establish their own protocol for the conduct of electronic discovery. This Protocol constitutes that agreement and supersedes the default standards contained in Administrative Order No. 174 of this Court. All Documents (defined herein) produced in the course of discovery shall be subject to this Protocol. Parties who issue subpoenas in connection with the above-captioned action shall include a copy of this protocol with the subpoena and ask that the third-party comply with it.

**2.** Nothing in this protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

**3.** **Definitions.** As used in this Order, the following terms are defined:

**4.** "Electronically Stored Information" or "ESI" means information created, stored, or maintained in electronic or digital form, including but not limited to emails, documents, spreadsheets, presentations, databases, instant messages, and any other data stored on computers, servers, mobile devices, or cloud-based platforms.

**5.** "Document" or "Documents" means any ESI or hardcopy material responsive to a discovery request, including all attachments, enclosures, and metadata associated therewith, and shall be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure.

**6.** "Native File" means a Document in the file format of the application in which it was created, as maintained in the ordinary course of business.

**7.** "Static Image" means an image produced as a single- or multi-page rendering of a Document, such as a single-page TIFF/JPEG or a multipage PDF.

**8.** "Metadata" means (i) information embedded in or associated with a native Document that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name

of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

**9.** "Custodian" means a person or entity identified as having possession, custody, or control of potentially relevant ESI that will be collected and searched pursuant to this Protocol.

**10.** "Protected Material" means any information designated as Protective Material under the terms of the Protective Order entered in this action.

**11.** "Producing Party" means any Party or nonparty that produces or discloses discovery material, including Documents, in this action.

**12.** "Receiving Party" means any Party or nonparty that receives discovery material, including Documents, from a Producing Party.

**13.** "Counsel of Record" means attorneys who have appeared in this action on behalf of a Party, including their partners, associates, staff attorneys, paralegals, legal assistants, litigation-support personnel, clerical employees, contract attorneys, and outside vendors retained to assist in this litigation.

**14.** "Expert" or "Consultant" means a person retained by a Party or its counsel for purposes of this litigation to provide expert testimony, consulting services, technical assistance, or litigation support, including the person's employees or support staff who reasonably need access to Protected Material for this action, and includes individuals designated under all of Rule 26(b)(4).

**15.** "Privilege Log" means a log identifying Documents withheld or redacted on the basis of attorney-client privilege, work-product protection, or other applicable privilege or immunity.

**16.** **Agreements on Document Discovery.** The Parties agree to cooperate in good faith in the discovery of ESI and to employ the procedures set forth herein to reduce costs, minimize

disputes, and promote the just, speedy, and inexpensive resolution of this litigation consistent with Federal Rule of Civil Procedure 1. The Parties agree to cooperate in identifying appropriate limits on discovery, including for example phased discovery and limits on the number of custodians, on discoverable data sources, on the relevant period, and on the permissible scope of requests for production, specifically including the permissible scope of requests for emails.

**17.** Neither Party need produce discovery of ESI or Documents that the Producing Party identifies as not reasonably accessible because of undue burden or cost. The Producing Party shall timely identify to the Requesting Party, by category or type, any ESI containing potentially responsive information that it is neither searching nor producing because it considers the ESI to be not reasonably accessible. For those categories of ESI identified as not reasonably accessible, the Producing Party will provide enough detail to enable the Requesting Party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

**18.** **Preservation**. The Parties affirm that they have preserved and shall continue to preserve ESI that they reasonably anticipate to be relevant to the claims or defenses in this action, or that is subject to a litigation hold a Party issued in connection with this matter.

**19.** Notwithstanding the foregoing, the preservation obligations under this Protocol shall NOT extend to the following categories of ESI:

a. Deleted, slack, fragmented, or other residual data or metadata that is not accessible without forensic recovery methods.

**20.** Pursuant to Federal Rule of Civil Procedure 37(e), the Parties agree that they shall not be sanctioned for the loss of ESI resulting from the routine, good-faith operation of their electronic information systems, including the routine deletion, overwriting, or modification of ESI

that occurs absent prejudice to another party from loss of the information and any intent to deprive another party's use of the information in this litigation. The Parties affirm that they have endeavored to halt these processes in order to preserve ESI and abide by litigation holds issued in connection with this matter.

**21.** **Identification of Custodians**. Metropolis shall identify the custodians whose ESI will be collected and searched in connection with this litigation, which includes individuals identified in Metropolis's and Plaintiffs' Initial Disclosures. Metropolis shall provide Plaintiffs with the names and general titles or roles of the identified custodians within fourteen (14) days of entry of this Protocol.

**22.** Each side may request additional custodians, provided that such requests are accompanied by a reasonable basis for the belief that the proposed custodian possesses unique, non-duplicative, relevant ESI. The Parties shall have the right to object to any such request on proportionality grounds under Federal Rule of Civil Procedure 26(b)(1).

**23.** Any dispute regarding the addition of custodians shall be resolved through the meet-and-confer and dispute resolution procedures set forth in this Protocol. No motion to compel the addition of custodians shall be filed absent compliance with those procedures.

**24.** The Parties will identify reasonably accessible non-custodial data sources and conduct reasonable searches of responsive materials from those sources.

**25.** **Search Methodology**. The parties shall meet and confer in good faith regarding the search terms, queries, or other methodologies to be applied to the collected ESI of each identified custodian.

**26.** If a Party elects to use technology-assisted review, continuous-active learning, GenAI assisted review, or other advanced technology-based analytics to cull and code unstructured

ESI, the parties will meet and confer regarding the parameters that will apply. The Parties agree that a Producing Party is not required to manually review every document collected in order to conduct a search reasonably calculated to identify responsive documents.

**27.** The Parties may propose additional or modified search terms at any time. If the Parties cannot reach agreement on proposed terms after a good-faith meet-and-confer, a Party may seek court intervention in accordance with the dispute resolution procedures set forth in this Protocol.

**28.** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the Requesting Party. Upon review of the exported electronic file(s), the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the parties meeting and conferring upon a set of queries to be made for discoverable information within the database. The parties shall cooperate in producing structured database information in a reasonably usable format, including CSV (Comma-Separated Values), SQL (Structured Query Language) export, Excel, or other agreed format, together with sufficient field definitions to permit interpretation.

**29.** **Form of Document Production for Hard Copy Documents**. The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") in static image format (e.g., color PDF or TIFF, black and white, 300 dpi) with corresponding searchable OCR text or extracted text—along with the below-listed fielded data when available. The parties

will provide a standardized load file with a Bates number field included in the load file to match text and fielded data with images. With respect to Hard Copy Documents, data on the load file will include:

a. Beginning Document Bates Number;

b. Ending Document Bates Number;

c. Attachment or Family Bates Numbers, if applicable

d. Custodian or Source;

e. Confidentiality Designation for Protected Materials;

f. Redaction (Y/N)

**30.** This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain.

**31.** When the Producing Party is scanning paper documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). Parent-child relationships (the association between an attachment and its parent document) shall be preserved when possible.

**32.** **Form of Document Production for ESI**. Except as otherwise stated herein, the Parties will produce documents originating as ESI in the ordinary course of business in static image format with extracted text or OCR, along with the below-listed metadata fields when available. The Parties will provide a standardized load file compatible with a Bates number field included on the load file to match text and metadata with images. With respect to ESI, data on the load file will include:

a. Beginning Document Bates Number;

b. Ending Document Bates Number;

c. Beginning Family Bates Number;

d. Ending Family Bates Number;

e. Custodian(s) or Source;

f. Confidentiality Designation for Protected Materials;

g. Redaction (Y/N);

h. Date and Time Document Created (if available);

i. Date and Time Document Last Modified (if available);

j. File Name (including extension);

k. File Extension;

l. Email From;

m. Email To;

n. Email CC;

o. Email BCC;

p. Email Subject;

q. Email Date and Time Received;

r. Email Date and Time Sent;

s. Timezone (UTC);

t. MD5 Hash Values (or alternatively agreed upon Hash Standard);

u. File Path

v. Thread ID

w. Parent ID

x. Author

y. Title

z. File Size

aa. Page Count

bb. OCR Path

cc. Native Link

This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain.

**33.** The following categories of documents originating as ESI shall be produced in their Native File format, with the native file names appended to include the confidentiality designation, accompanied by an image placeholder slip-sheet bearing the unique Bates number and confidentiality designation assigned to the Document:

- Spreadsheets (Microsoft Excel .xls/.xlsx or equivalent, and .csv files);
- Presentations (Microsoft PowerPoint .ppt/.pptx or equivalent);
- Audio files; and
- Video files.

**34.** Other file types may be produced in native format by written agreement of the parties.

**35.** The Parties may de-duplicate ESI across and within custodians using MD5 Hash Value (or alternatively agreed upon Hash Standard). Consistent with Federal Rule of Civil Procedure 34(b)(2)(E), a party need not produce the same ESI in more than one form.

**36.** All documents, native ESI, photographs, and video shall be produced in color if stored in color and for which color is necessary to understand the document. Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution images.

**37.** The Parties acknowledge and agree that they have an obligation under the Federal Rules of Civil Procedure to find and produce known responsive and/or relevant documents. The Producing Party will determine whether hyperlinked documents exist and whether they may contain responsive and relevant information. If they do exist and are a possible source of relevant and responsive information, the goal will be to preserve, collect, and produce both the document in which the hyperlink exists and the document that was hyperlinked with a metadata identifier that the two documents are connected. The Receiving Party may request the Producing Party locate the specific version of the document that was hyperlinked (i.e. the contemporaneous version) upon a showing of good cause. The Producing Party shall make reasonable efforts to identify, preserve, collect, and produce responsive hyperlinked documents; and the parties will meet and confer in good faith regarding any technical burdens or limitations regarding the preservation, collection, and production of the contemporaneous hyperlinked document.

**38.** Documents with hidden content, such as spreadsheets or presentations, shall be produced in native format with no modifications. Documents produced as a static image shall be processed with all content unhidden and any notes displayed on the image. The Parties reserve all rights to meet and confer to request production of documents with hidden content in an alternate format.

**39.** Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format, or near-native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

**40.** **Redactions**. Documents containing redactions shall be produced as redacted images, with corresponding OCR text reflecting the redacted version of the document, except for

redacted spreadsheets, which will be produced as spreadsheets containing redacted cells. The basis for each redaction shall be identified on the face of the redacted image/file, and the substance of the redactions shall be consisted with the Protective Order's "Redactions" section, incorporated herein.

**41.** **Confidentiality**. The production of ESI pursuant to this Protocol shall be subject to the terms of the Protective Order, which is again incorporated herein by reference.

**42.** **Privilege Logs and Clawbacks**. The Parties herein incorporated Protective Order's sections on "Logs of Privileged or Protective Information" and "Clawback and Effect of Production of Privileged or Protected Information."

**43.** **Production Timeline**. The Parties understand that this protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Protocol waives, restricts, or eliminates the parties' respective rolling production obligations or the parties' "claw-back" rights and obligations pursuant to this Protocol and the Agreed Protective Order in this case. The Parties shall use reasonable efforts to achieve substantial completion of document production reasonably before conclusion of fact discovery.

**44.** Upon the scheduling of any depositions, the Parties will endeavor in good faith to ensure that documents relevant to that deponent (including their custodial files) will be produced with enough time before the deposition to allow the Receiving Party to review them and include them in the deposition. If a Producing Party produces documents that a Receiving Party believes were necessary for use in an already occurred deposition, the Parties shall agree to meet and confer regarding a reasonable remedy, which shall include conference on whether the deponent can sit for another limited deposition targeted towards the newly produced documents.

**45.** The parties may agree in writing to adjust the production timeline as the needs of the case require. Any such adjustment shall not require further Court approval absent a conflict with other case deadlines. The Parties agree to cooperate to seek Court approval as necessary to adjust case deadlines to accommodate changes to any Party's production timeline.

**46.** **Costs**. Each party shall bear its own costs of document discovery, including costs of preservation, collection, processing, review, and production. The Parties expressly reserve their rights to seek cost-shifting pursuant to Federal Rules of Civil Procedure 26(b)(1) and 26(c) for any discovery request that is disproportionate to the needs of the case, considering the factors enumerated in Rule 26(b)(1). The Parties expressly reserve their rights to seek cost-shifting for any request requiring the restoration or production of ESI from sources that are not reasonably accessible because of undue burden or cost, pursuant to Rule 26(b)(2)(B).

**47.** **Dispute Resolution**. Before raising any dispute arising under this Protocol with the Court, the Parties shall meet and confer in good faith in a genuine effort to resolve the dispute without judicial intervention. Such meet and confer shall be consistent with the requirements of Local Rule 37.01, the Initial Case Management Order, and the Protective Order.

**48.** If the parties are unable to resolve a dispute after a good-faith meet and confer, they shall request an informal discovery conference with Magistrate Judge Frensley as provided in the Initial Case Management Order and Judge Frensley's operating procedures.

**49.** **Obligations on Conclusion of Litigation**. Unless otherwise agreed or ordered, within sixty-three days after dismissal or entry of final judgment not subject to further appeal, any Receiving Party shall, without further request or direction from the Producing Party, promptly destroy all Protected Material received from the Producing Party including, but not limited to, copies or summaries thereof, in the possession or control of any expert or employee. The Receiving

Party shall provide the Producing Party certification of the fact of destruction of all Protected Material subject to this Protocol. Notwithstanding the foregoing, Counsel may retain archival copies of pleadings, motion papers, briefs, discovery requests and responses, correspondence, deposition and hearing transcripts, deposition and trial exhibits, expert reports and materials, legal memoranda, attorney work product, and other materials reasonably maintained as part of Counsel's litigation file. Any retained material containing Protected Material shall remain subject to this Order.

**50.** **Protocol Subject to Modification**. This Protocol may be modified at any time by written stipulation of the parties filed with the Court, or by order of the Court upon a showing of good cause. Disagreements regarding proposed modifications to this Protocol shall be resolved through the dispute resolution procedures set forth in this Protocol.

**51.** **Reservation of Rights**. Nothing in this Protocol shall limit any party's rights under the Federal Rules of Civil Procedure, including the right to propound or respond to written discovery, to take depositions, or to seek relief from the Court. Nothing in this Protocol shall be construed as a waiver of any party's right to object to the relevance, admissibility, authenticity, or discoverability of any ESI or Document produced pursuant to this Protocol. The proportionality requirements of Federal Rule of Civil Procedure 26(b)(1) shall apply to all discovery governed by this Protocol, and this Protocol shall be interpreted and applied consistent with those requirements

Respectfully submitted and stipulated to by the parties through their undersigned counsel:

s/Mary A. Parker
Mary A. Parker (TN Bar #006016)
PARKER & CROFFORD
5115 Maryland Way
Brentwood, TN 37027
Tel.: 615-244-2445

Fax: 615-255-6037
mparker@parker-crofford.com

Janet R. Varnell (FL Bar #0071072)
(pro hac vice)
Brian W. Warwick (FL Bar #0605573)
(pro hac vice)
Christopher J. Brochu (FL Bar #1013897)
(pro hac vice)
VARNELL & WARWICK, P.A.
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Tel.: (352) 753-8600
Fax: (352) 504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
cbrochu@vandwlaw.com

Scott D. Owens (FL Bar #597651)
(pro hac vice)
SCOTT D. OWNES, P.A.
2750 N. 29th Avenue, Suite 209A
Hollywood, FL 33020
Tel.: (954) 589-0588
scott@scottdowens.com

Bret L. Lusskin, Jr. (FL Bar #28069)
(pro hac vice)
BRET LUSSKIN, P.A.
1025 E. Hallandale Beach, Blvd., Ste 1532
Hallandale Beach, FL 33009
Tel.: (954) 454-5841
Fax: (954) 454-5844
blusskin@lusskinlaw.com

*Attorneys for Plaintiff Yousef Alhindi*

James Gerard Stranch, IV (TN Bar 023045)
John C. Roberts
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Ave., Suite 200Nashville, TN 37203
Tel.: 615-254-8801
Fax: 615-250-3937
gstranch@stranchlaw.com
jroberts@stranchlaw.com

Brittany S Scott (CA Bar #327132)
Smith Krivoshey, PC
166 Geary Str
Ste 1500-1507
San Francisco, CA 94108
415-839-7000
brittany@skclassactions.com

Caroline C. Donovan (NY Bar # 6093124)
BURSOR & FISHER, P.A.
1330 Ave. of the Americas
32nd Floor
New York, NY 10019
Tel.: 646-437-6409
cdonovan@bursor.com

Philip Lawrence Fraietta (NY Bar #5297825)
BURSOR & FISHER P.A.
50 Main Street, Ste. 475
White Plains, NY 10606
New York, NY 10019
Tel.: (914)-874-0710
pfraietta@bursor.com

*Attorneys for Plaintiffs Matthew Petrone and Gregory Anderson*

/s/ Jonathan E. Nelson

Jonathan E. Nelson (TN BPR No. 028029)
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 1300
Memphis, Tennessee 38103
Phone: (901) 543-5900
Facsimile: (615) 742-6293
jenelson@bassberry.com

James W. Miller (TN BPR No. 040369)
BASS, BERRY & SIMS PLC
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Phone: (615) 742-6200
Facsimile: (615) 742-6293
james.miller@bassberry.com

Suyash Agrawal (*pro hac vice*)
Christopher M. Walling (*pro hac vice*)
MASSEY & GAIL LLP
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
Phone: (312) 283-1590
Facsimile: (312) 379-0467
sagrawal@masseygail.com
cwalling@masseygail.com

*Attorneys for Defendant Metropolis Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, a true and correct copy of the foregoing document was served via electronic notice on the CM/ECF to all counsel of record.

/s/Mary A. Parker